Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07928-1991
Telephone:  (973) 292-1700
Facsimile:   (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., | : | |
| LG ELECTRONICS, INC., & | : | Civil Action No. 08-1869 (FSH) (PS) |
| LG ELECTRONICS MONTERREY | : | |
| MEXICO, S.A., DE, CV, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| | : | Hon. Patty Shwartz, U.S.M.J. |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WHIRLPOOL CORPORATION, | : | |
| WHIRLPOOL PATENTS COMPANY, | : | **NOTICE OF PLAINTIFFS'** |
| WHIRLPOOL MANUFACTURING | : | **MOTION TO STAY** |
| CORPORATION & | : | **PURSUANT TO 28 U.S.C. § 1659** |
| MAYTAG CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | |

TO:     Seth T. Taube
        Richard B. Harper
        Lance D. Cassak
        BAKER BOTTS L.L.P.
        30 Rockefeller Plaza
        New York, New York 10112
        Attorneys for Defendants
        Whirlpool Corp., Whirlpool Patents Co.,
        Whirlpool Manufacturing Corp., and Maytag Corp.

COUNSEL:

        PLEASE TAKE NOTICE that on Monday, June 16, 2008, at 10:00 a.m. or as soon

thereafter as counsel may be heard, plaintiffs, LG Electronics, USA, Inc., LG Electronics, Inc., &

LG Electronics Monterrey Mexico, S.A. de C.V. (collectively "LG"), shall move before the

Honorable Faith S. Hochberg, U.S.D.J., pursuant to 28 U.S.C. § 1659 for an order staying all

proceedings pertaining to United States Patent Nos. 6,810,680 (the " '680 patent"), 6,915,644

(the " '644 patent"), 6,971,730 (the " '730 patent), and 7,240,980 (the " '980 patent") in this case

pending resolution of *In the Matter of Certain Refrigerators and Components Thereof*, Inv. No.

337-TA-632 (the "ITC Investigation"), now pending before the United States International Trade

Commission ("ITC").  LG respectfully submits that this is a mandatory, statutory stay which it

has an absolute right to seek.

        PLEASE TAKE FURTHER NOTICE that it is the intention and request of LG that the

Court, based on the parties' pending Stipulation and Proposed Order to Transfer, transfer this

civil action in its entirety to the United States District Court for the District of Delaware prior to

the return date of this motion, and that this motion then be determined in the District of

Delaware.  Accordingly, the present motion is not intended in any way to prevent the Court from

transferring this civil action in its entirety.

576457_1

PLEASE TAKE FURTHER NOTICE that the within motion is supported by the

Memorandum of Law and the Declaration of George C. Jones submitted herewith.  A proposed

form of Order is also submitted.


Dated:  May 15, 2008

<div style="margin-left: 40%;">

*/s/ Thomas R. Curtin*

Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07928-1991
Telephone:  (973) 292-1700
Facsimile:   (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

</div>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LG ELECTRONICS U.S.A., INC.,<br>LG ELECTRONICS, INC., &<br>LG ELECTRONICS MONTERREY<br>MEXICO, S.A., DE, CV,<br><br>Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION,<br>WHIRLPOOL PATENTS COMPANY,<br>WHIRLPOOL MANUFACTURING<br>CORPORATION &<br>MAYTAG CORPORATION,<br><br>Defendants. | Civil Action No. 08-1869 (FSH) (PS)<br><br>Hon. Faith S. Hochberg, U.S.D.J.<br>Hon. Patty Shwartz, U.S.M.J.<br><br><br><br>**ORDER STAYING CERTAIN CLAIMS<br>PURSUANT TO 28 U.S.C. § 1659** |

THIS MATTER having been opened to the Court upon the motion made by plaintiffs,

LG Electronics, USA, Inc., LG Electronics, Inc., & LG Electronics Monterrey Mexico, S.A. de

C.V. (collectively "LG"), pursuant to 28 U.S.C. § 1659 for an order staying all proceedings

pertaining to the claims of noninfringement and invalidity of United States Patent Nos. 6,810,680

(the " '680 patent"), 6,915,644 (the " '644 patent"), 6,971,730 (the " '730 patent), and 7,240,980

(the " '980 patent") in this case pending resolution of *In the Matter of Certain Refrigerators and

Components Thereof*, Inv. No. 337-TA-632 (the "ITC Investigation"), now pending before the

United States International Trade Commission ("ITC"); and the Court having considered all

papers filed in support of and in opposition to this motion, and good cause appearing,

IT IS on this _____ day of _____, 2008,

ORDERED that all proceedings pertaining to the '680 patent, the '644 patent, the '730 patent, and the '980 patent in this case be and the same hereby are STAYED pending resolution of the ITC Investigation.

_____

HON. FAITH S. HOCHBERG, U.S.D.J.

2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LG ELECTRONICS U.S.A., INC., <br> LG ELECTRONICS, INC., & <br> LG ELECTRONICS MONTERREY <br> MEXICO, S.A., DE, CV, <br><br> Plaintiffs, <br><br> v. <br><br> WHIRLPOOL CORPORATION, <br> WHIRLPOOL PATENTS COMPANY, <br> WHIRLPOOL MANUFACTURING <br> CORPORATION & <br> MAYTAG CORPORATION, <br><br> Defendants. | Civil Action No. 08-1869 (FSH) (PS) <br><br> Hon. Faith S. Hochberg, U.S.D.J. <br> Hon. Patty Shwartz, U.S.M.J. <br><br><br><br><br> **Motion Returnable: June 16, 2008** <br> **Oral Argument Requested** |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO STAY PURSUANT TO 28 U.S.C. § 1659

Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey 07928-1991
Telephone:  (973) 292-1700
Facsimile:  (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
 FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ............................................................................................................. 3

      28 U.S.C. §1659 REQUIRES THE COURT TO STAY THE INSTANT
      LITIGATION UNTIL THE ITC MAKES A FINAL DETERMINATION
      IN ITS PROCEEDING ...................................................................................... 3

CONCLUSION .......................................................................................................... 5

i

## <u>TABLE OF CITATIONS</u>

<u>**Page**</u>

**<u>Cases Cited</u>**

*In re Princo Corp.*, 478 F.3d 1345 (Fed. Cir. 2007)...................................................................4

**<u>Statutes Cited</u>**

28 U.S.C. § 1659................................................................................................................1, 3

28 U.S.C. § 1659(a)........................................................................................................1, 3-5

**<u>Other Authority Cited</u>**

H.R. Rep. 103-826(I) .............................................................................................................4

Plaintiffs LG Electronics, USA, Inc., LG Electronics, Inc., & LG Electronics Monterrey Mexico, S.A. de C.V. (collectively "LG"), respectfully submit this memorandum in support of their motion for a mandatory, statutory stay, pursuant to 28 U.S.C. § 1659(a), of all proceedings pertaining to the asserted claims of United States Patent Nos. 6,810,680 ("the '680 patent"), 6,915,644 ("the '644 patent"), 6,971,730 ("the '730 patent), and 7,240,980 ("the '980 patent") in this case until the final determination of *In the Matter of Certain Refrigerators and Components Thereof*, Inv. No. 337-TA-632 (the "ITC Investigation"), now pending before the United States International Trade Commission ("ITC").

## <u>INTRODUCTION</u>

Under 28 U.S.C. § 1659, a respondent in the ITC has the absolute right to stay proceedings before a district court on common issues; provided it moves for a stay within thirty days of the institution of the district court action. Because the very same parties, patents, and claims in the ITC Investigation are now pending before this Court, LG has the statutory right to stay proceedings on these patents in this Court.

In response to a Complaint filed by Defendants Whirlpool Corporation, Whirlpool Patents Company, Whirlpool Manufacturing Corporation, and Maytag Corporation (collectively "Whirlpool Defendants"), the ITC initiated an Investigation naming LG Electronics, USA, Inc., LG Electronics, Inc., & LG Electronics Monterrey Mexico, S.A. de C.V., as Respondents. In the ITC Complaint, the Whirlpool Defendants allege that the same LG refrigerators at issue in the present action infringe United States Patent No. 6,082,130 ("the '130 patent"), as well as the '680, '644, '730, and '980 patents, the patents at issue in the present action.

ITC investigations require the consideration and resolution of additional issues not before this Court, adding to the complexity of the investigation. By statute, the trial of an ITC

1

investigation must be completed within approximately a year, and the expenses to complete an

ITC investigation are usually several millions of dollars.  The ITC has no right or authority to

stay an investigation in favor of a pending District Court action.

Pursuant to 28 U.S.C. § 1659, LG hereby requests a stay of all proceedings pertaining to

the asserted '680, '644, '730, and '980 patents.  Although LG also has the statutory right to

request a stay with respect to the '130 patent, LG has not included the '130 patent in its present

motion.  Whirlpool is asserting the '130 patent against LG in a counterclaim that is now pending

before the United States District Court for the District of Delaware, and LG intends to promptly

pursue a resolution of the issues regarding the '130 patent before that Court.

Filed concurrently with this motion is a Stipulation and Proposed Order to transfer this

civil action, in its entirety, to the United States District Court for the District of Delaware.  Once

transfer is effected, the District Court for the District of Delaware can then seek full briefing on

the motions of record in this case, including LG's motion to stay, and resolve each of them.

## STATEMENT OF FACTS

On January 23, 2008, the Whirlpool Defendants filed a complaint in the ITC ("the ITC

Complaint") against LG, the Plaintiffs herein, alleging patent infringement.  Specifically, the

Whirlpool Defendants alleged that LG has infringed one or more claims of each of the '130,

'680, '644, '730, and '980 patents.  Exh. A.[1]

The ITC instituted Investigation No. 337-TA-632 ("the ITC Investigation") to investigate

alleged infringement of one or more claims of the '130, '680, '644, '730, and '980 patents by

LG's alleged "importation into the United States, the sale for importation into the United States,

---

[1] All cited exhibits are attached to the Declaration of George C. Jones submitted
herewith.

2

and/or the sale or offer for sale within the United States after importation, of refrigerators and components thereof. . ." Exh. A.

LG responded to the ITC Complaint by denying Defendants' allegations of infringement and raising affirmative defenses of non-infringement, unenforceability, and invalidity of the '130, '680, '644, '730, and '980 patents. Exh. B.

The very same parties, patents, and issues in the ITC Investigation are now pending before this Court in this action. Specifically, LG's actions for declaratory relief in this Court, as do LG's Response in the ITC Investigation, seek declaratory judgments of non-infringement of the '130, '680, '644, '730, and '980 patents, as well as declarations of unenforceability and invalidity. Exh. C. Accordingly, LG is exercising its right, under 28 U.S.C. § 1659(a), and asking this Court to stay all proceedings pertaining to the asserted claims of the '680, '644, '730, and '980 patents.

## ARGUMENT

### 28 U.S.C. § 1659 REQUIRES THE COURT TO STAY THE INSTANT LITIGATION UNTIL THE ITC MAKES A FINAL DETERMINATION IN ITS PROCEEDING

Federal statute provides that when a common issue exists between an ITC proceeding and a district court action, any claims involving such a common issue must be stayed, if requested by a party to the civil action that is also a respondent in the ITC proceeding. Section 1659(a) of Title 28 provides, in pertinent part:

> (a) Stay.--In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, *the district court shall stay*, until the determination of the Commission becomes final, *proceedings in the civil action with respect to any claim that*

3

> *involves the same issues involved in the proceeding before the Commission*, but only if such request is made within--
>
> (1) 30 days after the party is named as a respondent in the proceeding before the Commission, or
>
> (2) 30 days after the district court action is filed, whichever is later.

(Emphasis added). The mandatory stay lasts "until the [ITC] proceedings are no longer subject to judicial review." *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007). Section 1659(a) specifically provides for stays "with respect to any claim that involves the same issues as those pending before the Commission." H.R. Rep. 103-826(I), at 141.

Here, all the requirements of Section 1659(a) have been met, obligating this Court to stay all proceedings related to the '680, '644, '730, and '980 patents. Specifically, and as set forth in section 1659(a):

1. **Same Parties**. LG's actions for declaratory judgment ". . .involv[e] parties that are also parties to a proceeding before the United States International Trade Commission under Section 337 of the Tariff Act of 1930 . . . ."

2. **Same Issues**. LG's actions for declaratory judgment against Defendants "involve[ ] the same issues involved in the proceeding before the Commission . . . .";

3. **Requested Stay by Respondent in ITC Investigation**. LG's election under section 1659(a) is the "request of a party to the civil action that is also a respondent in the proceeding before the Commission . . . ."; and

4. **LG's Section 1659(a) Election is Timely**. LG's election under section 1659(a) is made within "30 days after the district court action is filed."

Accordingly, because each of the requirements of Section 1659(a) are met, this Court "shall stay" all proceedings pertaining to the asserted claims of the '680, '644, '730, and '980 patents "until the determination of the Commission becomes final . . . ." 28 U.S.C. § 1659(a).

LG respectfully requests that its motion to stay, like all other motions of record, be held in abeyance pending the stipulated transfer, according to the Stipulated Order the parties are submitting.  LG's motion to stay is not intended in any way to prevent this Court from transferring this civil action in its entirety.

## **<u>CONCLUSION</u>**

For the reasons set forth above, LG respectfully requests that this Court stay all proceedings pertaining to the asserted claims of the '680, '644, '730, and '980 patents in this case until the ITC's determination in *In the Matter of Certain Refrigerators and Components Thereof*, Inv. No. 337-TA-632, becomes final and is no longer subject to judicial review.

5

Dated:  May 15, 2008

/s/ Thomas R. Curtin
Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07928-1991
Telephone:  (973) 292-1700
Facsimile:   (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07928-1991
Telephone:  (973) 292-1700
Facsimile:  (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC.,<br>LG ELECTRONICS, INC., &<br>LG ELECTRONICS MONTERREY<br>MEXICO, S.A., DE, CV, | : <br> : <br> : <br> : <br> : | Civil Action No. 08-1869 (FSH) (PS)<br><br>Hon. Faith S. Hochberg, U.S.D.J.<br>Hon. Patty Shwartz, U.S.M.J. |
| Plaintiffs, | : <br> : <br> : | |
| v. | : <br> : | |
| WHIRLPOOL CORPORATION,<br>WHIRLPOOL PATENTS COMPANY,<br>WHIRLPOOL MANUFACTURING<br>CORPORATION &<br>MAYTAG CORPORATION, | : <br> : <br> : <br> : <br> : | **DECLARATION OF GEORGE C. JONES<br>IN SUPPORT OF MOTION TO STAY<br>PURSUANT TO 28 U.S.C. § 1659** |
| Defendants. | : <br> : | |

576459_1

GEORGE C. JONES, of full age, hereby declares as follows:

1.      I am an attorney-at-law of the State of New Jersey and a member of the firm of Graham Curtin, A Professional Association.  We are local counsel for plaintiffs in this matter.  I submit this declaration in support of plaintiffs' motion to stay pursuant to 28 U.S.C. §1659 based upon personal knowledge including my familiarity with the pleadings in this matter and related proceedings.

2.      Attached hereto at the designated exhibit tabs are true copies of the following documents relied upon by plaintiffs in support of their motion to stay:

    A.      Federal Register, Vol. 73, No. 38, Notice of an ITC Investigation based on the Complaint filed by defendants Whirlpool with the International Trade Commission in *In the Matter of Certain Refrigerators and Components Thereof*, Inv. No. 337-TA-632;

    B.      Response filed by plaintiffs with the International Trade Commission in *In the Matter of Certain Refrigerators and Components Thereof*, Inv. No. 337-TA-632; and

    C.      Complaint for Declaratory Judgment filed by plaintiffs in the United States District Court for the District of New Jersey, Civil Action No. 08-1869 (FSH) (PS).

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

                                            GEORGE C. JONES

Dated:  May 15, 2008

2

576459_1

# EXHIBIT A

Internet at *http://parkplanning.nps.gov/sagu.*

**FOR FURTHER INFORMATION CONTACT:**
Contact Superintendent Sarah Craighead of Saguaro National Park at the address, telephone number, or electronic mail address shown above.

Dated: November 2, 2007.

**Michael D. Snyder,**

*Regional Director, Intermountain Region, National Park Service.*

[FR Doc. E8–3570 Filed 2–25–08; 8:45 am]

**BILLING CODE 4312–52–P**

---

## DEPARTMENT OF THE INTERIOR

**National Park Service**

**Cape Cod National Seashore; South Wellfleet, MA; Cape Cod National Seashore Advisory Commission; Two Hundredth Sixty Fourth Notice of Meeting**

Notice is hereby given in accordance with the Federal Advisory Committee Act (Pub. L. 92–463, 86 Stat. 770, 5 U.S.C. App 1, Section 10), that a meeting of the Cape Cod National Seashore Advisory Commission will be held on February 25, 2008.

The Commission was reestablished pursuant to Public Law 87–126 as amended by Public Law 105–280. The purpose of the Commission is to consult with the Secretary of the Interior, or her designee, with respect to matters relating to the development of Cape Cod National Seashore, and with respect to carrying out the provisions of sections 4 and 5 of the Act establishing the Seashore.

The Commission members will meet at 1 p.m. in the meeting room at Headquarters, Marconi Station, Wellfleet, Massachusetts for the regular business meeting to discuss the following:

1. Adoption of Agenda.
2. Approval of Minutes of Previous Meeting (December 11, 2007).
3. Reports of Officers.
4. Reports of Subcommittees. Improved Properties/Town Bylaws. Wind Turbines/Cell Towers.
5. Superintendent's Report. Herring River Restoration update. Update on Dune Shacks and Report. Highlands Center Update. Alternate Transportation Funding. Centennial Challenge.
6. Old Business.
7. New Business.
8. Date and agenda for next meeting.
9. Public comment and
10. Adjournment.

The meeting is open to the public. It is expected that 15 persons will be able to attend the meeting in addition to Commission members.

Interested persons may make oral/written presentations to the Commission during the business meeting or file written statements. Such requests should be made to the park superintendent at least seven days prior to the meeting. Further information concerning the meeting may be obtained from the Superintendent, Cape Cod National Seashore, 99 Marconi Site Road, Wellfleet, MA 02667.

Dated: January 10, 2008.

**George E. Price, Jr.,**

*Superintendent.*

[FR Doc. E8–3599 Filed 2–25–08; 8:45 am]

**BILLING CODE 4310–WV–P**

---

## DEPARTMENT OF THE INTERIOR

**National Park Service**

**National Preservation Technology and Training Board—National Center for Preservation Technology and Training: Meeting**

**AGENCY:** National Park Service, U.S. Department of the Interior.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given in accordance with the Federal Advisory Committee Act (FACA) (5 U.S.C. Appendix (1988)), that the Preservation Technology and Training Board (Board) of the National Center for Preservation Technology and Training (NCPTT), National Park Service will meet on Tuesday and Wednesday, April 15–16, 2008, in Natchitoches, Louisiana.

The Board was established by Congress to provide leadership, policy advice, and professional oversight to the National Park Service's National Center for Preservation Technology and Training (National Center) in compliance with section 404 of the National Historic Preservation Act of 1966, as amended, (16 U.S.C. 470x–2(e)).

The Board will meet at Lee H. Nelson Hall, the headquarters of NCPTT, at 645 University Parkway, Natchitoches, LA 71457—telephone (318) 356–7444. The meeting will run from 9 a.m. to 5 p.m. on April 15 and from 9 a.m. to 12 p.m. on April 16.

The Board's meeting agenda will include: review and comment on National Center FY2007 accomplishments and operational priorities for FY2008; FY2008 and FY2009 National Center budget and initiatives; proposed Conference on Sustainability in Preservation; revitalization of the Center's Friends group, and Board workgroup reports.

The Board meeting is open to the public. Facilities and space for accommodating members of the public are limited, however, and persons will be accommodated on a first come, first served basis. Any member of the public may file a written statement concerning any of the matters to be discussed by the Board.

Persons wishing more information concerning this meeting, or who wish to submit written statements, may contact: Mr. Kirk A. Cordell, Executive Director, National Center for Preservation Technology and Training, National Park Service, U.S. Department of the Interior, 645 University Parkway, Natchitoches, LA 71457—telephone (318) 356–7444. In addition to U.S. Mail or commercial delivery, written comments may be sent by fax to Mr. Cordell at (318) 356–9119.

Minutes of the meeting will be available for public inspection no later than 90 days after the meeting at the office of the Executive Director, National Center for Preservation Technology and Training, National Park Service, U.S. Department of the Interior, 645 University Parkway, Natchitoches, LA 71457—telephone (318) 356–7444.

Dated: January 23, 2008.

**Kirk A. Cordell,**

*Executive Director, National Center for Preservation Technology and Training, National Park Service.*

[FR Doc. E8–3609 Filed 2–25–08; 8:45 am]

**BILLING CODE 4312–53–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Inv. No. 337–TA–632]**

**In the Matter of Certain Refrigerators and Components Thereof; Notice of Investigation**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Institution of investigation pursuant to 19 U.S.C. 1337.

**SUMMARY:** Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on January 23, 2008, under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, on behalf of Whirlpool Patents Company of St. Joseph, Michigan; Whirlpool Manufacturing Corporation of St. Joseph, Michigan; Whirlpool Corporation of Benton Harbor, Michigan; and Maytag Corporation of Benton Harbor, Michigan. A supplement to the complaint was filed on February 11, 2008. The complaint, as supplemented, alleges violations of section 337 based

upon the importation into the United States, the sale for importation, and the sale within the United States after importation of certain refrigerators and components thereof that infringe certain claims of U.S. Patent Nos. 6,082,130; 6,810,680; 6,915,644; 6,971,730; and 7,240,980. The complaint, as supplemented, further alleges that an industry in the United States exists as required by subsection (a)(2) of section 337.

The complainants request that the Commission institute an investigation and, after the investigation, issue an exclusion order and cease and desist orders.

**ADDRESSES:** The complaint, as supplemented, except for any confidential information contained therein, is available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, SW., Room 112, Washington, DC 20436, telephone 202–205–2000. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its Internet server at *http:// www.usitc.gov.* The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**FOR FURTHER INFORMATION CONTACT:** Rett Snotherly, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, telephone (202) 205–2599.

**Authority:** The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2007).

*Scope of Investigation:* Having considered the complaint, as supplemented, the U.S. International Trade Commission, on February 20, 2008, *ordered that*—

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain refrigerators and components thereof that infringe on one or more of claims 1, 2, 4, 6, 8, and 9 of

U.S. Patent No. 6,082,130; claims 1–14 of U.S. Patent No. 6,810,680; claims 1–13 of U.S. Patent No. 6,915,644; claims 2, 3, 7–12, 22–24, and 29 of U.S. Patent No. 6,971,730; and claims 1 and 3–20 of U.S. Patent 7,240,980, and whether an industry in the United States exists as required by subsection (a)(2) of section 337;

(2) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainants are—

Whirlpool Patents Company, 500 Renaissance Drive, Suite 102, St. Joseph, Michigan 49085.

Whirlpool Manufacturing Corporation, 500 Renaissance Drive, Suite 102, St. Joseph, Michigan 49085.

Whirlpool Corporation, 2000 North M–63, Benton Harbor, Michigan 49022.

Maytag Corporation, 2000 North M–63, Benton Harbor, Michigan 49022.

(b) The respondents are the following entities alleged to be in violation of section 337, and are the parties upon which the complaint is to be served:

LG Electronics, Inc., LG Twin Towers, 20 Yeouido-dong, Yeoungdeungpo-gu, Seoul, 150–721, South Korea.

LG Electronics, USA, Inc., 1000 Sylvan Ave., Englewood Cliffs, New Jersey 07632.

LG Electronics Monterrey, Mexico, S.A., DE, CV, Av. Industrias 180, Fracc Industrial Pimsa Ote., 66603 Apodaca, Nuevo Leon, Mexico.

(c) The Commission investigative attorney, party to this investigation, is Rett Snotherly, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street, SW., Room 401Q, Washington, DC 20436; and

(3) For the investigation so instituted, the Honorable Theodore R. Essex is designated as the presiding administrative law judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondents in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 CFR 210.13. Pursuant to 19 CFR 201.16(d) and 210.13(a), such responses will be considered by the Commission if received not later than 20 days after the date of service by the Commission of the complaint and the notice of investigation. Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of a respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the

right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of an exclusion order or cease and desist orders or both directed against the respondent.

By order of the Commission.

Issued: February 21, 2008.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. E8–3575 Filed 2–25–08; 8:45 am]
**BILLING CODE 7020–02–P**

# DEPARTMENT OF JUSTICE

**Notice of Lodging of Agreed Amendment to the Consent Decree Providing for Remedial Actions at Neal's Landfill, Lemon Lane Landfill and Bennett's Dump and Addressing General Matters Under the Comprehensive Environmental Response, Compensation and Liability Act**

Notice is hereby given that on February 19, 2008, a proposed Amendment to the Consent Decree Providing for Remedial Actions at Neal's Landfill, Lemon Lane Landfill and Bennett's Dump and Addressing General Matters (''Amendment'') in *United States of America, et al.,* v. *CBS Corporation,* Civil Action No. 1:81–cv–0448–RLY–KPF was lodged with the United States District Court for the Southern District of Indiana.

In 1985, CBS entered into a Consent Decree with the United States, the State of Indiana, the City of Bloomington and Monroe County to remove and incinerate PCB contamination from six sites in and near Bloomington, Indiana. The proposed Amendment is the last in a series of partial settlements that the parties have negotiated over the past 10 years to replace the remedial measures in the original 1985 settlement. The proposed Amendment requires CBS to perform additional cleanup actions selected by the U.S. Environmental Protection Agency to address PCB contamination in groundwater, surface water, soils and sediment at the last three sites. CBS shall, among other things, expand and operate the existing water treatment plant at Illinois Central Spring, expand the collection system and operate the existing treatment plant at Neal's Landfill, and build and operate

# EXHIBIT B
## Part 1

PUBLIC VERSION

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

Administrative Law Judge
Honorable Theodore R. Essex

In the Matter of

CERTAIN REFRIGERATORS AND
COMPONENTS THEREOF

Investigation No. 337-TA-632

RESPONSE OF LG ELECTRONICS, INC., LG ELECTRONICS, USA, INC., AND LG
ELECTRONICS MONTERREY MEXICO S.A., DE, CV TO THE COMPLAINT AND
NOTICE OF INVESTIGATION

Thomas L. Jarvis
Richard L. Stroup
Andrew C. Sonu
Parmanand K. Sharma
Paul C. Goulet
Walter D. Davis, Jr.
Finnegan, Henderson, Farabow,
    Garrett, & Dunner L.L.P.
901 New York Avenue, NW
Washington, DC   20001-4413
(202) 408-4000
(202) 408-4400 fax

COUNSEL FOR LG ELECTRONICS, INC.,
LG ELECTRONICS, USA, INC., AND
LG ELECTRONICS MONTERREY MEXICO S.A. DE
C.V.

Respondents LG Electronics, Inc., LG Electronics, USA, Inc., and LG Electronics Monterrey Mexico S.A. de C.V. (collectively "Respondents") respectfully submit the following Response to Complainants Whirlpool Corporation, Whirlpool Patents Company, Whirlpool Manufacturing Corporation, and Maytag Corporation (collectively "Complainants") Complaint Under Section 337 of the Tariff Act of 1930.

## RESPONSE TO THE NOTICE OF INVESTIGATION

Responding to the Notice of Investigation filed in the above-entitled investigation, Respondents admit such an investigation exists, and that LG Electronics, Inc., LG Electronics, USA, Inc., and LG Electronics Monterrey Mexico S.A. de C.V. are named respondents therein. However, Respondents otherwise deny the existence of the predicates and requirements for liability under such investigation, and therefore deny the allegations in the Notice of Investigation, to the extent such allegations exist.

All allegations in the Complaint that are not specifically admitted as set forth below are hereby denied.

## RESPONSE TO THE COMPLAINT

### I.  INTRODUCTION

1.1  Complainants Whirlpool Patents Company ("Whirlpool Patents"), Whirlpool Manufacturing Corporation ("Whirlpool Manufacturing"), Whirlpool Corporation ("Whirlpool"), and Maytag Corporation ("Maytag") ( collectively, "Complainants") request the International Trade Commission ("the Commission") to commence an investigation into the importation, sale

2

for importation, and sale after importation, of certain refrigerators and components thereof in violation of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. §1337.

> Answer: Responding to paragraph 1.1, Respondents admit that Complainants purport to bring an action based upon the importation, sale for importation, and sale after importation of certain refrigerators and components thereof allegedly in violation of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. §1337. Respondents deny that the accused products of Respondents violate Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. §1337. Respondents deny the existence of the predicates and requirements of the aforementioned action and deny the remaining allegations.

1.2    The proposed respondents LG Electronics, Inc. ("LG"), LG Electronics, USA, Inc. ("LG USA"), and LG Electronics Monterrey Mexico, S.A., De, CV ("LG Mexico") (collectively, "the LG Entities") have engaged in unfair acts in violation of Section 337(a)(I)(B)(i) through the importation into the United States, the sale for importation into the United States, and/or the sale or offer for sale within the United States after importation, of refrigerators and components thereof that infringe at least claims 1, 2, 4, 6, 8, and 9 of U.S. Patent No. 6,082,130 ("the '130 Patent"), claims 1-14 of U.S. Patent No. 6,810,680 ("the '680 Patent"), claims 1-13 of U.S. Patent No. 6,915,644 ("the '644 Patent"), claims 2,3, 7-12, 22-24, and 29 of U.S. Patent No. 6,971,730 ("the '730 Patent"), and claims 1 and 3-20 of U.S. Patent No. 7,240,980 ("the '980 Patent"). The '130 Patent is owned by Complainant Whirlpool Patents Company, and a copy of that patent is attached hereto as Exhibit 1. The '680, '644, '730, and '980 Patents are owned by Complainant Maytag Corporation, and copies of those patents are attached hereto as Exhibits 2, 3, 4, and 5, respectively.

> Answer: Responding to paragraph 1.2, Respondents admit that they are the named Respondents in this investigation. Respondents deny that they have engaged in unfair acts in violation of Section 337(a)(I)(B)(i) through the importation into the United States, the sale for importation into the United States, and/or the sale or offer for sale within the

3

United States after importation of refrigerators and components that allegedly infringe claims 1, 2, 4, 6, 8, and 9 of U.S. Patent No. 6,082,130 ("the '130 Patent"); claims 1-14 of U.S. Patent No. 6,810,680 ("the '680 Patent"); claims 1-13 of U.S. Patent No. 6,915,644 ("the '644 Patent"); claims 2, 3, 7-12, 22-24, and 29 of U.S. Patent No. 6,971,730 ("the '730 Patent"); and claims 1 and 3-20 of U.S. Patent No. 7,240,980 ("the '980 Patent") (collectively, "the Asserted Patents"). Respondents deny that Respondents' refrigerators or any components thereof directly or indirectly infringe any valid and enforceable claim of the Asserted Patents. Respondents admit that the '680, '644, and '730 Patents list on their faces Maytag Corporation as the assignee for those patents. Respondents admit that Exhibits 1-5 include what are purported to be copies of the Asserted Patents. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 1.2 and therefore deny them.

1.3    Complainants seek a permanent exclusion order under Section 337(d) excluding from entry into the United States refrigerators and components thereof manufactured, sold, assembled, sold for importation, sold after importation, or imported by or on behalf of any of the LG Entities that infringe any of at least claims 1, 2, 4, 6, 8, and 9 of the' 130 Patent, claims 1-14 of the '680 Patent, claims 1-13 of the '644 Patent, claims 2, 3, 7-12, 22-24, and 29 of the '730 Patent, and claims 1 and 3-20 of the '980 Patent.

Answer: Responding to paragraph 1.3, Respondents admit that Complainants seek the stated relief. However, Respondents deny the existence of the predicates and requirements of such relief and deny that Complainants are entitled to such relief. Respondents deny that Respondents' refrigerators or any components thereof directly or indirectly infringe any valid and enforceable claim of the Asserted patents.

1.4    Complainants also seek an order under Section 337(f)(l) directing the LG Entities to cease and desist from unfair methods of competition and unfair acts, including importing, assembling, testing, marketing, distributing, offering for sale, selling, or otherwise transferring in the United States imported refrigerators and/or components thereof that infringe any of at least claims 1, 2, 4, 6, 8, and 9 of the' 130 Patent, claims 1-14 of the '680 Patent, claims 1-13 of the

4

'644 Patent, claims 2, 3, 7-12, 22-24, and 29 of the '730 Patent, and claims 1 and 3-20 of the '980

Patent.

> Answer: Responding to paragraph 1.4, Respondents admit that Complainants seek the stated relief. However, Respondents deny the existence of the predicates and requirements of such relief and deny that Complainants are entitled to such relief. Respondents deny that Respondents' refrigerators or any components thereof directly or indirectly infringe any valid and enforceable claim of the Asserted patents.

## II.    COMPLAINANTS

2.1    Complainant Whirlpool Patents Company is a Michigan corporation having its

principal place of business at 500 Renaissance Drive, Suite 102, St. Joseph, Michigan 49085.

This complaint is made under oath by an authorized agent of Whirlpool Patents Company.

Whirlpool Patents Company is a wholly owned subsidiary of Whirlpool Corporation.

> Answer:  Responding to paragraph 2.1, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.2    Complainant Whirlpool Manufacturing Corporation is a Michigan corporation

having its principal place of business at 500 Renaissance Drive, Suite 102, St. Joseph, Michigan

49085.  This complaint is made under oath by an authorized agent of Whirlpool Manufacturing

Corporation.  Whirlpool Manufacturing Corporation is a wholly owned subsidiary of Whirlpool

Corporation.

> Answer:  Responding to paragraph 2.2, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.3    Complainant Whirlpool Corporation is a Delaware corporation having its principal place of business at 2000 North M-63, Benton Harbor, Michigan 49022. This complaint is made under oath by an authorized agent of Whirlpool Corporation.

    Answer: Responding to paragraph 2.3, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.4    Whirlpool Patents Company is the owner by assignment of the '130 Patent. Whirlpool Patents has licensed rights under the '130 Patent to Whirlpool Manufacturing, which has in turn licensed rights under the '130 Patent to Whirlpool Corporation.

    Answer: Responding to paragraph 2.4, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.5    Whirlpool is the world's leading manufacturer and seller of major home appliances. When Whirlpool began in St. Joseph, Michigan in 1911, its business operations were dedicated to the field of washing machines. In that field, Whirlpool pioneered numerous innovations, including the top-loading automatic washer, which has become a standard product in most households today. In the 1950s, Whirlpool's success and reputation for quality allowed it to diversify its product line to include refrigerators, dryers, ranges, and dishwashers, and to expand geographically to open manufacturing facilities in Indiana and Ohio. Today, Whirlpool maintains manufacturing and development facilities in 14 different locations in the United States, and employs over 80,000 people worldwide (approximately 28,000 in North America). Products bearing Whirlpool-owned brands - including KitchenAid®, Roper®, and the more recently acquired Maytag®, Amana®, and Jenn-Air® brands - are at the top of nearly every market in the home appliance industry. Whirlpool also manufactures Kenmore®-branded appliances

(marketed by Sears Holding Corporation and its affiliates ("Sears")). Whirlpool's line of refrigerator products constitutes a major part of Whirlpool's worldwide investments, notoriety, and success in the marketplace.

> Answer: Responding to paragraph 2.5, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.6    Complainant Maytag Corporation is a Delaware corporation having its principal place of business at 2000 North M-63, Benton Harbor, Michigan 49022. This complaint is made under oath by an authorized agent of Maytag. Maytag Corporation is a wholly owned subsidiary of Whirlpool Corporation.

> Answer: Responding to paragraph 2.6, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.7    Much like Whirlpool, Maytag started manufacturing consumer washing machines in the early 1900s, and soon expanded its business into the remainder of the home and commercial appliance industry. In March of 2006, Maytag was acquired by Whirlpool, merging together the almost two centuries of collective innovation that have enabled these companies to deliver the highest-quality products to the home appliance industry.

> Answer: Responding to paragraph 2.7, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.8    To remain at the top of this highly competitive industry, Whirlpool and Maytag have invested vast amounts of resources in research, development, and quality management of their product design, including more than 5,000 Whirlpool employees today that are trained and actively involved in innovation initiatives.

Answer: Responding to paragraph 2.8, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2.9    In the field of household refrigerators, Whirlpool and Maytag have adapted their products continuously to meet the demands of U.S. consumers, including a focus on "side-by-side" designs that became popular in the late 1990s, and a more recent shift to the now popularized bottom-mount pull out drawer freezer and French door refrigerator models. With each of these shifts in design focus came the need for new innovations to implement consumer-driven design changes and features, while maintaining the high level of quality that has been the hallmark of Whirlpool and Maytag products. These innovations have reached nearly every aspect of Whirlpool's products, including aesthetic design, maintenance, energy efficiency, flexibility, and performance features. The claimed inventions of the '130, '680, '644, '730, and '980 Patents are key examples of these types of innovations.

Answer: Responding to paragraph 2.9, Respondents lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

## III.    PROPOSED RESPONDENTS

3.1    Respondent, LG Electronics, Inc. is a Korean corporation having its principal place of business at LG Twin Towers, 20 Yeouido-dong, Yeoungdeungpo-gu, Seoul, 150-721, South Korea. Upon information and belief, LG's business includes the manufacture, importation, and/or sale of refrigerators and components thereof in facilities in various foreign jurisdictions, including Korea, for importation into and sale in the United States. Upon information and belief, certain third parties (*e.g.,* affiliates of Sears and General Electric Company ("General Electric"))

8

also may import refrigerators and components thereof assembled, manufactured, and sold for importation by LG.

> Answer: Responding to paragraph 3.1, Respondents admit that LG Electronics, Inc is a Korean corporation having its principal place of business at LG Twin Towers, 20 Yeouido-dong, Yeoungdeungpo-gu, Seoul, 150-721, South Korea. Respondents admit that LG Electronics, Inc.'s business includes the assembly and/or sale of refrigerators and components thereof in facilities in foreign jurisdictions, including Korea, for importation into and distribution in the United States. Respondents lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

3.2   Respondent, LG Electronics, USA, Inc. is a New Jersey corporation having its principal place of business at 1000 Sylvan Ave., Englewood Cliffs, New Jersey 07632. Upon information and belief, LG USA's business includes the sale and/or importation of refrigerators and components thereof for sale in the United States.

> Answer: Responding to paragraph 3.2, Respondents admit that LG Electronics U.S.A., Inc.'s principal place of business is 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Respondents admit that LG Electronics U.S.A., Inc.'s business includes the distribution and/or importation of refrigerators and components thereof into the United States. Respondents lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them

3.3   Respondent, LG Electronics Monterrey Mexico, S.A., De, CV is a Mexican corporation having its principal place of business at Av. Industrias 180, Fracc Industrial Pimsa Ote., 66603 Apodaca, Nuevo Leon, Mexico. Upon information and belief, LG Mexico's business includes the manufacture, importation, and/or sale of refrigerators and components thereof for importation into and sale in the United States. Upon information and belief, certain third parties also may import refrigerators and components thereof assembled, manufactured, and sold for importation by LG Mexico.

9

Answer: Responding to paragraph 3.3, Respondents admit that LG Electronics Monterrey Mexico, S.A. de C.V. ("LG Mexico") is a Mexican corporation having its principal place of business at Av. Industrias 180, Fracc Industrial Pimsa Ote., 66603 Apodaca, Nuevo Leon, Mexico. Respondents admit that LG Mexico's business includes the assembly and/or delivery of refrigerators and components thereof for importation and distribution in the United States. Respondents lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

## IV.    THE PATENTS AT ISSUE

### A.    Identification of Patents and Ownership by Whirlpool Patents and Maytag.

4.1    Whirlpool Patents is the owner by assignment of United States Patent No. 6,082,130, which was duly, properly, and legally issued to Whirlpool Corporation by virtue of an assignment from the inventors on July 4, 2000, for an invention entitled "Ice Delivery System for a Refrigerator." A certified copy of the '130 Patent accompanies this Complaint as Exhibit 1. A certified copy of the assignment to Whirlpool Corporation and a copy of the assignment from Whirlpool Corporation to Whirlpool Patents are provided in Exhibit 6 to this Complaint. Under Commission Rule 210.12(c)(2) and (3), also provided with this Complaint in Appendix 1 are: (a) a certified copy and three additional copies of the prosecution history of the '130 Patent; and (b) four copies of each patent and applicable pages of each technical reference mentioned in the prosecution of the '130 Patent.

Answer: Responding to paragraph 4.1, Respondents admit that the '130 Patent on its face indicates that it issued on July 4, 2000 to Whirlpool Corporation and is entitled "Ice Delivery System for a Refrigerator." Respondents admit that Exhibit 1 includes what is purported to be a copy of the '130 Patent. Respondents admit that Exhibit 6 includes what is purported to be a copy of an assignment to Whirlpool Corporation and a copy of an assignment from Whirlpool Corporation to Whirlpool Patents. Respondents admit that Appendix 1 includes what is purported to be (a) a certified copy and three additional copies of the prosecution history of the '130 Patent, and (b) four copies of each patent and applicable pages of each technical reference mentioned in the prosecution of the '130 Patent. Respondents are otherwise without sufficient knowledge or information to form a

10

belief as to the truth of the remaining allegations in paragraph 4.1 and therefore deny them.

4.2    Maytag is the owner by assignment of United States Patent No. 6,810,680, which was duly, properly, and legally issued to Maytag by virtue of an assignment from the inventors on November 2, 2004, for an invention entitled "Ice Maker Fill Tube Assembly." A certified copy of the '680 Patent accompanies this Complaint as Exhibit 2. A certified copy of the assignment to Maytag accompanies this Complaint as Exhibit 7. Under Commission Rule 210.12(c)(2) and (3), also provided with this Complaint in Appendix 2 are: (a) a certified copy and three additional copies of the prosecution history of the '680 Patent; and (b) four copies of each patent and applicable pages of each technical reference mentioned in the prosecution of the '680 Patent.

> Answer: Responding to paragraph 4.2, Respondents admit that the '680 Patent on its face indicates that it issued on November 2, 2004 to Maytag Corporation and is entitled "Ice Maker Fill Tube Assembly." Respondents admit that Exhibit 2 includes what is purported to be a copy of the '680 Patent. Respondents admit that Exhibit 7 includes what is purported to be a copy of an assignment to Maytag Corporation. Respondents admit that Appendix 2 includes what is purported to be (a) a certified copy and three additional copies of the prosecution history of the '680 Patent, and (b) four copies of each patent and applicable pages of each technical reference mentioned in the prosecution of the '680 Patent. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.2 and therefore deny them.

4.3    Maytag is the owner by assignment of United States Patent No. 6,915,644, which was duly, properly, and legally issued to Maytag by virtue of an assignment from the inventors on November 2, 2004, for an invention entitled "Ice Maker Fill Tube Assembly." A certified copy of the '644 Patent accompanies this Complaint as Exhibit 3. A copy of the assignment to Maytag accompanies this Complaint as Exhibit 8. Under Commission Rule 210.12(c)(2) and (3),

11

also provided with this Complaint in Appendix 3 are: (a) four copies of the prosecution history of

the '644 Patent; and (b) four copies of each patent and applicable pages of each technical

reference mentioned in the prosecution of the '644 Patent.    Complainants have requested a

certified copy of the prosecution history of the '644 Patent from the U.S. Patent and Trademark

Office, and will supplement with that certified copy as soon as possible.

> Answer: Responding to paragraph 4.3, Respondents admit that the '644 Patent on its face
> indicates that it issued to Maytag Corporation and is entitled "Ice Maker Fill Tube
> Assembly." Respondents deny that the '644 Patent issued on November 2, 2004.
> Respondents admit that Exhibit 3 includes what is purported to be a copy of the '644
> Patent, however, Respondents deny that that copy is certified. Respondents admit that
> Exhibit 8 includes what is purported to be a copy of an assignment to Maytag
> Corporation. Respondents admit that Appendix 3 includes what is purported to be (a)
> four copies of the prosecution history of the '644 Patent, and (b) four copies of each
> patent and applicable pages of each technical reference mentioned in the prosecution of
> the '644 Patent. Respondents are otherwise without sufficient knowledge or information
> to form a belief as to the truth of the remaining allegations in paragraph 4.3 and therefore
> deny them.

4.4    Maytag is the owner by assignment of United States Patent No. 6,971,730, which

was duly, properly, and legally issued to Maytag by virtue of an assignment from the inventor on

December 6, 2005, for an invention entitled "Freezer Drawer Support Assembly." A certified

copy of the '730 Patent accompanies this Complaint as Exhibit 4.    A certified copy of the

assignment to Maytag accompanies this Complaint as Exhibit 9.    Under Commission Rule

210.12(c)(2) and (3), also provided with this Complaint in Appendix 4 are: (a) a certified copy

and three additional copies of the prosecution history of the '730 Patent; and (b) four copies of

each patent and applicable pages of each technical reference mentioned in the prosecution of the

'730 Patent.

> Answer: Responding to paragraph 4.4, Respondents admit that the '730 Patent on its face
> indicates that it issued on December 6, 2005 to Maytag Corporation and is entitled

12

"Freezer Drawer Support Assembly." Respondents admit that Exhibit 4 includes what is purported to be a copy of the '730 Patent. Respondents admit that Exhibit 9 includes what is purported to be a copy of an assignment to Maytag Corporation. Respondents admit that Appendix 4 includes what is purported to be (a) a certified copy and three additional copies of the prosecution history of the '730 Patent, and (b) four copies of each patent and applicable pages of each technical reference mentioned in the prosecution of the '730 Patent. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.4 and therefore deny them.

4.5    Maytag is the owner by assignment of United States Patent No. 7,240,980, which was duly, properly, and legally issued to Maytag by virtue of an assignment from the inventors on December 6, 2005, for an invention entitled "Freezer Drawer Support Assembly." A certified copy of the '980 Patent accompanies this Complaint as Exhibit 5. A copy of the assignment to Maytag accompanies this Complaint as Exhibit 10. Whirlpool Corporation was listed inadvertently as the assignee on the '980 Patent due to an administrative error. Complainants are in the process of correcting this error with the U.S. Patent and Trademark Office to correctly reflect that Maytag Corporation is the proper assignee on the '980 Patent. Under Commission Rule 210.12(c)(2) and (3), also provided with this Complaint in Appendix 5 are: (a) four copies of the prosecution history of the '980 Patent; and (b) four copies of each patent and applicable pages of each technical reference mentioned in the prosecution of the '980 Patent. Complainants have requested a certified copy of the prosecution history of the '980 Patent from the U.S. Patent and Trademark Office, and will supplement with that certified copy as soon as possible.

Answer: Responding to paragraph 4.5, Respondents admit that the '980 Patent on its face indicates that it is entitled "Freezer Drawer Support Assembly." Respondents deny that the '980 Patent issued on December 6, 2005. Respondents admit that Exhibit 5 includes what is purported to be a copy of the '980 Patent. Respondents admit that Exhibit 10 includes what is purported to be a copy of an assignment to Maytag Corporation. Respondents admit that Appendix 5 includes what is purported to be (a) four copies of the prosecution history of the '980 Patent, and (b) four copies of each patent and

13

applicable pages of each technical reference mentioned in the prosecution of the '980 Patent. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.5 and therefore deny them.

4.6     The '130, '680, '644, '730, and '980 Patents are valid, enforceable, and in full force and effect.

Answer: Responding to paragraph 4.6, Respondents deny the allegations of this paragraph.

B.      Non-Technical Description of the Patents.

**The '130 Patent.**

4.7     One performance feature relating to ice production in refrigerator products that Whirlpool and Maytag both incorporated into their refrigerator products during the advent of side-by-side refrigerator models was an ice storage bin and dispenser on the door. Existing ice dispensing systems involved an ice storage bin and motorized mechanism for moving ice pieces out of the storage bin mounted within the freezer compartment under an icemaker, and an opening in the ice storage bin that is connected to or aligned with the ice dispenser in the freezer door when the door is closed. The '130 Patent modifies this conventional design by mounting the storage bin along with the mechanism for transferring ice from the storage bin to the dispenser on the inside of a door. This modified design - sometimes referred to as the "in-door ice" concept - permits easier access to the storage bin and also increases storage capacity in the freezer compartment for other frozen items.

Answer: Responding to paragraph 4.7, Respondents deny Complainants' characterization of the '130 Patent's disclosure and state that the '130 Patent speaks for itself. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.7 and therefore deny them.

4.8     Seven Whirlpool engineers developed and first disclosed refrigerators having "indoor ice" in the '130 Patent.   The refrigerators disclosed and claimed include a freezer compartment with an ice dispenser in the door wherein an icemaker in the freezer compartment produces ice stored in a storage bin mounted on the inside of the door.   Disposed within the storage bin is an auger connected to a motor, which, when the motor is energized, rotates to move ice pieces in the storage bin through an opening in the bottom of the bin to the ice dispenser in the door.   These features are recited in independent claim 1 of the '130 Patent. Figures 2 and 3 of the '130 Patent illustrate one representative embodiment of the system.



**Fig. 2**

**Fig. 3**

In this embodiment, an auger (element 172) in the ice storage bin (element 28) is connected to a motor (element 200).   In certain embodiments, the refrigerator also includes one or more crushing blades disposed in the ice storage bin which may be used to crush the ice pieces into

15

smaller pieces before they are dispensed through a dispenser (element 31). These elements are added and further described, for example, in dependent claims 5 and 6.

> Answer: Responding to paragraph 4.8, Respondents deny Complainants' characterization of the '130 Patent's disclosure and state that the '130 Patent speaks for itself. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.8 and therefore deny them.

### The '680 and '644 Patents.

4.9    For any refrigerator product having an automatic icemaker, a necessary component of that product is a tube or other means for filling the ice mold in the icemaker with water. One problem encountered with such fill tubes is the tendency of the water in the tube to freeze before it reaches the ice mold. This phenomenon not only hinders the effective operation of the icemaker, but in some cases causes the fill tube to rupture, requiring disconnection of the ice fill tube from its water supply. Maytag refrigerator products in the market prior to the implementation of the '680 and '644 Patents' technology had a service incident rate ("SIR") for problems involving rupture of the ice fill tube of about 5% (*i.e.*, 50,000 failures for every 1 million products). Prior solutions to this problem generally required the use of a heater to prevent the fill tube and its contents from freezing, but this additional heater added significant cost to the manufacture and maintenance of the refrigerator unit, and decreased the energy efficiency at which the overall unit was able to operate.

> Answer: Responding to paragraph 4.9, Respondents deny Complainants' characterization of the '680 and '644 Patents' disclosure and state that the '680 and '644 Patents speak for themselves. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.9 and therefore deny them.

16

4.10    Maytag engineers developed a unique solution to this problem, which is now claimed in the '680 and '644 Patents. One aspect of this solution involved inserting the ice fill tube into the freezer compartment through a hole in the freezer compartment's inner liner with a certain "clearance" between the inner diameter of the hole and the outer diameter of the tube. This clearance communicated with the space between the outer wall and the inner liner of the freezer compartment where heat is generated. The heat is permitted to circulate through the clearance to the area of the freezer compartment immediately surrounding the fill tube, thereby preventing ice formation on the surface of or within the tube. This element is recited in independent claims 1 and 6 of the '680 Patent. Another aspect of this solution disclosed in the '680 and '644 Patents includes one or more vents formed along the length of the fill tube that further aid in preventing ice formation in the fill tube. This element is recited in independent claim 1 and dependent claim 7 of the '680 Patent and independent claims 1 and 6 of the '644 Patent. Those vents are further described in dependent claims 3-5 and 7-9 of the '680 Patent and dependent claims 2 and 8 of the '644 Patent. Figure 2 of the '680 Patent illustrates an exemplary embodiment of the inventions claimed in the '680 and '644 Patents.

## *FIG. 2*



This figure shows the opening (element 51) in the inner liner (element 45) of the freezer through which the fill tube (element 40) is inserted with a clearance (element 52) between the outer surface of the tube and the edges of the opening, as well as the vents (element 55) in the top portion of the fill tube along its length. The implementation of this solution reduced the SIR for problems involving the rupture of a frozen fill tube from its prior level of 5% to almost zero.

> Answer: Responding to paragraph 4.10, Respondents deny Complainants' characterization of the '680 and '644 Patents' disclosure and state that the '680 and '644 Patents speak for themselves. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.10 and therefore deny them.

### The '730 and '980 Patents.

4.11    One of the most recent shifts in the household refrigerator market has been the popularization of the bottom-mount pull out drawer freezer models appearing around 2001. *See, e.g.,* Exhibit 16-C, Figure 2. One of the design challenges presented with these models was the attachment of a supporting structure to the side walls of the freezer compartment liner on which

18

the drawer could be slidably supported. However, attachment of such a structure to the thin plastic wall of the freezer compartment liner required the formation of unwanted holes in the liner, and in some cases, the side wall of the liner to which the structure was attached would be unable to bear heavy loads placed in the freezer drawer, causing damage to the liner.

> Answer: Responding to paragraph 4.11, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

4.12    Additionally, whatever supporting structures installed on the side walls of the freezer compartment on which the freezer drawer travels need to be parallel to ensure smooth, unobstructed sliding of the drawer. Conventional freezer compartment liners in most household refrigerator models are formed such that the side walls of the liner are tapered or drafted slightly toward the back wall. However, these tapers and/or drafts make the side walls of the liner not parallel, which presented additional challenges to the design of a smoothly sliding freezer drawer.

> Answer: Responding to paragraph 4.12, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

4.13    Maytag engineer Bill Koons devised and developed the idea of using a pair of adapter pieces that can be installed on the side walls of the freezer compartment liner in a manner that provides improved support for the drawer slides mounted thereon. A pair of extensible drawer slides then may be mounted on the sides of the adapters facing the center of the freezer compartment, which can support a basket to complete the drawer assembly. These elements are recited in one or more of independent claims 1, 2, and 22 of the '730 Patent and independent claims 1 and 8 of the '980 Patent.

Answer: Responding to paragraph 4.13, Respondents deny Complainants' characterization of the '730 and '980 Patents' disclosure and state that the '730 and '980 Patents speak for themselves. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.13 and therefore deny them.

4.14    Exemplary embodiments of the claimed refrigerators and the adapter used in the claimed inventions of the '730 and '980 Patents are illustrated in Figures 1, 2 (front view of adapter), and 3 (back view of adapter) of the '980 Patent.



20

As shown, a channel (element 176 in Figure 2) on an adapter (elements 40 and 41) defines a space that receives an extensible drawer slide (element 36 in Figure 1). These elements also are recited in independent claims 1 and 2 and dependent claim 27 of the '730 Patent, and are further specified in dependent claims 9, 10, and 24 of the '730 Patent. These elements also are recited in independent claims 1 and 8 of the '980 Patent, and are further specified in claims 2-5 and 11 of the '980 Patent. The adapter shown in Figures 2 and 3 also includes a cantilevered member (element 143) that projects into the channel and "snap-fits" the drawer slide inserted into the channel. These elements are recited in dependent claims 11 and 23 of the '730 Patent and claims 6 and 8 of the '980 Patent.

> Answer: Responding to paragraph 4.14, Respondents deny Complainants' characterization of the '730 and '980 Patents' disclosure and state that the '730 and '980 Patents speak for themselves. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.14 and therefore deny them.

4.15    Koons' solution also solved the problem associated with the taper and/or draft of the side walls of the liner by forming the adapter pieces with a taper or draft in the opposite direction (*i.e.,* back to front), such that the opposing surfaces of a pair of adapters, when installed in the freezer compartment, would be parallel to each other. This feature is recited in independent claims 1 and 2, and dependent claim 29, of the '730 Patent and claims 1 and 13 of the '980 Patent.

> Answer: Responding to paragraph 4.15, Respondents deny Complainants' characterization of the '730 and '980 Patents' disclosure and state that the '730 and '980 Patents speak for themselves. Respondents are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.15 and therefore deny them.

21

C.    **Licenses Under the Whirlpool and Maytag Patents.**

4.16    Whirlpool Patents has nonexclusively licensed rights under the '130 Patent to Whirlpool Manufacturing, which in turn has nonexclusively licensed rights in the '130 Patent to Whirlpool Corporation. There are no additional licenses of rights under the '130 Patent.

> Answer: Responding to paragraph 4.16, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

4.17    Under Commission Rule 210.12(c)(l), three copies of the agreements licensing rights under the '130 Patent accompany this Complaint in Confidential Appendix 1. These agreements are confidential.

> Answer: Responding to paragraph 4.17, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

4.18    Maytag has not licensed any rights under the '680, '644, '730, or '980 Patent.

> Answer: Responding to paragraph 4.18, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

D.    **Foreign Counterpart Applications.**

4.19    Attached hereto as Exhibit 11 is a chart listing each foreign patent issued and each foreign patent application (not already issued as a patent) corresponding to each of the '130, '680, '644, '730, and '980 Patents. Exhibit 11 also includes an indication of the prosecution status of each foreign patent application. No foreign application corresponding to any of the '130, '680, '644, '730, or '980 Patent has been denied.

> Answer: Responding to paragraph 4.19, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

## V.    THE LG ENTITIES' PATENT INFRINGEMENT

### A.    The LG Entities' Infringing Products

5.1    Representative claim 1 of the '130 Patent is reproduced in the Claim Chart 1 provided in Exhibit 12. Also provided in Exhibit 12-A are photographs of a representative LG refrigerator product that bears the model number LSC27950SW. Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the LG refrigerator product in Claim Chart 1. As demonstrated by this claim chart and photographs in Exhibit 12-A, the representative LG refrigerator product includes every element of claim 1 of the '130 Patent. Complainants assert that Respondents infringe at least claims 1,2,4,6, 8, and 9 of the '130 Patent.

> Answer: Responding to paragraph 5.1, Respondents admit that claim 1 of the '130 Patent is reproduced in the Claim Chart 1 provided in Exhibit 12. Respondents deny that the claim chart and photographs in Exhibit 12-A demonstrate that the representative LG refrigerator includes every element of claim 1 of the '130 Patent. Respondents deny that Respondents infringe any valid and enforceable claim of the '130 Patent. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5.1 and therefore deny them.

5.2    Representative claim 1 of the '680 Patent is reproduced in Claim Charts 2a and 2b provided in Exhibit 12. Provided in Exhibit 12-B1 are photographs of a representative LG refrigerator product that bears the model number LSC26905SB. Provided in Exhibit 12-B2 are photographs of a representative Kenmore®-branded refrigerator product that, on information and belief, is manufactured, imported, sold for importation, and/or sold after importation by LG and bears the model number 795.77719700. Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the LG and Kenmore®-branded

23

refrigerator products in Claim Charts 2a and 2b. As demonstrated by these claim charts and the photographs in Exhibits 12-B1 and 12-B2, the representative LG and Kenmore®-branded refrigerator products include every element of claim 1 of the '680 Patent. Complainants assert that Respondents infringe at least claims 1-14 of the '680 Patent.

> Answer: Responding to paragraph 5.2, Respondents admit that claim 1 of the '680 Patent is reproduced in the Claim Charts 2a and 2b provided in Exhibit 12. Respondents deny that the claim charts and photographs in Exhibits 12-B1 and 12-B2 demonstrate that the representative LG and Kenmore®-branded refrigerator products include every element of claim 1 of the '680 Patent. Respondents deny that Respondents infringe any valid and enforceable claim of the '680 Patent. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5.2 and therefore deny them.

5.3     Representative claim 6 of the '644 Patent is reproduced in Claim Charts 3a and 3b provided in Exhibit 12. Provided in Exhibit 12-B1 are photographs of a representative LG refrigerator product that bears the model number LSC26905SB. Provided in Exhibit 12-B2 are photographs of a representative Kenmore®-branded refrigerator product that, on information and belief, is manufactured, imported, sold for importation, and/or sold after importation by LG and bears the model number 795.77719700. Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the LG and Kenmore®-branded refrigerator products in Claim Charts 3a and 3b. As demonstrated by these claim charts and the photographs in Exhibits 12-Bl and 12-B2, the representative LG and Kenmore®-branded refrigerator products include every element of claim 6 of the '644 Patent. Complainants assert that Respondents infringe at least claims 1-13 of the '644 Patent.

> Answer: Responding to paragraph 5.3, Respondents admit that claim 6 of the '644 Patent is reproduced in the Claim Charts 3a and 3b provided in Exhibit 12. Respondents deny that the claim charts and photographs in Exhibits 12-B1 and 12-B2 demonstrate that the representative LG and Kenmore®-branded refrigerator products include every element of

24

claim 6 of the '644 Patent. Respondents deny that Respondents infringe any valid and enforceable claim of the '644 Patent. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5.3 and therefore deny them.

5.4     Representative claim 2 of the '730 Patent is reproduced in Claim Charts 4a and 4b provided in Exhibit 12. Provided in Exhibit 12-Cl are photographs of a representative LG refrigerator product that bears the model number LFX25980ST. Provided in Exhibit 12-C2 are photographs of a representative Kenmore®-branded refrigerator product that, on information and belief, is manufactured, imported, sold for importation, and/or sold after importation by LG and bears the model number 795.77562600. Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the LG and Kenmore®-branded refrigerator products in Claim Charts 4a and 4b. As demonstrated by these claim charts and the photographs in Exhibits 12-Cl and 12-C2, the representative LG and Kenmore®-branded refrigerator products include every element of claim 2 of the '730 Patent. Complainants assert that Respondents infringe at least claims 2, 3, 7-12, 22-24, and 29 of the '730 Patent.

Answer: Responding to paragraph 5.4, Respondents admit that claim 2 of the '730 Patent is reproduced in the Claim Charts 4a and 4b provided in Exhibit 12. Respondents deny that the claim charts and photographs in Exhibits 12-Cl and 12-C2 demonstrate that the representative LG and Kenmore®-branded refrigerator products include every element of claim 2 of the '730 Patent. Respondents deny that Respondents infringe any valid and enforceable claim of the '730 Patent. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5.4 and therefore deny them.

5.5     Representative claim 1 of the '980 Patent is reproduced in Claim Charts 5a and 5b provided in Exhibit 12. Provided in Exhibit 12-Cl are photographs of a representative LG refrigerator product that bears the model number LFX25980ST. Provided in Exhibit 12-C2 are photographs of a representative Kenmore®-branded refrigerator product that, on information and

25

belief, is manufactured, imported, sold for importation, and/or sold after importation by LG and bears the model number 795.77562600. Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the LG and Kenmore®-branded refrigerator products in Claim Charts 5a and 5b. As demonstrated by these claim charts and the photographs in Exhibits 12-C1 and 12-C2, the representative LG and Kenmore®-branded refrigerator products include every element of claim 1 of the '980 Patent. Complainants assert that Respondents infringe at least claims 1 and 3-20 of the '980 Patent.

> Answer: Responding to paragraph 5.5, Respondents admit that claim 1 of the '980 Patent is reproduced in the Claim Charts 5a and 5b provided in Exhibit 12. Respondents deny that the claim charts and photographs in Exhibits 12-C1 and 12-C2 demonstrate that the representative LG and Kenmore®-branded refrigerator products include every element of claim 1 of the '980 Patent. Respondents deny that Respondents infringe any valid and enforceable claim of the '980 Patent. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5.5 and therefore deny them.

**B.    The LG Entities' Unlawful Importation.**

5.6    Upon information and belief, the LG Entities presently import, sell for importation, and/or sell or offer for sale within the United States after importation, refrigerators and components thereof that infringe claims of the '130, '680, '644, '730, and '980 Patents.

> Answer: Responding to paragraph 5.6, Respondents deny that they presently import, sell for importation, and/or sell or offer for sale within the United States after importation, refrigerators and components thereof that infringe any valid and enforceable claims of the '130, '680, '644, '730, and '980 Patents.

5.7    Upon information and belief, at least some of the refrigerators and components thereof that infringe claims of the '130, '680, '644, '730, and '980 Patents imported, sold for importation, and/or sold or offered for sale within the United States after importation by the LG Entities are branded with the Kenmore® brand owned by Sears or with the GE® brand owned by

26

General Electric. Upon information and belief, one or more of the LG Entities sell such refrigerators to Sears and/or General Electric for importation into the United States, and such refrigerators currently are sold in the United States. Exemplary Kenmore®-branded infringing refrigerator products sold by Sears within the United States that, on information and belief, are manufactured, imported, sold for importation, and/or sold after importation by LG include the refrigerator products pictured in Exhibits 12-B2 and 12-C2.

> Answer: Responding to paragraph 5.7, Respondents deny that they import, sell for importation, and/or sell or offer for sale within the United States after importation, refrigerators and components branded with the Kenmore® brand owned by Sears or with the GE® brand owned by General Electric that infringe any valid and enforceable claims of the '130, '680, '644, '730, and '980 Patents. Respondents admit that one or more of the LG Entities sell refrigerator products to Sears and/or General Electric, who in turn sell those products in the United States. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5.7 and therefore deny them.

    5.8    Attached as Exhibit 13 to this Complaint is the sales receipt from the purchase of the LG refrigerator products that are pictured and described in Exhibits 12-A, 12-B1, and 12-C1 showing that these refrigerator products were purchased in St. Joseph, Michigan on behalf of Whirlpool on or about January 8, 2008. Attached as Exhibit 14 to this Complaint is the sales receipt from the purchase of the representative Kenmore®-branded infringing refrigerator product pictured and described in Exhibit 12-B2 that, on information and belief, was manufactured, imported, sold for importation, and/or sold after importation by LG. Exhibit 14 shows that this product was purchased in Benton Harbor, Michigan on behalf of Whirlpool on or about January 7, 2008. Attached as Exhibit 15 to this Complaint is the sales receipt from the purchase of the representative Kenmore®-branded infringing refrigerator product pictured and described in Exhibit 12-C2 that, on information and belief, was manufactured, imported, sold for importation,

and/or sold after importation by LG. Exhibit 15 shows that this product was purchased in Benton Harbor, Michigan on behalf of Whirlpool on or about January 7, 2008. As shown in Figure 1 of each of Exhibits 12-A, 12-Bl, 12-B2, 12-Cl, and 12-C2, those representative products were manufactured in Korea and Mexico.

> Answer: Responding to paragraph 5.8, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

## VI.    THE DOMESTIC INDUSTRY

6.1    A domestic industry, as defined in 19 U.S.C. § 1337(a)(3), exists, and additionally or alternatively, is in the process of being established, in connection with Complainants' activities, related to the inventions protected under the '130, '680, '644, '730, and '980 Patents. A domestic industry exists and/or is in the process of being established based on the domestic manufacture, research, development, sales, and marketing-related expenditures made by Complainants, either directly or by their wholly owned subsidiaries, in connection with numerous refrigerator products that include the following features: (a) in-door-ice delivery systems covered by the '130 Patent; (b) vented icemaker fill tube assemblies covered by the '680 and '644 Patents; and (c) pull out drawer freezers covered by the '730 and '980 Patents. Section A below demonstrates how certain exemplary products made by Complainants include each of the features covered by the asserted patents. Sections B through D below describe Complainants' domestic expenditures associated with products that include features covered by the asserted patents.

> Answer: Responding to paragraph 6.1, Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

A.     **Complainants' Practice of the Asserted Patents.**

6.2     Representative claim 1 of the '130 Patent is reproduced in Claim Chart 1 provided in Exhibit 16.  Also provided in Exhibit 16-A are photographs of a representative refrigerator product of Complainants that bears the model number ED5FHAXSQO1.   Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the refrigerator product in Claim Chart 1.   As demonstrated by the claim chart and the photographs in Exhibit 16-A, the representative refrigerator product of Complainants includes every element of claim 1 of the '130 Patent.

> Answer: Responding to paragraph 6.2, Respondents admit that claim 1 of the '130 Patent is reproduced in Claim Chart 1 provided in Exhibit 16.  Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.3     Representative claim 1 of the '680 Patent is reproduced in Claim Chart 2 provided in Exhibit 16.  Also provided in Exhibit 16-B are photographs of a representative refrigerator product of Complainants that bears the model number MZD2666KEW.   Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the refrigerator product in Claim Chart 2.   As demonstrated by this claim chart and the photographs in Exhibit 16-B, the representative refrigerator product of Complainants includes every element of claim 1 of the '680 Patent.

> Answer: Responding to paragraph 6.3, Respondents admit that claim 1 of the '680 Patent is reproduced in Claim Chart 2 provided in Exhibit 16.  Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.4    Representative claim 6 of the '644 Patent is reproduced in Claim Chart 3 provided in Exhibit 16. Also provided in Exhibit 16-B are photographs of a representative refrigerator product of Complainants that bears the model number MZD2666KEW. Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the refrigerator product in Claim Chart 3. As demonstrated by this claim chart and the photographs in Exhibit 16-B, the representative refrigerator product of Complainants includes every element of claim 6 of the '644 Patent.

Answer: Responding to paragraph 6.4, Respondents admit that claim 6 of the '644 Patent is reproduced in Claim Chart 3 provided in Exhibit 16. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.5    Representative claim 2 of the '730 Patent is reproduced in Claim Chart 4 provided in Exhibit 16. Also provided in Exhibit 16-C are photographs of a representative refrigerator product of Complainants that bears the model number MFI2568AES. Portions of the photographs are labeled with numbers corresponding to the numbered parts in the description of the refrigerator product in Claim Chart 4. As demonstrated by this claim chart and the photographs in Exhibit 16-C, the representative refrigerator product of Complainants includes every element of claim 2 of the '730 Patent.

Answer: Responding to paragraph 6.5, Respondents admit that claim 2 of the '730 Patent is reproduced in Claim Chart 4 provided in Exhibit 16. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.6    Representative claim 1 of the '980 Patent is reproduced in Claim Chart 5 provided in Exhibit 16-C. Also provided in Exhibit 16-C are photographs of a representative refrigerator product of Complainants that bears the model number MFI2568AES. Portions of the

30

photographs are labeled with numbers corresponding to the numbered parts in the description of

the refrigerator product in Claim Chart 5.   As demonstrated by this claim chart and the

photographs in Exhibit 16-C, the representative refrigerator product of Complainants includes

every element of claim 1 of the '980 Patent.

> Answer: Responding to paragraph 6.6, Respondents admit that claim 1 of the '980 Patent
> is reproduced in Claim Chart 5 provided in Exhibit 16.  Respondents are without
> sufficient knowledge or information to form a belief as to the truth of the remaining
> allegations in this paragraph and therefore deny them.

**B.     Complainants' Significant Investment in Plant and Equipment.**

6.7     Complainants have made significant investments in plant and equipment as

contemplated by Section 337(a)(3) in the form of investments in domestic facilities used for the

manufacture, engineering, and/or research and development in connection with Complainants'

covered products in at least the following locations: Evansville, Indiana; Amana, Iowa; Fort

Smith, Arkansas; and La Vergne, Tennessee.

> Answer: Responding to paragraph 6.7, Respondents are without sufficient knowledge or
> information to form a belief as to the truth of the allegations in this paragraph and
> therefore deny them.

6.8     Complainants' operating costs for operating the foregoing facilities in 2006 and

2007 are substantial, as described in Declaration of Todd S Melton ("Melton Declaration"),

which is attached as Confidential Exhibit 1 to this Complaint.  The information contained in that

Declaration is confidential.  The expenditures described therein include costs to supply power to

the facilities, maintenance, costs associated with equipment and/or equipment repair.  *(See*

Confidential Exhibit I, Melton Declaration, ¶¶ 6-8).

> Answer: Responding to paragraph 6.8, Respondents admit only that the identified exhibit
> speaks for itself.  Respondents are without sufficient knowledge or information to form a

31

belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

**C.    Complainants' Significant Employment of Labor or Capital.**

6.9    Complainants have made significant employment of labor and capital as contemplated by Section 337(a)(3) in the form of at least the following: employees and labor associated salaries, wages, and benefits; costs associated with all aspects of the development and production of Complainants' covered products; and investments in materials necessary for the manufacture of Complainants' covered products.    Specifically, Complainants employ 1,124, 2,057, 2,310, and 523 employees at their facilities in Evansville, Amana, Fort Smith, and La Vergne, respectively.    (*See* Confidential Exhibit 1, Melton Declaration, ¶ 4).    A substantial number of such employees are involved in some aspect of the development, engineering, manufacture, promotion, or other activities related to sales of the Complainants' covered products.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 4).  Further, in 2006 and 2007, Complainants' total capital expenditures in connection with activities in connection with their covered products were substantial.    (*See* Confidential Exhibit I, Melton Declaration, ¶¶ 5-9). The expenditures made in connection with Complainants' covered refrigerator products for each of the '130, '680, '644, '730, and '980 Patents are discussed below.    Because each of Complainants' covered products may be covered by more than one of these patents, the expenditures attributable to each of the patents may overlap in some cases.

> Answer: Responding to paragraph 6.9, Respondents admit only that the identified exhibit speaks for itself.  Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.10    With respect to expenditures made in connection with the '130 Patent, Complainants made substantial domestic expenditures during 2006 and 2007 in production costs associated with Complainants' covered refrigerator products.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 6).  Complainants made substantial domestic expenditures during 2006 and 2007 on other costs, such as freight, warehousing, and warranty costs associated with Complainants' covered refrigerator products.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 6).  Complainants made substantial domestic expenditures during 2006 and 2007 on sales and promotional activities such as brand-based sales activities (*e.g.*, point-of-sale materials, consumer incentives/rebates, and media expenses), trade-based sales activities (*e.g.*, training, incentives and other marketing activities with trade partners), and sales allowances associated with Complainants' covered refrigerator products.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 6).

> Answer: Responding to paragraph 6.10, Respondents admit only that the identified exhibit speaks for itself.  Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.11    With respect to expenditures made in connection with the '680 Patent, Complainants made substantial domestic expenditures during 2006 and 2007 in production costs associated with Complainants' covered refrigerator products.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 7).  Complainants made substantial domestic expenditures during 2006 and 2007 on other costs, such as freight, warehousing, and warranty costs associated with Complainants' covered refrigerator products.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 7).  Complainants made substantial domestic expenditures during 2006 and 2007 on sales and

promotional activities such as brand-based sales activities (*e.g.,* point-of-sale materials, consumer incentives/rebates, and media expenses), trade-based sales activities (*e.g.,* training, incentives and other marketing activities with trade partners), and sales allowances associated with Complainants' covered refrigerator products.    (*See* Confidential Exhibit 1, Melton Declaration, ¶ 7).

> Answer: Responding to paragraph 6.11, Respondents admit only that the identified exhibit speaks for itself. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.12    With respect to expenditures made in connection with the '644 Patent, Complainants made substantial domestic expenditures during 2006 and 2007 in production costs associated with Complainants' covered refrigerator products.    (*See* Confidential Exhibit 1, Melton Declaration, ¶ 7).    Complainants made substantial domestic expenditures during 2006 and 2007 on other costs, such as freight, warehousing, and warranty costs associated with Complainants' covered refrigerator products.    (*See* Confidential Exhibit 1, Melton Declaration, ¶ 7).    Complainants made substantial domestic expenditures during 2006 and 2007 on sales and promotional activities such as brand-based sales activities (*e.g.,* point-of-sale materials, consumer incentives/rebates, and media expenses), trade-based sales activities (*e.g.,* training, incentives and other marketing activities with trade partners), and sales allowances associated with Complainants' covered refrigerator products.    (*See* Confidential Exhibit 1, Melton Declaration, ¶ 7).

> Answer: Responding to paragraph 6.12, Respondents admit only that the identified exhibit speaks for itself. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.13    With respect to expenditures made in connection with the '730 Patent, Complainants made substantial domestic expenditures during 2006 and 2007 in production costs associated with Complainants' covered refrigerator products. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 8). Complainants made substantial domestic expenditures during 2006 and 2007 on other costs, such as freight, warehousing, and warranty costs associated with Complainants' covered refrigerator products. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 8). Complainants made substantial domestic expenditures during 2006 and 2007 on sales and promotional activities such as brand-based sales activities (*e.g.*, point-of-sale materials, consumer incentives/rebates, and media expenses), trade-based sales activities (*e.g.*, training, incentives and other marketing activities with trade partners), and sales allowances associated with Complainants' covered refrigerator products. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 8).

> Answer: Responding to paragraph 6.13, Respondents admit only that the identified exhibit speaks for itself. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.14    With respect to expenditures made in connection with the '980 Patent, Complainants made substantial domestic expenditures during 2006 and 2007 in production costs associated with Complainants' covered refrigerator products. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 8). Complainants made substantial domestic expenditures during 2006 and 2007 on other costs, such as freight, warehousing, and warranty costs associated with Complainants' covered refrigerator products. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 8). Complainants made substantial domestic expenditures during 2006 and 2007 on sales and

promotional activities such as brand-based sales activities (*e.g.,* point-of-sale materials, consumer incentives/rebates, and media expenses), trade-based sales activities (*e.g.,* training, incentives and other marketing activities with trade partners), and sales allowances associated with Complainants' covered refrigerator products.     (*See* Confidential Exhibit 1, Melton Declaration, ¶ 8).

> Answer: Responding to paragraph 6.14, Respondents admit only that the identified exhibit speaks for itself.  Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

**D.     Complainants' Substantial Investment in the Exploitation of the Subject Patents, Including Engineering, and Research and Development.**

6.15     Complainants have made substantial investments in the exploitation of the subject patents, including engineering, and research and development.  The Complainants' substantial investment in the exploitation of the subject patents can be seen by reference to the volume of covered refrigerator products domestically manufactured and then sold by Complainants during 2006 and 2007 alone.  Specifically, in connection with products covered by the '130 Patent, in 2006 and 2007, Complainants manufactured and sold substantial quantities of covered units, with substantial net sales revenues.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 10).     In connection with products covered by the '680 Patent, in 2006 and 2007, Complainants manufactured and sold substantial quantities of covered units, with substantial net sales revenues. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 10).  In connection with products covered by the '644 Patent, in 2006 and 2007, Complainants manufactured and sold substantial quantities of covered units, with substantial net sales revenues.  (*See* Confidential Exhibit 1, Melton Declaration, ¶ 10).  In connection with products covered by the '730 Patent, in 2006 and 2007,

. 36

Complainants manufactured and sold substantial quantities of covered units, with substantial net sales revenues. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 10). In connection with products covered by the '980 Patent, in 2006 and 2007, Complainants manufactured and sold substantial quantities of covered units, with substantial net sales revenues. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 10).

> Answer: Responding to paragraph 6.15, Respondents admit only that the identified exhibit speaks for itself. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

6.16    Complainants' substantial investments can also be seen by reference to their engineering expenditures, which includes research and development costs for Complainants' covered refrigerator products. Specifically, in 2006 and 2007, Complainants made significant expenditures on engineering costs for products covered by the '130, '680, '644, '730, and '980 Patents. (*See* Confidential Exhibit 1, Melton Declaration, ¶ 9).

> Answer: Responding to paragraph 6.16, Respondents admit only that the identified exhibit speaks for itself. Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

## VII.    CLASSIFICATIONS OF INFRINGING PRODUCTS UNDER THE HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES

The refrigerators and components thereof that the LG Entities import, sell for importation, and/or sell after importation unlawfully and in violation of Whirlpool Patents' and Maytag's patent rights are classified in the Harmonized Tariff Schedule of the United States ("HTSUS") under HTSUS item numbers 8418.21.0030 and 8418.21.0090. These are exemplary numbers for illustration only and are not intended to be restrictive of the products accused.

37

Answer: Respondents deny that they import, sell for importation, and/or sell after importation refrigerators and components thereof that violate Whirlpool Patents' and Maytag's patent rights.  Respondents also deny that the refrigerators and components thereof are classified in the Harmonized Tariff Schedule of the United States ("HTSUS") under HTSUS item numbers 8418.21.0030 and 8418.21.0090.  Respondents are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny them.

## VIII.    RELATED LITIGATION

The '130, '680, '644, '730, and '980 Patents have not been the subject of any court or agency proceeding.  No foreign patent corresponding to the '130, '680, '644, '730, or '980 Patent has been the subject of any court or agency proceeding.

Answer: Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

## IX.    RELIEF REQUESTED

Wherefore, Complainants request that the United States International Trade Commission:

(a)    institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, into the unfair acts and methods of competition by the LG Entities in the importation, sale for importation, sale, and/or offer for sale after the importation within the United States, and/or the manufacture abroad for importation, sale, and/or offer for sale within the United States, of refrigerators and/or components thereof that infringe any of at least claims 1, 2, 4, 6, 8, and 9 of the' 130 Patent, claims 1-14 of the '680 Patent, claims 1-13 of the '644 Patent, claims 2, 3, 7-12, 22-24, and 29 of the '730 Patent, or claims 1 and 3-20 of the '980 Patent;

(b)    hold a public hearing for purposes of receiving evidence and hearing argument concerning whether there has been a violation of Section 337;

(c)    determine that there has been a violation of Section 337;

(d)    issue a permanent exclusion order pursuant to Section 337(d), excluding from entry into the United States refrigerators and/or components thereof manufactured, sold, assembled, imported, or sold for importation by or on behalf of any of the LG Entities that infringe any of at least claims 1, 2, 4, 6, 8, and 9 of the '130 Patent, claims 1-14 of the '680 Patent, claims 1-13 of the '644 Patent, claims 2, 3, 7-12, 22-24, and 29 of the '730 Patent, or claims 1 and 3-20 of the '980 Patent;

(e)    issue a permanent cease and desist order pursuant to Section 337(f), directing the LG Entities and their related companies to cease and desist their unfair acts and methods of competition, including importing, selling for importation, assembling, testing, marketing, distributing, offering for sale, selling, or otherwise transferring in the United States imported refrigerators and/or components thereof that infringe any of claims 1, 2, 4, 6, 8, and 9 of the '130 Patent, claims 1-14 of the '680 Patent, claims 1-13 of the '644 Patent, claims 2, 3, 7-12, 22-24, and 29 of the '730 Patent, or claims 1 and 3-20 of the '980 Patent; and

(f)    issue such other and further relief as the Commission deems just and proper under the law, based upon the facts determined by the investigation and the authority of the Commission.

Answer:  Respondents respond that the Complaint is unfounded and the relief requested by Complainants should be denied in its entirety.

## INFORMATION REQUIRED UNDER COMMISSION RULE 210.13

Respondents understand the accused products in this Investigation to be LG refrigerator

39

products with model numbers LSC27950SW, LSC26905SB, and LFX25980ST, as well as

Kenmore-branded refrigerator products with model numbers 795.77719700 and 795.77562600

(collectively "Accused Products"). Respondents presently understand that Accused Products are

imported under Harmonized Tariff Schedule Code 8418.10.0040. The quantity and value of U.S.

sales in 2007, of the Accused Products are [

] Further, Respondents understand that the United States may be an

important market for purchase of the Accused Products, and the Accused Products' sales in the

United States are [    ] of Respondents' total sales worldwide.

Respondents assemble the Accused Products and it appears that Respondents produced

[                    ] of Accused Products in 2007. Respondents are continuing

its investigation and will supplement this response if necessary.

### AFFIRMATIVE DEFENSES

Respondents assert the following affirmative defenses. Respondents note that this

Investigation is in its early stages and that discovery has just commenced. Accordingly, as this

Investigation proceeds, Respondents reserve the right to modify and supplement their defenses

and to assert additional defenses through discovery and other appropriate means under the Rules

and procedures of the ITC and the Ground Rules of the Judge.

As part of their affirmative defenses and pleading of defenses, Respondents incorporate

by reference the responses and denials set forth in Paragraphs 1.1 through 6.16, and the

responses and denials as set forth in Sections VII, VIII, and XI above.

### '130 PATENT: NONINFRINGEMENT

40

1.    Respondents have not infringed and do not infringe any valid and/or enforceable claims of the '130 patent, either directly or indirectly. Complainants bear the burden to prove infringement of the '130 patent and have failed to assert any valid claims of infringement upon which relief can be granted.

2.    In the Complaint, Complainants identified claim 1 of the '130 patent as "representative" of the asserted claims of this patent. Based on the claim chart for representative claim 1, Complainants are claiming that Respondents infringe.

3.    The Respondents' accused products do not infringe representative claim 1. By means of example only, the accused products do not include "an ice maker being disposed within the freezer compartment for forming ice pieces," or "an ice storage bin …for receiving ice from the ice maker," or "a motor mounted on the closure member," as recited by claim 1 of the '130 patent. Accordingly, regardless of how the remaining elements and limitations of representative claim 1 are construed, Respondents do not infringe this claim.

4.    To the extent that any of the asserted claims of the '130 patent are somehow construed to avoid the prior art and not be invalid over the prior art, then Respondents do not practice or infringe the asserted claims.

### '130 PATENT: INVALIDITY

5.    The Asserted Claims of the '130 patent are invalid under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including, but not limited to, 35 U.S.C. §§ 102 and 103.

6.    In the Complaint, Complainants identified claim 1 of the '130 patent as "representative" of the asserted claims of this patent.

41

7.      Representative claim 1 of the '130 patent is invalid under 35 U.S.C. § 102.  An illustrative example of the anticipatory prior art includes, but is not limited to, Japanese Utility Model Publication No. 51-21165 and Japanese Utility Model Publication No. 51-21173 (attached hereto as Exhibits 1 & 2).

8.      Representative claim 1 of the '130 patent is invalid under 35 U.S.C. § 103.  An illustrative example of the prior art rendering obvious this claim includes, but is not limited to, the prior art identified above and  Japanese Patent Publication No. 49-50545, Japanese Utility Model Publication No. 51-148756 (attached hereto as Exhibits 3 & 4), as well as the prior art cited in the '130 patent and already of record.

## '680 PATENT: NONINFRINGEMENT

9.      Respondents have not infringed and do not infringe any valid and/or enforceable claims of the '680 patent, either directly or indirectly.  Complainants bear the burden to prove infringement of the '680 patent and have failed to assert any valid claims of infringement upon which relief can be granted.

10.     In the Complaint, Complainants identified claim 1 of the '680 patent as "representative" of the asserted claims of this patent.  Based on the claim chart for representative claim 1, Complainants are claiming that Respondents infringe.

11.     The Respondents' accused products do not infringe representative claim 1.  By means of example only, the accused products do not include  "a clearance between said inner wall and said fill tube to permit a flow of air about the fill tube through the clearance," as recited

by claim 1 of the '680 patent. Accordingly, regardless of how the remaining elements and limitations of representative claim 1 are construed, Respondents do not infringe this claim.

12.    To the extent that any of the asserted claims of the '680 patent are somehow construed to avoid the prior art and not be invalid over the prior art, then Respondents do not practice or infringe the asserted claims.

## '680 PATENT: INVALIDITY

13.    The Asserted Claims of the '680 patent are invalid under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including, but not limited to, 35 U.S.C. §§ 102, 103, and 112.

14.    In the Complaint, Complainants identified claim 1 of the '680 patent as "representative" of the asserted claims of this patent.

15.    Representative claim 1 of the '680 patent is invalid under 35 U.S.C. § 102. By means of example only, the anticipatory prior art includes but is not limited to Korean Patent Publication No. U1999-0019474 (attached hereto as an Exhibit 5) and the prior art that Complainants placed into the public domain, through  sales, offers for sales, and public uses of its products, including by means of example only, Maytag refrigerators having model numbers beginning with MSD2758 and MTB2156.

16.    Representative claim 1 of the '680 patent is invalid under 35 U.S.C. § 103. An illustrative example of the prior art rendering obvious this claim includes, but is not limited to, the prior art  identified above, Korean Patent Publication No. U1999-0030068 (attached hereto as Exhibit 6), and the prior art cited in the '680 and the '644 patents and already of record.

43

17.     Representative claim 1 of the '680 patent is invalid under 35 U.S.C. § 112 because the claim language "wherein the fill tube extends through the opening in the inner wall with a clearance between said inner wall and said fill tube to permit a flow of air about the fill tube through the clearance" is vague and indefinite.

### '644 PATENT: NONINFRINGEMENT

18.     Respondents have not infringed and do not infringe any valid and/or enforceable claims of the '644 patent, either directly or indirectly.  Complainants bear the burden to prove infringement of the '644 patent and have failed to assert any valid claims of infringement upon which relief can be granted.

19.     In the Complaint, Complainants identified claim 6 of the '644 patent as "representative" of the asserted claims of this patent.   Based on the claim chart for representative claim 6, Complainants are claiming that Respondents infringe.

20.     The Respondents' accused products do not infringe representative claim 6.  By means of example only, the accused products do not include  "a fill tube being formed with a plurality of axially spaced vents for a ventilating flow of air,"  as recited by claim 6 of the '644 patent.  Accordingly, regardless of how the remaining elements and limitations of representative claim 6 are construed, Respondents do not infringe this claim.

21.     To the extent that any of the asserted claims of the '644 patent are somehow construed to avoid the prior art and not be invalid over the prior art, then Respondents do not practice or infringe the asserted claims.

44

## '644 PATENT: INVALIDITY

22.    The Asserted Claims of the '644 patent are invalid under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including, but not limited to, 35 U.S.C. §§ 102, 103 and 112.

23.    In the Complaint, Complainants identified claim 6 of the '644 patent as "representative" of the asserted claims of this patent.

24.    Representative claim 6 of the '644 patent is invalid under 35 U.S.C. § 102. An illustrative example of the prior art anticipating this claim includes, but is not limited to, Korean Patent Publication No. U1999-0019474 (attached hereto as an Exhibit 7) and the prior art that Complainants placed into the public domain, through sales, offers for sales, and public uses of its products, including by means of example only, Maytag refrigerators having model numbers beginning with MSD2758.

25.    Representative claim 6 of the '644 patent is invalid under 35 U.S.C. § 103. An illustrative example of the prior art rendering obvious these claims includes, but is not limited to, the prior art examples referenced above as anticipatory prior art alone or in combination with one or more of the prior art referenced in paragraphs 15 and 16, and the prior art cited in the '680 and '644 patents and already of record.

26.    Representative claim 6 of the '644 patent is invalid under 35 U.S.C. § 112 because the claim language "said fill tube being formed with a plurality of axially spaced vents for ventilating flow of air" is vague and indefinite.

## '730 PATENT: NONINFRINGEMENT

27.    Respondents have not infringed and do not infringe any valid and/or enforceable claims of the '730 patent, either directly or indirectly.  Complainants bear the burden to prove infringement of the '730 patent and have failed to assert any valid claims of infringement upon which relief can be granted.

28.    In the Complaint, Complainants identified claim 2 of the '730 patent as "representative" of the asserted claims of this patent.  Based on the claim chart for representative claim 2, Complainants are claiming that Respondents infringe.

29.    The Respondents' accused products do not infringe representative claim 2.  By means of example only, the accused products do not include side adapters "tapering from a rear portion to a front portion," or "with the upper ledges and channels being arranged substantially parallel to each other," as recited by claim 2 of the '730 patent.  Accordingly, regardless of how the remaining elements and limitations of representative claim 2 are construed, Respondents do not infringe this claim.

30.    To the extent that any of the asserted claims of the '730 patent are somehow construed to avoid the prior art and not be invalid over the prior art, then Respondents do not practice or infringe the asserted claims.

## '730 PATENT: INVALIDITY

31.    The Asserted Claims of the '730 patent are invalid under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including, but not limited to, 35 U.S.C. §§ 102, 103, and 112.

46

32.    In the Complaint, Complainants identified claim 2 of the '730 patent as "representative" of the asserted claims of this patent.

33.    The claims of the '730 patent are invalid under 35 U.S.C. § 102.  By means of example only, the anticipatory prior art includes but is not limited to the prior art that Complainants placed into the public domain, through publications, sales, offers for sales, and uses of its products.  Such products  include by means of example only, Amana refrigerators identified at the EASY REACH PLUS refrigerators, including but not limited to Model Nos. beginning with ARB2117 and BRD18V1.

34.    Representative claim 2 of the '730 patent is invalid under 35 U.S.C. § 103.  An illustrative example of the prior art rendering obvious these claims includes, but is not limited to, the prior art examples listed as anticipatory prior art alone or in combination with one or more of Japanese Patent Publication No. H06-257935, Japanese Patent Publication No. 2001-091153, and/or Japanese Utility Model Publication No. H08-001438, EP 0 656 182, DE 3 505 757, DE 298 17 743, US 6,478,393, US 3,006,710 (attached hereto as Exhibits 8, 9, 10, 11, 12, 13,  & 14), and the prior art cited in the '730 and the '980 patent and already of record.

35.    Representative claim 2 of the '980 patent is invalid under 35 U.S.C. § 112 because the claim language reciting side adapters "tapering from a rear portion to a front portion," or "with the upper ledges and channels being arranged substantially parallel to each other," is vague and indefinite.

## '980 PATENT: NONINFRINGEMENT

47

36.    Respondents have not infringed and do not infringe any valid and/or enforceable claims of the '980 patent, either directly or indirectly. Complainants bear the burden to prove infringement of the '980 patent and have failed to assert any valid claims of infringement upon which relief can be granted.

37.    In the Complaint, Complainants identified claim 1 of the '980 patent as "representative" of the asserted claims of this patent. Based on the claim chart for representative claim 1, Complainants are claiming that Respondents infringe.

38.    The Respondents' accused products do not infringe representative claim 1. By means of example only, the accused products do not include a liner with side walls "having a respective laterally outwardly projecting offset sections" or " a basket slidably supported by first and second side adapters," as recited by claim 1 of the '980 patent. Accordingly, regardless of how the remaining elements and limitations of representative claim 1 are construed, Respondents do not infringe this claim.

39.    To the extent that any of the asserted claims of the '980 patent are somehow construed to avoid the prior art and not be invalid over the prior art, then Respondents do not practice or infringe the asserted claims.

## '980 PATENT: INVALIDITY

40.    The Asserted Claims of the '980 patent are invalid under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including, but not limited to, 35 U.S.C. §§ 102, 103, and 112.

48

41. In the Complaint, Complainants identified claim 1 of the '980 patent as "representative" of the asserted claims of this patent.

42. The claims of the '980 patent are invalid under 35 U.S.C. § 102. By means of example only, the anticipatory prior art includes but is not limited to the prior art that Complainants placed into the public domain, through publications, sales, offers for sales, and uses of its products. Such products include by means of example only, Amana refrigerators identified at the EASY REACH PLUS refrigerators, including but not limited to Model Nos. beginning with ARB2117 and BRD18V1.

43. Representative claim 1 of the '980 patent is invalid under 35 U.S.C. § 103. An illustrative example of the prior art rendering obvious these claims includes, but is not limited to, the prior art examples referenced above as anticipatory prior art alone or in combination with one or more of the prior art referenced in paragraphs 33 and 34, and the prior art cited in the '980 and '730 patents and already of record.

44. Representative claim 1 of the '980 patent is invalid under 35 U.S.C. § 112 because the claim language reciting a liner with side walls "having a respective laterally outwardly projecting offset sections" or " a basket slidably supported by first and second side adapters," is vague and indefinite.

## PATENT MISUSE, INEQUITABLE CONDUCT, AND UNCLEAN HANDS

45. Complainants are barred from relief in this case because of their patent misuse, inequitable conduct, and unclean hands and improper assertion of patent infringement claims against Respondents. Complainants are asserting patents that are invalidated by prior art that

49

Complainants themselves, or their predecessors, placed into the public domain. Complainants failed to comply with the duty of disclosure owed to the U.S. Patent and Trademark Office and the public. On information and belief, Complainants have failed to comply with the pre-filing investigations required under the Commissions rules and the controlling law. Complainants have unclean hands and have committed patent misuse by virtue of, without limitation, their filing the Complaint and asserting infringement without a proper investigation, their pursuing patent infringement claims that have no factual basis, their filing and pursuing infringement claims on patents known to be invalid, and not infringed, and their misuse of the patents-in-suit as averred above.

## WAIVER

46.    Complainants have, through their acts, conduct, and failure to act, waived any right to relief.

## PUBLIC INTEREST

47.    The relief sought by Complainants would be contrary to the public interest.

## OTHER DEFENSES

48.    Respondents reserve the right to assert additional defenses, including detailed allegations of inequitable conduct, based on further discovery and investigation in this matter.

50

Respectfully submitted,

Richard L. Stroup
Thomas L. Jarvis
Andrew C. Sonu
Parmanand K. Sharma
Paul C. Goulet
Walter D. Davis Jr.
Finnegan, Henderson, Farabow,
 Garrett, & Dunner L.L.P.
901 New York Avenue, NW
Washington, DC   20001-4413
(202) 408-4000
(202) 408-4400 fax

Dated:  April 15, 2008

51

**CERTAIN REFRIGERATORS AND COMPONENTS**          Inv. No. 337-TA-632
**THEREOF**


# CERTIFICATE OF SERVICE


I, Bilal Iddinn, hereby certify that on April 15, 2008, copies of the foregoing document were filed an served upon the following parties as indicated:


Ms. Marilyn R. Abbott, Secretary
U.S. INTERNATIONAL TRADE COMMISSION
500 E Street, SW  Room 116
Washington, DC   20436
**(Original and 6 Copies)**

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☐ Via Electronic Filing


Honorable Theodore Essex
Administrative Law Judge
U.S. INTERNATIONAL TRADE COMMISSION
500 E. Street, S.W.
Washington, D.C. 20436
**(2 Copies)**
Email Service: tamara.lee@usitc.gov

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☒ Via Electronic Mail


Rett Snotherly,  Esq.
Office of Unfair Import Investigations
U.S. INTERNATIONAL TRADE COMMISSION
500 E. Street, S.W.,  Room 401
Washington, D.C. 20436

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☒ Via Electronic Mail


**COUNSEL FOR COMPLAINANTS**

Kristiana Brugger, Esq.
BAKER BOTTS LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
(202) 639-7700 (Telephone)
(202) 639-7690 (Facsimile)
kristiana.brugger@bakerbotts.com

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☒ Via Electronic Mail

**CERTAIN REFRIGERATORS AND COMPONENTS THEREOF**          **Inv. No. 337-TA-632**


**COUNSEL FOR COMPLAINANTS**

Scott F. Partridge, Esq.
Paul R. Morico, Esq.
Amanda Woodall, Esq.
Elizabeth Durham, Esq.
Robinson.Vu Esq.
Ryan Pinckney Esq.
Susan.Bigler
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
(713) 229-1569 (Telephone)
(713) 229-7769 (Fax)
scott.partridge@bakerbotts.com
paul.morico@bakerbotts.com
amanda.woodall@bakerbotts.com
elizabeth.durham@bakerbotts.com
robinson.vu@bakerbotts.com
ryan.pinckney@bakerbotts.com
susan.bigler@bakerbotts.com

☐ Via First Class Mail
☐ Via Hand Delivery
☒ Via Overnight Courier
☐ Via Facsimile
☒ Via Electronic Mail

_Bilal Iddinn_

Bilal Iddinn
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC   20001
(202) 408-4000 (Telephone)
(202) 408-4400 (Facsimile)

# EXHIBIT B
## Part 2

# EXHIBIT 1

公開実用 昭和51—21165

 

(1,500円)

### 実用新案登録願　1

昭和49 年 8 月 5日

特許庁長官殿

コオリハイ シュッソウ テ ツキ レイトウ レイゾウコ
考案の名称　氷 拱 出 装 體 付 冷 凍 冷 蔵 庫

考 案 者

コクブンシ ヒガシコイガクボ
住　所　東京都国分寺市東恋ケ窪1丁目280番地
ヒタチセイサクショ　　　　　ケンキュウショナイ
株式会社 日立製作所 デザイン 研究所内
ヤス カワ ショウ ヘイ
氏　名　安 川 昌 平
（ほか 1 名）

実用新案登録出願人

住　所　東京都千代田区丸の内一丁目5番1号
名　称　(510)株式会社 日 立 製 作 所
代表者　吉 山 博 吉

方 式
審 査 

代 理 人

住　所　東京都千代田区丸の内一丁目5番1号
株式会社 日 立 製 作 所内
電話東京 270—2111 (大代表)
氏　名　(7237) 弁理士 薄 田　　利

　49 092857

LG0000886

LG0000886

<div align="center">明　　細　　書</div>

考案の名称　　　氷排出装置付冷凍冷蔵庫

実用新案登録請求の範囲

　角氷を貯える貯氷部と、モータで回転駆動されるスクリューを配設した移送部と、移送部と連通穴で連通している砕氷室と、これと連続している排出部とからなる氷排出装置本体を冷凍室の扉の内側に取付け、前記砕氷室にはモータで回転駆動される回転刃と固定刃を内蔵すると共に、前記連通穴に臨む周壁の一部に開閉自在の切換板を設け、切換板とスイッチの開閉を扉の外部から操作するようにしたことを特徴とする氷排出装置付冷凍冷蔵庫。

考案の詳細な説明

　本考案は冷凍室内に貯氷された角氷を扉を開けることなく、簡単な操作で必要に応じて角氷または砕氷として自動的に庫外へ排出できるようにした冷凍冷蔵庫に関するものである。

　従来の冷凍冷蔵庫では、冷凍室内で製氷された角氷を貯氷箱に貯氷しておき、必要に応じて扉を

<div align="center">1</div>

LG0000887

LG0000887

公開実用 昭和51-21165

開けて貯氷箱から角氷を取出して使用しているが、
その取扱いが面倒であるばかりでなく、扉の開閉
による冷気の損失や、氷に直接手で触れることも
あるので衛生的にも好ましくない欠点があつた。

また、最近では氷も用途に応じて、例えば洋酒
などには角氷を、清涼飲料水などには砕氷が望ま
れている。

本考案は前述の欠点を除去すると共に、必要に
応じて角氷，砕氷の何れでも排出可能にし前述の
要求を満足する冷凍冷蔵庫を提供するものである。

以下本考案の一実施例を図面により説明する。
1は冷凍冷蔵庫で、冷凍室の扉2の内側には氷排
出装置の本体3が取付けられている。本体3は上
部が開口された角氷4の貯氷部5と、その底部に
配設された移送部6と、連通穴7で移送部6と連
通している砕氷室8および扉2に設けられた排出
口9と連なつて傾斜面10をもつ排出部11とか
らなつている。

移送部6から砕氷室8にかけて減速装置12を
介してモータ13により回転駆動される軸14が

2

LG0000888

LG0000888

貫通している。そして移送部6内の軸14にはス
クリュー15が取付けられ、砕氷室8内には複数
枚の回転刃16がスペーサー17によりある間隔
をもつて軸14と一体回転するように取付けられ
ている。更に砕氷室8内には複数枚の固定刃18
がある間隔をへだてて一端が砕氷室8の周壁19
に固定され、他端はスペーサー17に遊嵌されて
いる。そして回転刃16は固定刃18の間を通過
して回転可能になつている。また、回転刃16お
よび固定刃18にはそれぞれ先端が失鋭な鋸状の
失刃16aおよび失刃18aが複数個形成されて
いる。

　砕氷室8の周壁19は円筒状をなし、その一部
が開口20とされ、排出部11と連通している。
また、周壁19の連通穴7に臨む部分には切換板
21が小軸22により開閉自在に取付けられてい
る。

　第4図、第5図からわかるように切換板21に
はピン23が形成され、蓋2に取付けられた角氷
押ボタン24と共に可動する切換ロッド25と係

8

LG0000889

LG0000889

公開実用 昭和51-21165

合している。また蓋2には砕氷押ボタン26が取
付けられ、砕氷押ボタン26にはロッド27が固
着されている。切換ロッド25およびロッド27
にはそれぞれ砕氷室8の外側に取付けられたスイ
ッチ28に対向して突片25a，27aが形成さ
れている。ばね29，30はそれぞれ角氷押ボタ
ン24と砕氷押ボタン26の復帰用ばねである。
角氷押ボタン24を押していない時には切換板2
1は第2図実線で示す位置にあり、周壁19と連
続して円筒形状をなす。角氷押ボタン24を押す
と二点鎖線で示す21の位置に開き、排出部11
の傾斜面10と連続し、移送部6が連通穴7を経
て排出部11に直接連通する。また、角氷押ボタ
ン26を押すとそれぞれの突片25a，27aが
スイッチ28を動作させて回路が閉じるようにな
っている。

　排出口9の前面にはヒンジ31を中心に開閉す
るシャッター32が取付けられている。シャッタ
ー32は例えば軸14もしくは角氷押ボタン24，
砕氷押ボタン26などとの適宜な連動機構（図示

4

せず）により二点鎖線３２′との間を自動的に開閉する。

　　８８は排出口９とシャッター２１のカバー、８４はコップである。

　　以上の構成よりなるから、次にその動作を説明する。

　　冷凍室内の製氷皿で作られた角氷４を貯氷部５内にあけて貯えておく。

　　先つ、砕氷を必要とするときは、コップ８４を排出口９の下に置き、砕氷押ボタン２６を押すとロッド２７の突片２７ａがスイッチ２８を押し、モータ１８の回路が閉じて駆動される。この時は切換板２１は押されず第２図実線の位置にあり砕氷室８の周壁１９の一部をなす。

　　貯氷部５内の角氷４はスクリュー１５の回転により、移送部６内を順次軸方向に送られ、連通穴７から切換板２１上に押出される。一方、回転刃１６は軸１４と共に矢印Ａ方向に回転しているから切換板２１上の角氷４を周壁１９に沿つて固定刃１８まですくい上げ、尖刃１６ａと尖刃１８ａ

5

LG0000891

LG0000891

公開実用 昭和51— 21165

　とによりモータ１８の回転力で角氷４は粉砕され
て砕氷になる。

　砕氷は自重により固定刃１８の間を通り砕氷室
８の開口２０から排出部１１の傾斜面１０上に落
下して滑べり落ち、シャッター３２が開いている
間にコップ３４内に排出されるのである。即ち、
スクリュー１５の１回転により１ケの角氷４が砕
氷とされ、連続的に排出される。所望量の排出が
終ったら砕氷押ボタン２６から手を離せば、ばね
３０によりロッド２７．砕氷押ボタン２６が復帰
し、スイッチ２８が開き、モータ１８が停止して
動作が完了する。

　次に角氷４を排出させたい時には、コップ３４
を排出口９の下に置き、角氷押ボタン２４を押す。
そうすると切換板２１は切換ロッド２５とピン２
３で係合しているから小軸２２を中心に回動し、
第２図二点鎖線２１′の位置に開く。それと同時に
切換ロッド２５の突片２５ａがスイッチ２８を閉
じ、前述の砕氷の時と同様に角氷４はスクリュー
１５により移送され、連通穴７より開いた切換板

6

LG0000892

LG0000892

２１上に落ちる。切換板２１は排出部１１の傾斜面１０と連続しているので、角氷４はそのまま自重で傾斜面１０上を滑り落ち、シャッター３２が開いている間にコップ３４内に排出される。即ち、スクリュー１５の１回転により１ケの角氷４が連続して自動的に排出されるのである。この時回転刃１６は空転しているのであるが、角氷４が連通穴７より押出された時に、丁度この位置に回転刃１６がきていたとすれば、前述の砕氷排出時と同様に角氷４は回転刃１６ですくい上げられ砕氷される問題がある。これは次の方法で解決される。

　即ち、角氷４が連通穴７より押出されるのはスクリュー１５の先端１５ａが連通穴７の位置にきた時であり、この時回転刃１６が連通穴７に達しない離れた位置にあるようにしておればよく、これは軸１４に対するスクリュー１５の先端１５ａと回転刃１６との関係位置を適宜選定して取付けることにより可能である。

　さて、所望量の角氷４の排出が終つたら、角氷押ボタン２４から手を離せば、ばね２９により切

７

LG0000893

LG0000893

公開実用　昭和51－21165

　換ロッド25と共に復帰し、切換板21は第2図実線の位置に戻り、スイッチ28が開き、モータ18が停止し、動作を完了する。

　本考案は切換板21の開閉により角氷と砕氷を適宜排出できるようにしたものであるが、本実施例では切換板21の開閉を押ボタンによりスイッチと連動して行つたものについて説明した。これはレバーや電磁石など他の方法でも可能である。

　以上説明したように、本考案によれば冷凍室内に貯氷された角氷4を扉2を開けることなく、外部から切換板21の開閉とスイッチ28の操作をすることにより用途に応じて角氷もしくは砕氷をコップ21へ直接所望量だけ排出することができるから、取扱いが非常に便利であり、冷気の損失がなく、氷に直接手を触れないから衛生的である。

　また、装置全体がすべて扉2の内側に取付けられているので冷凍室の容積が比較的有効に使用でき、製氷皿から貯氷部5へ角氷4をあける操作も楽であるなとその実用的効果は大きい。

図面の簡単な説明

8

LG0000894

LG0000894

　　図面は本考案の一実施例を示し、第１図は冷凍
冷蔵庫の正面図、第２図は第１図のⅡ－Ⅱ断面図、
第３図は第２図のⅢ－Ⅲ断面図、第４図は第３図
のⅣ－Ⅳ断面図、第５図は第４図のⅤ－Ⅴ断面図
である。

　　１…冷凍冷蔵庫　　２…扉　　３…氷排出装置本体
４…角氷　　５…貯氷部　　６…移送部　　７…連通穴
８…砕氷室　　１１…排出部　　１３…モータ
１５…スクリュー　　１６…回転刃　　１８…固定刃
１９…周壁　　２１…切換板　　２８…スイッチ

　　　　　　　　代理人弁理士　　薄　　田　　利　　華 

　　　　　　　　　　　　　9

LG0000895

LG0000895

公開実用 昭和51— 21165

第 1 図



21165

1/3

代理人弁理士 薄田利幸

LG0000896

LG0000896



第 2 図

第 3 図

21165

2/3

代理人弁理士 薄田利章

LG0000897

LG0000897

公開実用 昭和51— 21165

第 4 図



第 5 図

LG0000898

LG0000898

添附書類の目録

    (1)明　細　書　　1通
    (2)図　　　面　　1通
    (3)委　任　状　　1通
    (4)実用新案登録願書　1通

前記以外の考案者、~~実用新案登録出願人または代理大~~ 

考　案　者

    住　　所　　東京都国分寺市東恋ヶ窪1丁目280番地
            株式会社　日立製作所 デザイン 研究所内
    氏　　名
            清　水　正　次　郎

LG0000899

LG0000899

# EXHIBIT 2

# EXHIBIT 3

公開実用 昭和51— 21173

  

(1,500円)

実用新案登録願　22　検記号なし

昭和49 年 8 月 5 日

特許庁長官　殿

考案の名称　　レイトウレイゾウコ
　　　　　　　冷凍冷蔵瞳



考　案　者

住　所　　コクブンジ シ ヒガシコイクボ
　　　　　東京都国分寺市東恋ケ窪1丁目280番地
　　　　　ヒラチ セイサクショ　デンキュウショナイ
　　　　　株式会社 日立製作所 デザイン研究所内
氏　名　　ヤス カワ ショウヘイ
　　　　　安 川 昌 平

　　　　　　　　　　　　　　　　　　　　（ほか　1　名）　　方式審査

実用新案登録出願人

住　所　　東京都千代田区丸の内 一丁目5番1号

名　称 (510) 株式会社　日 立 製 作 所

代表者　吉 山 博 吉

代　理　人

居　所　　東京都千代田区丸の内 一丁目5番1号

　　　　　株式会社　日 立 製 作 所 内

電話東京　270—6111 (大代表)

氏　名　　(7237) 弁理士 特許庁 田 利 喜

49.8.5
出願第二課

49　092878

LG0000900

LG0000900

明　　　細　　　書

考案の名称　　冷凍冷蔵庫

実用新案登録請求の範囲

　冷凍室扉の内側に取付けられた貯氷部と移送部と排出部とからなる氷排出装置の貯氷部開口に開閉自在の蓋を取付けたことを特徴とする冷凍冷蔵庫。

考案の詳細な説明

　本考案は冷凍室内に貯氷された角氷を扉を開けることなくスイッチ操作たけで自動的に外部に排出する角氷排出装置の貯氷部の改良に関するものである。

　この種の角氷排出装置付の冷凍冷蔵庫では角氷排出装置を冷凍室の扉の内側に取付け、冷凍室内で製氷皿により製氷された角氷を製氷皿から角氷排出装置の貯氷部内へ直接離氷して貯氷すること。が行われている。したがつて離氷操作を良くするには貯氷部の開口面積を大きくする必要があり、そのため角氷排出装置が大型になり、それだけ冷凍室容積が小さくなる問題がある。

1



LG0000901

LG0000901

公開実用 昭和51— 21173

更に貯氷部が開口していると、例えば冷凍室内
への食品など出入に扉が開放されたときに貯氷部
内へ埃や異物が入ることもあり衛生上好ましくな
く、また室内の暖気により貯氷された角氷の表面
が融解され扉が閉じられると、これが再凍結して
角氷が相互に付着し角氷の排出に支障をきたす問
題がある。

本考案は貯氷部の開口に開閉自在の蓋を設ける
だけの簡単な構成により前述した問題点をすべて
解決したものである。

以下、本考案の一実施例を図面により説明する。
1は冷凍冷蔵庫で冷凍室の扉2の内側には角氷排
出装置の本体3が取付けられている。

本体3は上部が開口された貯氷部4とその底部
の移送部5と連通穴6で移送部5と連通している
排出部7とからなつており、貯氷部の開口には開
閉自在の蓋8が取付けられている。

移送部5内にはモータ9により回転駆動される
軸10が貫通している。そして軸10にはスクリ
ュー11が取付けられている。排出部7の底部は



2

扉2に形成されている排出口12と連なっている。

排出口12にはシャッター18がクランク機構14を介して軸10と連動開閉する。15はスイッチでボタン16により扉2の外部から開閉操作される。17は排出口カバー、18は角氷、19はコップ、20は製氷皿である。

以上の構成よりなり、次に動作を説明する。冷凍室内の製氷皿20で作られた角氷18は第8図に示すように蓋8を開き、製氷皿20を手でひねりながら離氷させて貯氷部4内に直接あける。この時、蓋は受皿を兼ねるものであり、ここに入つた角氷18は蓋8を閉めることにより自動的に貯氷部4内に入る。

このようにして貯氷部4内に角氷18を貯えておき、角氷18が必要な時には例えばコップ19を排出口12の下に置き、ボタン16を押すとスイッチ15が閉じ、通電回路が形成されモータ9が駆動され貯氷部4内の角氷18はスクリュー11の回転により移送部5内を順次軸方向に送られ排出部7内へ落下する。一方シャッター18はク

8

LG0000903

LG0000903

公開実用　昭和51—21173

ランク機構１４により開閉しているからシヤツター１３が開いた時に排出部７より目重で滑り落ち、排出口１２よりコップ１９内に排出される。所望量に達したらコップ１９をボタン１６より離せばスイッチ１５が開き、通電回路が切れモータ９が停止する。

　この時にシヤツター１３が閉じた位置にて停止するようカムスイッチ（図示せず）が設けてある。

　以上説明したように本考案によれば、貯氷部４の開口に開閉自在の蓋８を設けたことにより、蓋８を開いた時にはこれが受皿を兼ねるので貯氷部４の開口面積が小さくても製氷皿２０から貯氷部４へ角氷１８をあける操作が容易であり、角氷排出装置３全体が小型になり、冷凍室の容積が有効に使用できる。また、常時は貯氷部４が蓋８で閉じられているので冷凍室への食品の出し入れなどで扉２が開放された時に室内の暖気により貯氷部４内の角氷１８が融解することも少なく、埃や異物が入ることも防止されるなど簡単な構成で幾多の効果を有している。

4

LG0000904

LG0000904

図面の簡単な説明

　図面は本考案の一実施例を示し、第1図は冷凍冷蔵庫の正面図、第2図は第1図のⅡ－Ⅱ断面図、第3図は動作を示す一部側面図、第4図は第2図のⅣ－Ⅳ断面図である。

　1…冷凍冷蔵庫　2…箱　4…貯水部　5…搬送部　7…排出部　8…蓋　9…モータ　11…スクリュー　12…排出口　13…シャッター　15…スイッチ　20…製氷皿

代理人弁理士　壽　田　利　稔

5

公開実用 昭和51—21173

第 1 図



2 1 1 7 3

½

代理人弁理士 薄田利幸

LG0000906

LG0000906



第2図

第3図

第4図

21173

代理人弁理士 薄田利章

LG0000907

LG0000907

公開実用 昭和51—21173

73

添附書類の目録

(1) 明　細　書　　1通
(2) 図　　　面　　1通
(3) 委　任　状　　1通
(4) 実用新案登録出願書　1通

前記以外の考案者、実用新案登録出願人または代理人

考　案　者

住　所　　東京都国分寺市東恋ケ窪1丁目280番地
コクブンジ シ ヒガシコイクボ

株式会社 日立製作所 デザイン 研究所内
ヒタチセイサクショ　　　　　　　　ケンキュウショナイ

氏　名　　清 水 正 次 郎
シ ミズ マサ ジロウ



LG0000908

LG0000908

特　許　願　（Ｃ）

昭和 47 年 9 月 19 日

特許庁長官殿

1、発明の名称
　氷攪取出装置

2　発明者
　住所　大阪府東大阪市高井田本通３丁目22番地
　　　　中川電機株式会社内
　氏名　菅　草　重　夫

3　特許出願人
　住所　大阪府東大阪市高井田本通３丁目22番地
　名称　（448）中川電機株式会社
　代表者　中　川　懐　泰

4　代理人　〒 571
　住所　大阪府門真市大字門真1006番地
　　　　松下電器産業株式会社内
　氏名　（5971）弁理士　中　尾　敏　男
　　　　　　　　　　　　　　（ほか 1名）
　（連絡先　電話(06)453-3111 特許部分室）

5　添付書類の目録
　（1）　明　細　書　　　　　　　　1 通
　（2）　図　面　　　　　　　　　　1 通
　（3）　委　任　状　　　　　　　　1 通
　（4）　願書副本　　　　　　　　　1 通

---

⑲ 日本国特許庁

# 公開特許公報

⑪特開昭 49 - 50545

㊸公開日　昭49.(1974) 5. 1(

㉑特願昭　47 - 94321

㉒出願日　昭47.(1972) 9. 19

審査請求　　　未請求　　（全3頁）

庁内整理番号　⑳日本分類

7049 32　　　68 C23

---

明　細　書

1、発明の名称
　氷攪取出装置

2、特許請求の範囲
　冷蔵庫本体内一部に、氷攪を収容しかつ内部に
この氷攪を外部に排出させる移送装置を備えた貯
水容器と、前記本体外部からの操作によって駆動
されかつ前記移送装置と連結して貯水容器内の氷
攪を外部に排出する駆動伝達装置を収容した機械
収容箱とを装設し、この機械収容箱の一部に、一
端が前記貯水容器の氷攪排出窓に対向し、かつ他
端が本体の一部を貫通した氷攪排出ダクトと連通
せる氷攪排出受箱を一体に形成したことを特徴と
する氷攪取出装置。

3、発明の詳細な説明
　本発明は冷蔵庫の冷凍室内等にて製氷された氷
攪を外部を開放することなく外部に取出せるよう
にした氷攪取出装置の改良に関するもので、前記
取出装置をコンパクトにまとめ、組立の簡易化を
図ったものである。

以下図面により本発明の一実施例について説明
する。1は上部に冷凍室を形成し下部に冷蔵室を
形成し、前記各室の前面開口部に扉2、2'を回
動自在に枢支した冷蔵庫本体である。3は前記冷
凍室側外界2の内面表一側寄りに取付けられた機
械収容箱であり、前記外界2を貫通し外部の操作
ハンドル4に連動して回動する回転ギヤー5と、
この回転ギヤー5に連結されかつ先端が機械収容
箱3の側面より突出した駆動軸6等よりなる駆動
伝達装置を内蔵したものである。7は外界2の内
面表一部に着脱自在に取付けられ、冷凍室に設置
した製氷器（図示せず）にて製氷された氷攪を取
容する貯水容器であり、下底面は前記機械収容箱
3の方向に順次低くなる傾斜面8とすると共に、
前記機械収容箱3に隣接する一側面を前記傾斜面
8と行程直角状をなす傾斜面9としている。なお
この貯水容器7内には、螺材を螺旋状に捲回した
氷攪移送部材10と、一端が前記駆動伝達装置の
駆動軸6と着脱自在に保合しかつ他端が前記貯水
箱7の傾斜傾斜面9を貫通して移送部材10の一

特開昭49—50545 (2)

縄と連動された支軸11と、前記貯水容器7の側
接傾斜面9とわずかな間隔を存して支軸11に嵌
合し把面一部に透窓13、13を穿設した円板状
の水揚誘導板12とよりなる水揚移送装置を内蔵
している。

前記水揚移送装置の移送部材10と支軸11お
よび水揚誘導板12は、第2図のように鉛直軸に
対して所定の傾斜角度で貯水容器7の下底面の紙
斜面8に沿って概ね平行状に傾斜して取付けられ
ている。14は前記横板収容箱3の一部に一体形
成された水揚拾出部であり、一端が貯水容器7
の水揚拾出窓15に対向して開口し、かつ他端は
外界2の断熱壁を貫通して外界2の外部に開口し
た拾出ダクト16に連通されている。

前述の構成により、外界2の前面に突出した操
作ハンドル4を回動させると、回転ギアーを介
して駆動軸6が回動する。この駆動軸6の回動に
よりこれと係合した支軸11が突動し、貯水容器
7内の水揚誘導板12と移送部材10が回動する
ので、貯水容器7内の水揚は、傾斜方向に移送さ

れると同時に前記傾斜面8の最下段に位置する水
揚誘導板12に集められ、一つの透窓13と水揚
拾出窓15とが合致したときのみ、水揚は、透
窓13および水揚拾出窓15から横板収容箱3の
水揚拾出受部14を通り、さらに拾出ダクト16
を経てこの拾出ダクト16に設けた開閉蓋17を
押開けて外部に拾出される。そして前記操作ハン
ドル4が一回転し終えて元のハンドル位置に戻る
と、前記水揚誘導板12の位置が前記3図のように
水揚拾出窓15および水揚拾出受部14を閉鎖し
て、ダクト16と貯水容器7との間を閉鎖する。

上記実施例の説明から明らかなように本発明の
水揚取出装置によれば、貯水容器内の水揚移送装
置と離脱自在に連結されかつ本体外部からの操作
によって駆動される駆動伝達装置を収容した横板
収容箱の一部に、一端を前記貯水容器の水揚拾出
窓に対向しかつ他端が本体の一部を貫通した拾出
ダクトと連通した水揚拾出受部を一体に形成した
ものであるため、貯水容器から拾出される水揚は、
前記水揚拾出受部より拾出ダクトに放出されるの

で、水揚を前記放出ダクトに導く水揚拾出受部を
特別に別体の部品を設ける必要がなく組立部品点
数の合理化が図れると共に組立作業も簡易化でき、
水揚はひっかかることなく滑らかに拾出される。

4、図面の簡単な説明

第1図は本発明一実施例による水揚取出装置を
備えた冷蔵庫の斜視図、第2図は第1図に示すⅡ
—Ⅱ線での断面図、第3図は第2図に示すⅢ—Ⅲ
線での断面図である。

3……横板収容箱、7……貯水容器、14……
水揚拾出受部、15……水揚拾出窓、16……拾
出ダクト。

代理人の氏名　弁理士　中島敏男　他か1名



第 1 図

第 2 図

6 9

—206—

LG0000884

LG0000884

第 3 図



特開昭49-50545 (3)

6 前記以外の代理人
　住　所　大阪府門真市大字門真1006番地
　　　　　松下電器産業株式会社内
　氏　名　（6152）弁理士 架野重茂

名　称　変　更　届

昭和47年12月14日

特許庁長官　殿

1. 事件の表示
　　昭和47年特許願第 94321 号

2. 発明の名称　水塊取出装置

3. 名称を変更した者
　事件との関係　特許出願人
　住　所　大阪府東大阪市高井田本通3丁目22番地
　旧名称　（448）菊水電機株式会社
　新名称　（448）菊水電機株式会社
　代表者　菊　井　廣　蕃

4. 代理人
　住　所　大阪府門真市大字門真1006番地
　　　　　松下電器産業株式会社-内
　氏　名　（5971）弁理士 中 尾 敏 男

（連絡先 電話(東京) 453-3111 特許部弁理 松本）

5. 添付書類の目録
　登記簿抄本の写　　　　　　　1通
　（なお、原本は同日付提出との昭和47年特許願第
　34069号の名称変更届に添付した登記簿抄本を
　援用します。）

—207—

LG0000885

LG0000885

# EXHIBIT 4

【公開実用 昭和51—148756】




(1,500円)

 実用新案登録願 22

昭和50 年 5 月23日

特許庁長官殿

考案の名称　　コイリハイシュツソウチ　　キリカエ キ コウ
　　　　　　　氷排出装置の切換機構

考案者
　　住　所　コクブンジ シ ヒガシコイクボ
　　　　　　東京都国分寺市東恋ケ窪1丁目280番地
　　　　　　ヒタチセイサノショ　　　　　ブ ンキュウシュオナイ
　　　　　　株式会社 日立製作所 デザイン研究所内
　　氏　名　ヤス　カワ　ショウ　ヘイ
　　　　　　安 川 昌 平
　　　　　　　　　　　　　　　　（ほか 1 名）

実用新案登録出願人
　　住　所　東京都千代田区丸の内一丁目5番1号
　　名　称 (510) 株式会社 日 立 製 作 所
　　代表者　吉 山 博

代理人
　　居 所　東京都千代田区丸の内一丁目5番1号
　　　　　　株式会社 日 立 製 作 所 内
　　　　　　電話東京 270—2111（大代表）
　　氏　名　(7237) 弁理士 薄 田 利

50—068753

LG0000909

LG0000909

明　　細　　書

考案の名称　　　氷排出装置の切換機構

実用新案登録請求の範囲

　　貯氷部と移送部と砕氷室と排出部からなる氷排出装置を冷凍室の扉内側に取付けた冷凍冷蔵庫において，移送部から排出部への角氷の通路を切換える切換板を外部から操作する角氷ボタンと連動して開閉させると共に，角氷ボタンとこれと連動する係止板により，前記，切換板を開閉何れの状態でも係止するようにしたことを特徴とする氷排出装置の切換機構。

考案の詳細な説明

　　本考案は冷凍冷蔵庫の冷凍室内に貯氷された角氷を扉を開けることなく，簡単な操作で必要に応じて角氷または砕氷として自動的に庫外へ排出できるようにした角氷と砕氷の排出切換に関するものである。

　　従来の冷凍冷蔵庫では，冷凍室内で製氷された角氷を貯氷箱に貯氷しておき，必要に応じて扉を開けて貯氷箱から角氷を取出し，角氷のままか。

1

LG0000910

LG0000910

公開実用 昭和51—148756

あるいはこれを粉砕して砕氷として使用している
が、その取扱いが面倒であるばかりでなく、扉の
開閉による冷気の損失や氷に直接手が触れること
もあるので、衛生的にも好ましくない欠点があっ
た。

　本考案は必要に応じて角氷、砕氷の何れでも簡
単な操作で自動的、かつ確実に排出できるように
した切換機構を提供しようとするものである。

　以下、本考案の一実施例を図面により説明する。

　1は冷凍冷蔵庫で冷凍室の扉2の内側には氷排出
装置の本体3が取付けられている。本体3は上部
が開口された角氷4の貯氷部5とその底部に配設
された移送部6と連通穴7で移送部6と連通して
いる砕氷室8、および扉2に設けられた排出口9
と連なって傾斜面10を持つ排出部11とからな
っている。移送部6から砕氷室8にかけて減速装
置12を介してモータ13により回転駆動される
軸14が貫通している。そして、移送部6内の軸
14にはスクリュー15が取付けられ、砕氷室8
内には複数枚の回転刃16がスペーサ17により

2

ある間隔をもって軸14と一体回転するように取付けられている。更に、砕氷室8内には複数枚の固定刃18がある間隔をへだてて、一端が砕氷室8の周壁19に固定され、他端はスペーサ17に遊嵌されている。そして回転刃16は固定刃18の間を通過して回転可能になっている。また、回転刃16、および固定刃18にはそれぞれ先端が尖鋭な鋸状の尖刃16aおよび尖刃18aが複数個形成されている。砕氷室8の周壁19は円筒形状をなし、その一部が開口20とされ、排出部11と連通している。また、周壁19の連通穴7に臨む部分には切換板21が小軸22により開閉自在に取付けられている。更に、扉2には第4図からわかるように扉外から操作可能なように角氷ボタン23と砕氷ボタン24が摺動自在に遊嵌されると共に、突出する方向に復帰バネ25、26により付勢されている。また、角氷ボタン23と砕氷ボタン24にはそれぞれ扉2の内側に切換ロッド27、28が固着されている。切換ロッド27は第6図に示すように中間部には傾斜面を持つ係止

3

LG0000912

LG0000912

公開実用 昭和51-148756

突起27aと折曲部27bが形成され、先端には楕円穴29が形成されている。楕円穴29は切換板21に突設されたピン30と係合されている切換ロッド28は中間部に傾斜面をもつ係止突起28aが形成されている。31は摺動板で本体3に摺動自在に取付けられ、中間部には、前記、係止突起27a、28aを係止するための係止爪31a、31bが形成されていると共に、板バネ32により圧接されている。33は係止板で本体3にピン34で枢着され、先端には切換板21のピン30を係止するための切欠き33aが形成されている。そして、ねじりバネ35により反時計方向に付勢され、切換ロッド27の折曲部27bに圧接されている。したがって、角氷ボタン23を押すことにより係止板33はねじりバネ35に抗して時計方向に回動する。また、排出口9の下部には押ボタン36が扉2の外側に突出して取付けられ、内側に取付けられたモータ13を回転停止させるスイッチ37を開閉する。排出口9の前面にはヒンジ38を中心に開閉するシャッター39が取付けられている。

4

LG0000913

LG0000913

シャッター39は、例えば軸14もしくは押ボタ
ン36などと適宜な連動機構（図示せず）により
二点鎖線39'との間を自動的に開閉する。40は
排出口9とシャッター39のカバー。41はコッ
プである。以上の構成よりなり、次にその動作を
説明する冷凍室内の製氷皿で作られた角氷冬を貯
氷部5内にあけて貯えておく。先ず、砕氷を排出
させたい時には砕氷ボタン24を押し、第4図の
状態にする。この状態では、砕氷ボタン24は切
換ロッド28の係止突起28aが摺動板31の係止
爪31bに係止されて押された位置に保持されてい
る。一方、角氷ボタン23は復帰バネ25により
復帰して突出し、切換板21は切換ロッド27に
より第2図実線に示すように砕氷室8の周壁19
と連続した円筒形状をなす位置にある。しかも、
切換板21の突設ピン30が係止板33の切欠き
33aに係止されているので、この位置を確実に保
持されている。次に排出口9の下に位置する押ボ
タン36をコップ41で押すとスイッチ37が閉
じ、モータ13、軸14が回転し、貯氷部5内の

5

LG0000914

LG0000914

公開実用 昭和51—148756

角氷4はスクリュー15により、移送部6を順次軸方向に送られ、連通穴7から切換板21上に押出される。一方、回転刃16は軸14と共に矢印A方向に回転しているから、切換板21上の角氷4を周壁19に沿って固定刃18まですくい上げ尖刃16aと尖刃18aとによりモータ13の回転力で角氷4は粉砕されて砕氷になる。砕氷は自重により固定刃18の間を通り、砕氷室8の開口20から排出部11の傾斜面10上に落下して滑べり落ち、シャッター39が開いている間にコップ41内に排出させるのである。即ち、スクリュー15の1回転により1ケの角氷4が砕氷されて連続的に排出される。所望量の排出が終ったらコップ41を押ボタン36から離せばスイッチ37が開き、モータ13が停止して動作を完了する。

次に角氷を排出させたい時には、第4図の状態から角氷ボタン23を押すと、まず切換ロッド27の先端の楕円穴29のために最初は切換板21の突設ピン30を押すことなく遊び分だけ摺動する。その間に切換ロッド27の折り曲げ部

6

27bが係止板33をねじりバネ35に抗して押し上げ、ピン34を支点に回動させ、突設ピン30の係止をはずす。更に、切換ロッド27が摺動すると、今度は切換板21の突設ピン30が楕円穴29で押され、切換板21は小軸22を支点に回動し、排出部11の傾斜面10に連続する。それと同時に切換ロッド27の係止突起27aがその傾斜面で摺動板31の係止爪31aを押し上げるので砕氷ボタン24は切換ロッド28の係止がはずれるので、復帰バネ26により復帰する。押し上げ終ると摺動板31が板バネ32により復帰し、係止突起27aが係止爪31aに係止され（第5図）、切換板21が排出部11の傾斜面10に連続する位置を保持する（第2図二点鎖線位置）。ついで排出口9の下にある押ボタン36をコップ41で押すと、前述の砕氷時と同様に角氷4はスクリュー15により移送され、連通穴7より開いた切換板21上に落ちる。切換板21は排出部11の傾斜面10と連続しているので、角氷4はそのまま自重で傾斜面10上を滑べり落ち、シャッター

7

LG0000916

LG0000916

公開実用 昭和51—148756

39が開いている間にコップ41内に排出される。即ち、スクリュー15の1回転により1ケの角氷が連続して自動的に排出されるのである。この時回転刃16は空転しているが角氷4が連通穴7より押出された時に丁度この位置に回転刃16が来ていたとすれば、前述の砕氷排出時と同様に角氷4は回転刃16ですくい上げられ、固定刃18の間で砕氷される問題があるが、これはスクリュー15の先端15aの位置と回転刃の相互位置を適宜設定することにより解決される。

さて、所望量の角氷4の排出が終つたらコップ41を押ボタン36から離せばスイッチ37が開き、モータ13が停止して動作を完了する。

また、この第5図の状態から砕氷ボタン24を押せば切換ロッド28の係止突起28aの傾斜面で揺動板31の係止爪31bを押し上げ、切換ロッド27の係止突起27aと係止爪31aの係止を外し、角氷ボタン23が復帰し、係止板33もねじりバネ35で復帰し、切欠き33aで切換板21の突出ピン30を係止し、第4図の状態に戻り、前述と

8

LG0000917

LG0000917

同様，砕氷が排出可能となる。

　以上，説明したように本考案によれば，冷凍室内に角氷4を貯氷しておき，必要に応じて切換ボタンの砕氷ボタン24，角氷ボタン23を押せば角氷もしくは砕氷が，押ボタン36を押している間，自動的に連続的にコップ41内に排出できるから非常に便利であり，取扱い，構造も簡単である。しかも，砕氷時には角氷4が回転刃16により，切換板21上をすくい上げられる時に切換板21を押し開く力が作用するが，本考案では角氷ボタン23と連動する係止板33で切換板21を砕氷状態の位置に係止保持しているので，確実に砕氷が排出されるのである。本考案の係止板33をなくし，復帰バネ25の力で切換板22を砕氷位置に保持することも可能であるが，復帰バネ25の力が小さいと角氷4をすくい上げる力に負けて，切換板21が押し開かれ，角氷4が切換板21と回転刃16との間に喰込んでロックしたり，角氷4が傾斜面10に直接落下して角氷のまま排出されてしまう。また，復帰バネ25の力を

- 9 -

LG0000918

LG0000918

公開実用　昭和51−148756

大きくして切換板21を砕氷位置に保持しようと
すると。角氷ボタン23の操作力が大きくなる問
題が生じる。

　本考案は前述したように簡単な構造で。この問
題を解決したものである。

図面の簡単な説明

　図面は本考案の一実施例を示し。第1図は冷凍
冷蔵庫の正面図。第2図は第1図のⅡ−Ⅱ断面図。
第3図は第2図のⅢ−Ⅲ断面図、第4図は第3図
のⅣ−Ⅳ断面図で砕氷排出状態を示す図。第5図
は角氷排出状態を示す図。第6図は切換ロッド
27の斜視図である。

1…冷凍冷蔵庫。2…扉。3…氷排出装置本体。
4…角氷。5…貯氷部。6…移送部。7…連通穴。
8…砕氷室。9…排出口。11…排出部。
13…モータ。15…スクリュー。16…回転刃。
18…固定刃。19…周壁。21…切換板。
23…角氷ボタン。24…砕氷ボタン。
27。28…切換ロッド。31…摺動板。
33…係止板。36…押ボタン。37…スイッチ

・10・

LG0000919

LG0000919

第1図



448756　代理人弁理士　薄田利幸

LG0000920

LG0000920

公開実用 昭和51−148756



第2図

第3図

代理人弁理士　薄田利幸

LG0000921

LG0000921



LG0000922

LG0000922

公開実用 昭和51—148756

第 6 図



4/4

代理人弁理士　薄　田　利　幸

LG0000923

LG0000923

添附書類の目録

　　（1）明　細　書　　　1通
　　（2）図　　面　　　　1通
　　（3）委　任　状　　　1通
　　（4）実用新案登録願謄本　1通

前記以外の考案者、実用新案登録出願人または代理人　　　15, 字削除

　考　案　者

　住　所　　　　コクブンジ シ ヒガシコイクボ
　　　　　　　　東京都国分寺市東恋ケ窪1丁目280番地
　　　　　　　　　　　　ヒタチセイサノショ　　　　　ブンヤケウショナイ
　　　　　　　　株式会社 日立製作所 デザイン 研究所内
　氏　名
　　　　　　　　シ　ミズ　マサジロウ
　　　　　　　　清　水　正次郎

LG0000924

LG0000924

# EXHIBIT 5

(19) 대한민국특허청(KR)
(12) 공개실용신안공보(U)

| | | | |
|---|---|---|---|
| (51) Int. Cl. | | (11) 공개번호 | 실1999-0019474 |
| F25C 1/22 | | (43) 공개일자 | 1999년06월15일 |
| (21) 출원번호 | 20-1997-0032814 | | |
| (22) 출원일자 | 1997년11월19일 | | |
| (71) 출원인 | 삼성전자 주식회사, 윤종용 | | |
| | 대한민국 | | |
| | 442-373 | | |
| | 경기도 수원시 팔달구 매탄3동 416 | | |
| (72) 고안자 | 이종달 | | |
| | 대한민국 | | |
| | 441-030 | | |
| | 경기도 수원시 권선구 권선동 1265 보성아파트610동 803호 | | |
| (74) 대리인 | 정홍석 | | |
| (77) 심사청구 | 있음 | | |
| (54) 출원명 | 냉장고용 제빙기 급수 구조 | | |

요약

본 고안은 냉장고용 제빙기 급수 구조에 관한 것으로서, 냉장고 본체의 외측에 제빙용 물을 이송하도록 구비된 이송관과, 상기 이송관에 연결되어 본체의 내부에 배설되는 급수관과, 상기 급수관의 선단에 제빙 용기로 물을 토출하도록 결합된 토출관을 포함하는 냉장고용 제빙기에 있어서, 상기 토출관의 상단에는 급수 차단시 급수관의 제빙수를 신속히 배출시킬 수 있도록 공기 유입공이 관통 형성되는 것을 특징으로 한다. 이와 같은 본 고안에 의하면, 토출관의 상측에 공기 유입공이 형성되기 때문에, 제빙용기에 공급되는 제빙수의 차단시 토출관에 있는 제빙수를 신속하게 배출시킬 수 있고, 이에 따라 토출관의 결빙에 의한 관로의 막힘을 방지할 수 있다.

대표도

도2

명세서

도면의 간단한 설명

도 1은 종래의 냉장고용 제빙기 급수 구조를 개략적으로 나타낸 단면도.

도 2는 본 고안에 따른 냉장고용 제빙기 급수 구조를 개략적으로 나타낸 단면도.

도 3은 도 2의 요부 사시도이다.

* 도면의 주요 부분에 대한 부호의 설명 *

10: 냉장고 본체          30: 제빙기

32: 제빙 용기          42: 이송관

44: 연결구          46: 급수관

48: 토출관          48a: 공기 유입공

고안의 상세한 설명

고안의 목적

고안이 속하는 기술 및 그 분야의 종래기술

본 고안은 냉장고용 제빙기 급수 구조에 관한 것으로, 보다 상세하게는 제빙수의 공급을 차단시킬 때 토출관 내부에 공기를 유입시킴으로써 그 내부에 있는 제빙수를 신속하게 배출하여 제빙수의 원활한 공급이 이루어질 수 있도록 하는 냉장고용 제빙기 급수 구조에 관한 것이다.

일반적으로 소형 냉장고에는 냉동실에 마련된 제빙기에 제빙수를 수동으로 급수케 하는 반면에, 대형 냉장고에서는 별도의 급수 장치를 이용하여 제빙수를 자동으로 급수케 하고 있다.

이렇게 자동으로 물을 급수하는 종래의 냉장고용 제빙기 급수 구조를 도 1에서 개략적으로 나타내고 있다.

LG0000950

LG0000950

도 1에서, 냉장고 본체(1)의 상부는 냉동실(2) 및 냉기 순환 통로(3)로 구획되고, 상기 냉기 순환 통로(3) 내에는 냉동 사이클의 일부를 구성하는 증발기(4)를 갖추어 여기에서 생성되는 냉기를 냉동실(2)로 공급하도록 되어 있다.

그리고, 상기 냉동실(2) 내에는 얼음을 만들 수 있는 제빙기(5)가 구비되고, 상기 제빙기(5) 내에는 제빙 용기(5a)가 수납되어 있다.

한편, 상기 본체(1)의 외측면에는 도시되지 않은 즉 저장 탱크로부터 제빙용으로 물을 이송하는 이송관(6)이 구비되고, 상기 본체(1)의 내부에는 상기 이송관(6)과 연결구(7)에 의하여 결합된 급수관(8)이 제빙 용기(5a) 쪽으로 하향 경사지게 매설된다.

상기 급수관(8)의 선단에는 제빙기(5) 내부의 제빙 용기(5a)에 직접 물을 토출시키는 토출관(9)이 결합된다.

이와 같은 종래의 급수 구조는 제빙이 완료되면 관로의 결빙을 방지하기 위하여 제빙수의 공급을 차단한 후 밸브를 하도록 되어 있으나, 급수관(8), 토출관(9) 및 이송관(6)과 같은 급수관의 직경이 변화 없이 균일하므로 급수시에나 밸수시 제빙수의 밸수는 신속히 이루어지지지 않는다.

이렇게 관로 상에 급수를 차단한 후에도 제빙수가 한번에 신속하게 전부 밸출되지 못하고 계속적으로 드레인이 이루어지게 되어 관 내부에 남아 있던 제빙수가 결빙되므로 다시 제빙기를 작동할 때에는 제빙수의 급수가 원활하게 이루어지지 못하는 문제점이 있다.

### 고안이 이루고자 하는 기술적 과제

따라서, 본 고안이 이루고자 하는 기술적 과제, 즉, 본 고안의 목적은 종래의 냉장고용 제빙기 급수 구조의 상기와 같은 문제점을 해결하기 위한 것으로서, 제빙수의 공급을 차단시킬 때 토출관 내부에 공기를 유입시킴으로써 그 내부에 제빙수가 잔류되는 것을 방지함과 동시에 제빙수의 원활한 공급이 이루어질 수 있도록 한 냉장고용 제빙기 급수 구조를 제공하는데 있다.

### 고안의 구성 및 작용

이와 같은 목적을 달성하기 위한 본 고안에 따른 냉장고용 제빙기 급수 구조는, 냉장고 본체의 외측에 제빙용 물을 이송하도록 구비된 이송관과, 상기 이송관에 연결되어 본체의 내부에 매설되는 급수관과, 상기 급수관의 내부에 제빙 용기로 물을 토출하도록 결합된 토출관을 포함하는 냉장고용 제빙기에 있어서, 상기 토출관의 상단에는 급수 차단시 급수관의 제빙수를 신속히 밸출시킬 수 있도록 공기 유입공이 관측 형성되는 것을 특징으로 한다.

이와 같은 본 고안에 의하면, 토출관의 상측에 공기 유입공이 형성되기 때문에, 제빙용기에 공급되는 제빙수의 차단시 토출관에 있는 제빙수를 신속하게 밸출시킬 수 있고, 이에 따라 토출관의 결빙에 의한 관로의 막힘을 방지할 수 있다.

이하, 본 고안의 바람직한 실시예를 첨부된 도면에 의하여 더욱 상세히 설명한다.

도 2는 본 고안에 따른 냉장고용 제빙기 급수 구조를 개략적으로 나타낸 단면도이고, 도 3은 도 2의 요부 단면도이다.

도시한 바와 같이, 냉장고 본체(10)의 상부는 냉동실(12)이 구비되고, 그 배면에 증발기(20)에 의하여 냉기를 고 내부로 공급시킬 수 있는 냉기 순환 통로(14)가 구비된다.

그리고, 상기 냉동실(12) 내에는 제빙기(30)가 얼음을 제조할 수 있도록 구비되고, 상기 제빙기(30) 내에는 제빙 용기(32)가 수납된다.

이러한 제빙기(30) 내부로 제빙수를 공급하기 위한 급수 수단으로는, 본체(10)의 외측면에는 도시되지 않은 즉 저장 탱크로부터 제빙수를 이송하는 이송관(42)이 구비되고, 상기 본체(10)의 내부에 상기 이송관(42)과 연결구(44)에 의하여 결합되어 매설되는 급수관(46)이 구비된다. 또한 상기 급수관(46)의 선단에 제빙기(30)의 제빙 용기(32) 위로 직접 물을 토출시키도록 결합되는 토출관(48)이 구비된다.

상기 토출관(48)은, 도 3에서 나타낸 바와 같이, 그 상단에 제빙수의 차단시 토출관의 내부에 제빙수가 잔류되지 않도록 제빙수를 신속히 밸출시킬 수 있도록 복수의 공기 유입공(48a)이 관측 형성된다.

이와 같은 본 고안에 따른 급수 구조에서, 제빙이 완료되어 제빙수의 공급을 차단하게 되면, 상기 복수의 공기 유입공으로 공기가 유입됨으로써, 급수관(46)이나 토출관(48) 등의 관 내부에 있던 제빙수는 이송관(42) 쪽이나 제빙기(30) 쪽으로 급속히 배출된다.

이 때, 토출관(48)의 상단에 형성된 공기 유입공(48a)을 통하여 유입되는 소량의 공기의 작용에 의하여 관 내부에는 있던 제빙수를 신속하게 밸출하게 한다.

### 고안의 효과

상술한 본 고안에 의하면, 토출관의 상측에 공기 유입공이 형성되기 때문에, 급수의 차단시 공기 유입공을 통하여 공기가 토출관에 유입됨으로써, 토출관 내부에 있는 제빙수를 신속히 밸출할 수 있고, 이에 따라 토출관의 내부가 결빙되는 것을 방지하여 토출관이 막히는 것을 방지함과 아울러 제빙수의 급수를 원활하게 할 수 있다.

본 고안은 상술한 특정의 바람직한 실시예에만 한정되지 아니하며, 청구 범위에서 청구하는 본 고안의 요지를 벗어남이 없이 당해 고안이 속하는 기술 분야에서 통상의 지식을 가진 자라면 누구든지 다양한 변형 실시가 가능한 것은 물론이고, 그와 같은 변경은 청구 범위 기재된 범위내에 있게 된다.

(57) 청구의 범위

LG0000951

LG0000951

**청구항 1.**

냉장고 본체의 외측에 제빙용 물을 이송하도록 구비된 이송관과; 상기 이송관에 연결되어 본체의 내부에 매설되는 급수관과; 그리고 상기 급수관의 선단에 제빙 용기로 물을 토출하도록 결합된 토출관을 포함하는 냉장고용 제빙기에 있어서,

상기 토출관의 상단에는 급수 차단시 관로에 있던 제빙수를 신속히 배출시킬 수 있도록 공기 유입공이 관통 형성되는 것을 특징으로 하는 냉장고용 제빙기 급수 구조.

**청구항 2.**

제 1항에 있어서, 상기 공기 유입공은 상기 토출관의 상측에 적어도 하나이상 관통되는 것을 특징으로 하는 냉장고용 제빙기 급수 구조.

**도면**

도면 1



LG0000952

LG0000952

도면 2



도면 3



**LG0000953**

LG0000953

# EXHIBIT B
## Part 3

# EXHIBIT 6

(19) 대한민국특허청(KR)
(12) 공개실용신안공보(U)

| | | | |
|---|---|---|---|
| (51) Int. Cl. | | (11) 공개번호 | 실1999-0030068 |
| F25C 1/22 | | (43) 공개일자 | 1999년07월26일 |
| (21) 출원번호 | 20-1997-0042739 | | |
| (22) 출원일자 | 1997년12월29일 | | |
| (71) 출원인 | 삼성전자 주식회사, 윤종용 | | |
| | 대한민국 | | |
| | 442-373 | | |
| | 경기도 수원시 팔달구 매탄3동 416 | | |
| (72) 고안자 | 하대현 | | |
| | 대한민국 | | |
| | 120-011 | | |
| | 서울특별시 서대문구 연희1동 132-75 | | |
| (74) 대리인 | 허성원 | | |
| (77) 심사청구 | 있음 | | |
| (54) 출원명 | 냉장고 | | |

**요약**

본 고안은, 증발기제상히터파이프와, 제빙기와, 상기 제빙기의 급수를 위한 급수관을 갖는 냉장고에 관한 것으로서, 상기 증발기제상히터파이프와 상기 급수관을 상호 열전달이 가능하게 연결하는 열전도부재를 포함한다. 이에 따라, 급수관에 발생하는 결빙을 제거하기 위해 별도의 장치를 추가하지 않고, 증발기 표면에 착상되는 성에를 제거하기 위한 목적으로 설치된 제상히터파이프를 이용하여 급수관내의 결빙을 제거할 수 있고, 제빙트레이에 용수공급을 원활하게 할 수 있고 별도의 추가장치의 설치에 따른 비용 및 소비전력을 절약할 수 있다.

**대표도**

도2

**명세서**

**도면의 간단한 설명**

도 1은 본 고안에 따른 냉장고의 측단면도.

도 2는 도 1의 냉동실의 부분확대도.

도 3은 종래의 냉장고의 측단면도이다.

* 도면의 주요 부분에 대한 부호의 설명

| | |
|---|---|
| 3 : 냉장고본체 | 7 : 냉동실 |
| 9 : 냉장실 | 21 : 제빙기 |
| 23 : 급수관 | 27 : 냉동용증발기 |
| 29 : 냉장용증발기 | 33 : 제상히터파이프 |
| 35 : 열전도부재 | |

**고안의 상세한 설명**

**고안의 목적**

**고안이 속하는 기술 및 그 분야의 종래기술**

본 고안은, 냉장고에 관한 것으로서, 보다 상세하게는, 제빙기에 얼음 제조용 용수를 공급하는 급수관내의 결빙이 방지되도록 한 냉장고에 관한 것이다.

냉장고는 냉각실내에 수용되는 저장품들을 냉각시키기 위한 냉동시스템을 구비하고 있다. 일반적인 냉동시스템은, 냉매를 압축하는 압축기와, 압축기로부터의 냉매를 응축하는 응축기 및 응축기로부터의 냉매를 증발시켜 냉기를 발생하는 증발기로 이루어진다.

LG0000944

LG0000944

도 3은 종래의 냉장고의 측단면도이다. 이 도면에 도시된 바와 같이, 냉장고(101)는 냉장고본체(103)내에 중간격벽(105)에 의해 냉동실(107) 및 냉장실(109)이 구획되어 있다. 냉동실(107)과 냉장실(109)의 전면개구부에는 일측의 힌지(미도시)를 중심으로 회동개폐되는 냉동실도어(111)와 냉장실도어(113)가 각각 설치되어 있다. 냉장실(109)내에는 다수의 수납선반(115)이 냉각공간을 구획하고 있어 저장품들을 층상으로 저장할 수 있다.

냉동실(107)의 상부영역에는 얼음을 만드는 제빙기(121)가 설치되어 있다. 제빙기(121)는 제빙을 위한 용수를 수용하는 제빙트레이(137)와, 제빙트레이(137)로부터 이탈되는 얼음을 저장하는 얼음큐브(139) 그리고, 제조된 얼음을 제빙트레이(137)로부터 이탈시켜 얼음큐브(139)에 저장시키는 이빙모터(141)로 구성되어 있다. 제빙트레이(137)의 상부에는 외부로부터 공급되는 얼음제조용 용수를 유출시키는 급수관(123)이 설치되어 있다. 이 급수관(123)은 냉장고본체(103)의 배면에 설치된 도시하지 않은 급수호스와 연결되어 있으며, 급수호스는 냉장고본체(103)의 후단하부에 설치된 도시하지 않은 급수밸브에 연결되어 있다.

그리고, 제빙트레이(137)의 하부에는 제빙트레이(137)의 온도를 감지하여 급수상태나 제빙상태를 판단할 수 있도록 하는 이빙센서(143)가 설치되어 있다.

냉동실(107)의 배면과 냉장고본체(103)의 후벽사이에는 냉동용증발기(103)가 설치되어 있고, 냉동용증발기(103)와 인접하여 송풍팬(131a)이 설치되어 있다. 또한, 냉동용증발기(127)에는 착상을 제거하기 위한 제상히터파이프(133)가 설치되어 있다. 냉장실(109)의 배면과 냉장고본체(103)의 후벽사이에는 냉장용증발기(129)와 송풍팬(131b)이 설치되어 있다.

그런데, 이러한 종래의 냉장고에서는, 제빙트레이(137)에 제빙용 용수가 차게되면 제부각(미도시)의 산호에 의해서 급수밸브(미도시)가 닫히게되는데 이 때, 급수관(122)에 남아있는 물은 공사각에 의해 제빙트레이(137)에 흘러가지만 일부는 급수관(122)의 절곡부위에 고이게 된다. 급수관(123)의 절곡부에 고인 물은 급수관(123)이 냉동실(107)내에 노출되어 있어 냉동실(107)내의 온도에 의해 결빙된다. 따라서, 결빙이 증가하게 되면 급수관(123)이 막혀 제빙트레이(137)로 얼음제조를 위한 용수공급이 불가능하게 되는 문제점이 있다.

### 고안이 이루고자 하는 기술적 과제

따라서, 본 고안의 목적은, 종래의 이러한 문제점을 해결하기 위해 고안한 것으로, 제빙트레이에 용수를 공급하는 급수관내에 결빙이 발생하지 않도록 한 냉장고를 제공하는 것이다.

### 고안의 구성 및 작용

상기 목적은, 본 고안에 따라, 증발기제상히터파이프와, 제빙기와, 상기 제빙기의 급수를 위한 급수관을 갖는 냉장고에 있어서, 상기 증발기제상히터파이프와 상기 급수관을 상호 열전달이 가능하게 연결하는 열전도부재를 포함하는 것을 특징으로 하는 냉장고에 의해 달성된다.

여기서, 상기 급수관은 열전도율이 높은 금속재인 것이 바람직하다.

이하에서는 첨부도면을 참조하여 본 고안에 대해 상세히 설명한다.

도 1은 본 고안에 따른 냉장고측단면도이다. 이 도면에 도시된 바와 같이, 도 3과 관련하여 설명한 것과 마찬가지로, 냉장고(1)는 냉장고본체(3)내에 중간격벽(5)에 의해 냉동실(7) 및 냉장실(9)이 구획되어 있다. 냉동실(7)과 냉장실(9)의 전면개구부에는 일측의 힌지(미도시)를 중심으로 회동개폐되는 냉동실도어(11)와 냉장실도어(13)가 각각 설치되어 있다.

냉장실(9)내에는 다수의 수납선반(15)이 냉각공간을 구획하고 있어 저장품들을 층상으로 저장할 수 있다. 냉장실(9)의 상부영역에는 특선실(17)이 마련되어 있고, 하부영역에는 야채저장실(19)이 마련되어 있다. 특선실(17)내 온도는 냉장실(9)의 온도보다 상대적으로 소정 저온으로 유지되며, 야채저장실(19)내 온도는 냉장실(9)의 온도보다 상대적으로 고온으로 유지된다. 이에 따라, 냉장실(9)에 저장되는 저장품들의 특성에 따라 신선도를 유지시킬 수 있다.

냉동실(7)내에는 냉장실(9)과 마찬가지로, 다수의 수납선반(15)이 냉각공간을 구획하고 있어 저장품들을 층상으로 저장할 수 있고, 냉동실(7)내의 상부영역에는 얼음을 만드는 제빙기(21)가 설치되어 있으며, 제빙기(21)에 얼음제조를 위한 용수를 공급하는 급수관(23)이 마련되어 있다.

제빙기(21)에 얼음제조를 위해 용수를 공급하는 급수관(23)은, 냉장고본체(3) 하단에 위치한 물탱크(미도시)와 급수밸브(미도시)에 연결되어 있다. 얼음을 제조하기 위한 용수를 공급하기 위해 급수밸브(미도시)가 열리면 물탱크(미도시)에 담겨진 용수가 급수관(23)을 통해 제빙트레이에 공급된다.

냉장고본체(3)의 후면하단에는 냉매를 압축하는 압축기(25)가 설치되어 있다. 냉동실(7)과 냉장실(9)의 후벽면과 냉장고본체(3)의 후벽사이에는 냉매의 증발잠열에 의해 주위의 공기를 냉각하는 냉동용증발기(27)와 냉장용증발기(29)가 각각 설치되어 있다. 각 증발기(27,29)와 인접한 곳에는 냉기의 송풍을 위한 송풍팬(31)이 각각 마련되어 있다. 그리고, 증발기(27,29)의 표면에 착상된 성에를 제거하기 위해 제상히터파이프(33)가 증발기내(27,29)에 삽입되어 있다.

또한, 급수관(23)과 냉동용증발기(27)에 삽입된 제상히터파이프(33)를 상호 연결하는 열전도부재(35)가 설치되어 있다.

LG0000945

LG0000945

도 2는 도 1의 냉동실의 부분확대도이다. 이 도면에 도시된 바와 같이, 제빙기(21)는 제빙을 위한 용수를 수용하는 제빙트레이(37)와, 제빙트레이(37)로부터 이탈되는 얼음을 저장하는 얼음큐브(39) 그리고, 제조된 얼음을 제빙트레이(37)로부터 이탈시켜 얼음큐브(39)에 저장시키는 이빙모터(41)로 구성되어 있다. 제빙트레이(37)의 하부에는 제빙트레이(37)의 온도를 감지하며 급수상태나 제빙상태를 판단할 수 있도록 하는 이빙센서(43)가 설치되어 있다. 또한, 제빙트레이(37)에 얼음을 제조하기 위해 용수를 공급하는 급수관(23)은 열전도율이 높은 동이나 알루미늄같은 금속재이며, 제빙트레이(37)를 향해 하향절곡되어 경사지게 설치되어 있다.

냉동용증발기(27)에는 냉매가 흐르는 냉매파이프(45)와 복수의 판상인 전열핀(47)으로 구성되어 있다. 전열핀(47)에는 냉매파이프(45)를 수용되는 다수의 수용공(미도시)과 제상히터파이프(33)을 수용하는 다수의 수용공(미도시)이 형성되어 있다. 또한, 전원을 인가하면 발열하는 제상히터파이프(33)는 지그재그형상으로 전열핀(47)에 삽입된 냉매파이프(45) 사이에 전열핀(47)를 관통하도록 배치되어 있다.

한편, 열전도부재(35)의 일측은 급수관(23)에 타측은 제상히터파이프(33)에 접촉되어 있고, 접촉부위는 접촉면적을 크게 하기 위해 급수관(23)과 제상히터파이프(33)를 감싸는 형상으로 되어 있다.

이러한 구성에 의하여, 제빙트레이(37)에 물이 차게되면 제어부(미도시)의 신호에 의해 급수밸브(미도시)가 닫혀 급수가 중단되고, 급수관(23)에 남아 있는 물은 급수관(23)의 하향 경사각에 의해 제빙트레이(37)로 흘러가지만 일부는 급수관(23)의 절곡부위에 고이게 된다. 이렇게 급수관(23)내에 고인 물은 급수관(23)이 냉동실(7)내에 노출되어 외부 냉동실(7)내의 온도에 의해 결빙이 된다. 하지만, 급수관(23)과 제상히터파이프(33)가 열전도부재(35)로 상호 연결되어 있으므로, 제상히터파이프(33)가 증발기의 제상을 목적으로 발열할 때마다 제상히터파이프(33)의 열이 연결부재(35)를 통해 급수관(23)으로 전달되어 급수관(23)내의 결빙을 녹이게 된다.

이에 따라, 제빙트레이(37)에 얼음을 제조하기 위해 용수를 공급하는 급수관(23)의 용수공급은 원활하게 되며, 급수관(23)의 결빙을 제거하기 위한 별도의 추가장치가 필요없게 된다.

### 고안의 효과

이상에서 설명한 바와 같이, 본 고안에 따르면, 제빙트레이에 얼음을 제조하기 위해 용수를 공급하는 급수관에 발생하는 결빙을 제거하기 위해 별도의 장치를 추가하지 않고, 증발기 표면에 착상되는 성에를 제거하기 위한 목적으로 설치된 제상히터파이프를 이용하므로, 제빙트레이에 용수공급을 원활하게 할 수 있고 별도의 추가장치의 설치에 따른 비용 및 소비전력을 절약할 수 있는 냉장고가 제공된다.

### (57) 청구의 범위

청구항 1.
증발기제상히터파이프와, 제빙기와, 상기 제빙기의 급수를 위한 급수관을 갖는 냉장고에 있어서,

상기 증발기제상히터파이프와 상기 급수관을 상호 열전달이 가능하게 연결하는 열전도부재를 포함하는 것을 특징으로 하는 냉장고.

청구항 2.
제 1항에 있어서,

상기 급수관은 열전도율이 높은 금속재인 것을 특징으로 하는 냉장고.

도면

LG0000946

LG0000946

도면 1



LG0000947

LG0000947

도면 2



LG0000948

LG0000948

도면 3



101

121
141 139 143 137 123

103

111

107

105

117

109

113

115

119

131a

133

127

131b

129

125

LG0000949

LG0000949

# EXHIBIT 7

(19)日本国特許庁（ＪＰ）  (12) 公 開 特 許 公 報 （Ａ）  (11)特許出願公開番号

特開平6−257935

(43)公開日  平成6年(1994)9月16日

(51)Int.Cl.⁵        識別記号    庁内整理番号        ＦＩ          技術表示箇所
　　　Ｆ２５Ｄ　25/00              Ｇ    7380−3Ｌ

審査請求  未請求  請求項の数2  ＯＬ  （全 8 頁）

(21)出願番号    特願平5−39678

(22)出願日      平成5年(1993)3月1日

(71)出願人  000003078
　　　　　　株式会社東芝
　　　　　　神奈川県川崎市幸区堀川町72番地
(72)発明者  山本  彰
　　　　　　大阪府茨木市太田東芝町1番6号  株式会
　　　　　　社東芝大阪工場内
(74)代理人  弁理士  佐藤  強  （外1名）

(54)【発明の名称】  貯蔵庫

(57)【要約】

【目的】  貯蔵室内に引出し式の貯蔵容器を備えるものにあって、簡単な構成で2段ストッパ構造を形成する。

【構成】  冷凍室の内側壁部に、溝部22を有する固定レール21を設ける一方、扉に連結される貯蔵容器の側壁部に凹溝24を有する可動レール23を設ける。それらの間に、凹溝24を相対的に転動する案内ローラ27及び幅狭ローラ28を備える中間レール25を設ける。凹溝24の途中部位に第1の幅狭部30を設けると共に、後端側に第2の幅狭部31を設ける。貯蔵容器の引出時に、案内ローラ27は、まず第1の幅狭部30により通過が規制されて可動レール23が第1の引出位置にて停止する。さらに強い力で引出されると、案内ローラ27が第1の幅狭部30を相対的に乗越えて移動し、遂には案内ローラ27が第2の幅狭部31によって通過が規制され、第2の引出位置に停止する。



−1−

LG0000925

LG0000925

【特許請求の範囲】
【請求項1】　貯蔵室と、支持部材に着脱可能に保持されて前記貯蔵室内に出し入れする貯蔵容器と、前記貯蔵室に前記貯蔵容器の出入方向に延びて設けられた固定レールと、前端側部分に案内ローラを備えてなり前記固定レールに案内される中間レールと、前記支持部材に設けられ前記出入方向に延びる凹溝を有しこの凹溝内を前記案内ローラが相対的に転動することにより前記中間レールに案内される可動レールとを具備し、
前記可動レールの凹溝の途中部位に、前記案内ローラの通過を規制して該可動レールを第1の引出位置に停止させる第1の幅狭部を設けると共に、前記凹溝の後端側部位に、前記案内ローラが第1の幅狭部による規制を越えて更に前記凹溝内を移動したときに該案内ローラの通過を規制して該可動レールを第2の引出位置に停止させる第2の幅狭部を設けたことを特徴とする貯蔵庫。
【請求項2】　前記中間レールは、前記可動レールの凹溝内を相対的に転動して前記案内ローラと共に可動レールを案内する幅狭ローラを備え、この幅狭ローラの幅寸法を前記第1及び第2の幅狭部の幅寸法よりも小さく構成したことを特徴とする請求項1記載の貯蔵庫。
【発明の詳細な説明】
【０００１】
【産業上の利用分野】本発明は、貯蔵容器を貯蔵室内にレール機構を介して出し入れ可能に収納させるようにした貯蔵庫に関する。
【０００２】
【従来の技術】近年、貯蔵庫例えば家庭用の冷蔵庫において、いわゆる引出し式の冷凍室や野菜室なるものが供されてきている。図９に示すように、このものでは、前面が開口した図示しない冷凍室（あるいは野菜室）内に、その開口部を開閉する扉１に連結された貯蔵容器２が、レール機構を介して出し入れ可能に設けられる。即ち、冷凍室の両内壁部には、前後方向に延びる固定レール３が設けられ、一方、扉１の背面側に取付けられ前記貯蔵容器２を保持する枠部材４の左右両側面部には、前後方向に延びる可動レール５が一体に設けられている。前記固定レール３の上面側には溝部３ａが形成され、可動レール５の下面側にも凹溝５ａが形成されている。
【０００３】前記固定レール３と可動レール５との間には、中間レール６が設けられている。この中間レール６は、前記固定レール３の溝部３ａ内を転動する例えば３個のローラ７を備えており、もって前記固定レール３に沿って前後方向に移動されるようになっている。このとき、固定レール３に対する中間レール６の移動可能範囲は、固定レール３の側縁部に設けられた２個の突起３ｂ，３ｃと、中間レール６の下面に設けられた突起６ａとにより規制されるようになっている。
【０００４】一方、前記可動レール５は、凹溝５ａにお

いて前記ローラ７上に載置され、そのローラ７が凹溝５ａ内を相対的に転動することにより、中間レール６に案内されて前後方向に移動されるようになっている。これにて、使用者による扉１の引出しあるいは押込み操作に伴って貯蔵容器２は冷凍室内にスムーズに出し入れされるのである。尚、貯蔵容器２は、枠部材４に上方から嵌込まれているだけなので、清掃時などには枠部材４から取外すことができるようになっている。
【０００５】
【発明が解決しようとする課題】ところで、上記のようなレール構造にあっては、可動レール５（貯蔵容器２）の引出位置を規制するために、前記可動レール５の後端部下面にストッパ部材８が設けられると共に、中間レール６の前端部上面にストッパ部材９が設けられ、以て、いわゆる２段ストッパ構造が構成されている。これにて、まず、前記ストッパ部材８が中間レール６の中央のローラ７に当接することにより、可動レール５の移動が規制され、貯蔵容器２は貯蔵物を出し入れするに適した位置に停止されるようになっている。
【０００６】さらに、その位置からさらに強い力によって可動レール５が引出されることにより、ストッパ部材８が中央のローラ７を乗越えて前方に移動し、途にはストッパ部材９に当接することにより可動レール５の移動が再び規制される。このとき、貯蔵容器２は枠部材４からの分離が可能な位置に停止されるようになっているのである。
【０００７】しかしながら、従来のものでは、いわゆる２段ストッパ構造を構成するために、別部品のストッパ部材８及びストッパ部材９が必要であるため、部品数が多くなって組立作業性に劣るといった問題点があった。
【０００８】本発明は上記事情に鑑みてなされたものであり、その目的は、貯蔵室内に引出し式の貯蔵容器を備えるものにあって、簡単な構成でいわゆる２段ストッパ構造を形成することができる貯蔵庫を提供するにある。
【０００９】
【課題を解決するための手段】本発明の貯蔵庫は、貯蔵室と、支持部材に着脱可能に保持されて前記貯蔵室内に出し入れされる貯蔵容器と、前記貯蔵室に前記貯蔵容器の出入方向に延びて設けられた固定レールと、前端側部分に案内ローラを備えてなり前記固定レールに案内される中間レールと、前記支持部材に設けられ前記出入方向に延びる凹溝を有しこの凹溝内を前記案内ローラが相対的に転動することにより前記中間レールに案内される可動レールとを具備し、前記可動レールの凹溝の途中部位に、前記案内ローラの通過を規制して該可動レールを第1の引出位置に停止させる第1の幅狭部を設けると共に、前記凹溝の後端側部位に、前記案内ローラが第1の幅狭部による規制を越えて更に前記凹溝内を移動したときに該案内ローラの通過を規制して該可動レールを第2の引出位置に停止させる第2の幅狭部を設けたところに

-2-

LG0000926

LG0000926

特徴を有する。

【００１０】また、この場合、前記中間レールに、前記可動レールの凹溝内を相対的に転動して前記案内ローラと共に可動レールを案内する幅狭ローラを設け、この幅狭ローラの幅寸法を前記第１及び第２の幅狭部の幅寸法よりも小さく構成するようにしても良い。

【００１１】
【作用】上記手段によれば、固定レールに中間レールが案内されると共に、可動レールの凹溝内を中間レールの案内ローラが転動することに基づいて、貯蔵容器は、貯蔵室に出し入れされるようになる。この際、可動レールが引出されるに伴い、凹溝の途中部位に設けられた第１の幅狭部によって案内ローラの相対移動が規制されることにより、可動レールは第１の引出位置に停止されるようになる。そして、可動レールがその位置からさらに引出されるに伴い、案内ローラが第１の幅狭部による規制を越えてさらに凹溝内を相対移動し、遂には凹溝の後端側部位に設けられた第２の幅狭部によって案内ローラの相対移動が規制されることにより、可動レールが第２の引出位置に停止されるようになる。

【００１２】これにて、いわゆる２段ストッパ構造が構成されるのであるが、このとき、凹溝に設けられた第１及び第２の幅狭部並びに案内ローラにより２段ストッパ構造を構成することができるので、ストッパ部材等の別部品が不要となり、簡単な構成で済ませることができる。

【００１３】また、中間レールに、前記案内ローラに加えて前記第１及び第２の幅狭部の幅寸法よりも小さい幅寸法の幅狭ローラを設けるようにすれば、可動レールを複数個のローラにより安定して案内することができ、しかも、幅狭ローラは、凹溝の第１及び第２の幅狭部を容易に通過するので、上記２段ストッパ構造の妨げとなることはない。

【００１４】
【実施例】以下、本発明を家庭用冷蔵庫に適用した一実施例について、図１乃至図８を参照して説明する。

【００１５】まず、図８は本実施例に係る貯蔵庫たる冷蔵庫１１の外観を示しており、冷蔵庫１１は、上部に両開き式の扉１２により開閉される冷蔵室を有し、その下方に引出し式の製氷室及び第１の冷凍室を左右に有し、さらにその下方にこれも引出し式の第２の冷凍室１３を有し、最下部にやはり引出し式の野菜室を有して構成されている。これら製氷室、第１の冷凍室、第２の冷凍室１３、野菜室の前面には、夫々扉１４，１５，１６，１７が設けられている。

【００１６】ここで、前記第２の冷凍室１３の構成について、図１乃至図７を参照して述べる。詳しく図示はしないが、貯蔵室としての冷凍室１３は、上下左右及び奥方を断熱壁に囲まれた状態に構成され、前面に前記扉１６により開閉される矩形の開口部を有している。この冷凍室１３内には、図示しない冷却装置からの冷気が上方から供給されるようになっている。

【００１７】この冷凍室１３内には、冷凍貯蔵物を収容するための正形容器箱状の貯蔵容器１８が、前記扉１６の裏面側に連結されて出し入れ可能に設けられるようになっている。この場合、扉１６の裏面には、図２に示すように、全体としてほぼコ字状をなす金属製の支持部材１９が取付けられ、貯蔵容器１８は、この支持部材１９内に上方から嵌め込まれることにより着脱可能に保持されるようになっている。

【００１８】そして、前記貯蔵容器１８と冷凍室１３との間には、該貯蔵容器１８を出入れ方向（前後方向）に案内するための一対のレール機構２０が設けられている。このレール機構２０について以下詳述する。尚、レール機構２０は、冷凍室１３の左右両側において対称的に設けられており、図１、図３乃至図８は、そのうち右側のものを代表させて示している。

【００１９】即ち、前記冷凍室１３の左右の両側壁部１３ａには、該冷凍室１３の開口部から奥方へ延びる例えばプラスチック製の固定レール２１が設けられている。図１及び図４に示すように、この固定レール２１は、正面略コ字状をなし、その開放部が内側を向くようにして冷凍室１３の側壁部１３ａに固定されている。そして、図５にも示すように、この固定レール２１の下辺部の上面には、凹状をなす溝部２２が前後方向に延びて形成されている。また、図２及び図５に示すように、この固定レール２１の途中部位の２か所には、ストッパ部２１ａ，２１ｂが側方に突出して一体に設けられている。

【００２０】一方、前記貯蔵容器１８側には、貯蔵容器１８の左右の両側部に位置して前後方向に延びる可動レール２３が設けられている。詳しくは後述するが、この可動レール２３は、前記支持部材１９に側方に延出するように一体的に設けられており、前記固定レール２１とは逆に、下面側に開放する凹溝２４が前後方向に延びて形成されている。

【００２１】そして、前記固定レール２１と可動レール２３との間には、中間レール２５が設けられる。この中間レール２５は、金属板材を前記固定レール２１よりも一回り小さい正面略コ字状に折曲形成して構成され、後述するように、その下辺部の切欠部に３個（図２参照）のローラを回転自在に有すると共に、後端上部に上ローラ２６を回転自在に有して構成されている。

【００２２】この中間レール２５は、前記３個のローラが前記溝部２２内に配置されることにより固定レール２１に載置状態に支持され、それらローラが溝部２２内を転動することにより固定レール２１に沿って前後方向に移動されるようになっている。また、図２に示すように、この中間レール２５の下辺部のほぼ中央部には、下方に突出するストッパ部２５ａが一体に形成されてお

-3-

LG0000927

LG0000927

り、このストッパ部２５ａが前記ストッパ部２１ａ、２
１ｂに係止されることにより、固定レール２１に対する
中間レール２５の移動範囲が規制されている。このと
き、前記上ローラ２６は、固定レール２１の上辺部の
下面を転動するようになっている。

【０００２３】さらに、前記可動レール２３は、図１、図
４に示すように、前記凹溝２４が前記３個のローラ上に
載置されるようにして中間レール２５に支持され、もっ
て、ローラが相対的に凹溝２４内を転動することによっ
て、中間レール２５に沿って前後方向に移動するよう
になっている。これにて、貯蔵容器１８は、使用者の扉
１６の引出し及び押込み操作により、レール機構２０に
より案内されて、冷凍室１３内に出し入れされるように
なっているのである。

【０００２４】さて、前記レール機構２０には、前記可動
レール２３（貯蔵容器１８）の停止位置を２段階に規制
するためのいわゆる２段ストッパ構造が設けられてい
る。以下、この２段ストッパ構造について詳述する。

【０００２５】まず、前記中間レール２５に設けられた３
個のローラのうち、前端部分のものが本発明にいう案内
ローラ２７であり、中間部分及び後端側部分に位置する
残りの２個が、本発明にいう幅狭ローラ２８及び２９で
ある。ここで、案内ローラ２７の幅寸法Ｌ１（図６参
照）は、前記溝部２２及び前記凹溝２４の幅寸法Ｌ２及
びＬ３（図５及び図７参照）よりも若干小さく、また、
図６に示すように、幅狭ローラ２８及び２９の幅寸法Ｌ
４は、案内ローラ２７の幅寸法Ｌ１よりも小さく構成さ
れている。

【０００２６】そして、図１、図２及び図７に示すよう
に、前記可動レール２３には、前記凹溝２４の途中部位
に位置して第１の幅狭部３０が設けられていると共に、
凹溝２４の後端側部位に位置して第２の幅狭部３１が設
けられている。これら第１及び第２の幅狭部３０及び３
１は、可動レール２３を構成する金属板のうち凹溝２４
の左右の側壁部部分を内方へ絞り成形することにより
形成されている。

【０００２７】この場合、凹溝２４の第１及び第２の幅狭
部３０及び３１の幅寸法Ｌ５（図７参照）は、前記案内
ローラ２７の幅寸法Ｌ１よりも小さく、且つ前記幅狭ロ
ーラ２８及び２９の幅寸法Ｌ４よりも大きく構成されて
いる。従って、案内ローラ２７が凹溝２４内を相対的に
転動する際に、第１及び第２の幅狭部３０及び３１によ
り通過が規制されるようになっていると共に、幅狭ロー
ラ２８及び２９が凹溝２４内を相対的に転動する際に
は、第１及び第２の幅狭部３０及び３１をスムーズに通
過することが可能とされている。

【０００２８】そして、前記第１の幅狭部３０は、図３
（ａ）に示すように、中間レール２５が最大に引出され
た状態（ストッパ部２５ａがストッパ部２１ａに当接し
ている状態）で、案内ローラ２７の相対移動を規制する

ことにより、可動レール２３ひいては貯蔵容器１８が貯
蔵物を出し入れするに適した第１の引出位置に停止され
るような位置に形成されている。一方、前記第２の幅狭
部３１は、図３（ｂ）に示すように、案内ローラ２７が
前記第１の幅狭部３０による規制を越えてさらに凹溝２
４内を相対的移動したときに、案内ローラ２７の相対移動
を規制することにより、貯蔵容器１８が支持部材１９か
ら分離可能な第２の引出位置に停止されるような位置に
形成されているのである。

【０００２９】次に、上記構成の作用について述べる。貯
蔵容器１８を冷凍室１３から引出して貯蔵物の出し入れ
を行うためには、使用者は扉１６を引出し操作する。
すると、扉１６と一体の支持部材１９即ち可動レール２３
は、前記中間レール２５の各ローラ２７、２８、２９が
凹溝２４内を相対的に転動しまたそれらローラ２７、２
８、２９が溝部２２内を転動するに伴い、中間レー
ル２５を介して固定レール２１に案内され、もって貯蔵
容器１８が軽い力でスムーズに手前側に引出される。ま
た、引出された貯蔵容器１８を冷凍室１３内に収納する
には、使用者は扉１６を押込み操作する。このときも同
様に、貯蔵容器１８は、レール機構２０により案内され
て軽い力でスムーズに移動するようになる。

【０００３０】而して、前記引出し操作に伴い、中間レー
ル２５のストッパ部２５ａが固定レール２１のストッパ
部２１ａに当接することにより、中間レール２５は最大
量引出されることになる。これと共に、可動レール２３
の引出しに伴って、中間レール２５の各ローラ２７、２
８、２９が、可動レール２３の凹溝２４内を相対的に矢
印Ａ方向（図７参照）に移動するのであるが、このと
き、２個の幅狭ローラ２９及び２８は、第１及び第２の
幅狭部３０及び３１を通過する。

【０００３１】ところが、案内ローラ２７が、遂に第１の
幅狭部３０部分に至ったときに、この第１の幅狭部３０
により通過が規制されて可動レール２３がこの第１の引
出位置で停止する。図３（ａ）に示すように、この状
態では、貯蔵容器１８が貯蔵物を出し入れするに適した
ところまで引出されているので、使用者は、貯蔵物の出
し入れの作業を容易に行うことができる。

【０００３２】そして、使用者が、例えば清掃などのため
に貯蔵容器１８を取出したい場合には、可動レール２３
の第１の引出位置から、さらに強い力で扉１６の引出し
操作を行う。すると、可動レール２３がさらに前方に移
動し、これに伴い、案内ローラ２７が第１の幅狭部３０
を相対的に乗越えるようになり、さらに凹溝２４内を矢
印Ａ方向に相対移動し、遂に凹溝２４の後端側部位に
設けられた第２の幅狭部３１によってその通過が規制さ
れることになる。

【０００３３】これにより、図３（ｂ）に示すように、可
動レール２３が第２の引出位置に停止し、貯蔵容器１８
が支持部材１９からの分離が可能とされ、使用者は、容

－４－

LG0000928

LG0000928

易に貯蔵容器１８を支持部材１９から上方へ抜出して取外すことができるのである。この状態でも、扉１６や支持部材１９は依然として固定レール２１即ち冷凍室１３の内壁部に支持され、外れるといったことはないのである。

【００３４】このように本実施例によれば、可動レール２３の凹溝２４内に、案内ローラ２７より幅狭の第１及び第２の幅狭部３０及び３１を形成することにより、いわゆる２段ストッパ構造を構成することができた。従って、従来のような別部品のストッパ部材８及びストッパ部材９を組付けて２段ストッパ構造を構成していたものと異なり、ストッパ部材等の別部品が不要となり、簡単な構成で２段ストッパ構造を形成することができるようになったのである。

【００３５】また、特に本実施例では、中間レール２５に、案内ローラ２７に加えて第１及び第２の幅狭部３０及び３１よりも小さい幅寸法の幅狭ローラ２８、２９を設けるようにしたので、可動レール２３を複数個のローラ２７、２８、２９により安定して案内することができるという効果を得ることができる。この場合、幅狭ローラ２８、２９は、凹溝２４内の第１及び第２の幅狭部３０及び３１を容易に通過するので、上記２段ストッパ構造の妨げとならないことは勿論である。

【００３６】尚、本発明は上記且つ図面に示した実施例に限定されるものではなく、例えば冷蔵庫以外の貯蔵庫全般に適用できるなど、要旨を逸脱しない範囲内で適宜変更して実施し得るものである。

【００３７】
【発明の効果】以上の説明にて明らかなように、本発明の貯蔵庫によれば、貯蔵室内に引出し式の貯蔵容器を備えるものにあって、可動レールの凹溝の途中中部位に、案内ローラの通過を規制して該可動レールを第１の引出位置に停止させる第１の幅狭部を設けると共に、凹溝の後端側部位に、案内ローラが第１の幅狭部による規制を越

えて更に凹溝内を移動したときに該案内ローラの通過を規制して可動レールを第２の引出位置に停止させる第２の幅狭部を設けたので、簡単な構成でいわゆる２段ストッパ構造を形成することができるという優れた実用的効果を奏するものである。

【００３８】また、この場合、中間レールに、可動レールの凹溝内を相対的に転動して案内ローラと共に可動レールを案内する幅狭ローラを設け、この幅狭ローラの幅寸法を前記第１及び第２の幅狭部の幅寸法よりも小さく構成するようにすれば、可動レールを複数個のローラにより安定して案内することができ、しかも上記２段ストッパ構造の妨げとはならないのである。

【図面の簡単な説明】
【図１】本発明の一実施例を示すもので、レール機構部分の拡大斜視図
【図２】要部の分解斜視図
【図３】可動レールが第１の引出位置に停止した状態（ａ）及び第２の引出位置に停止した状態（ｂ）を示す要部の縦断側面図
【図４】レール機構部分の縦断正面図
【図５】固定レールの先端部部分の横断上面図
【図６】中間レールの先端部部分の横断上面図
【図７】可動レールの先端部部分の横断上面図
【図８】冷蔵庫の斜視図
【図９】従来例を示す図２相当図
【符号の説明】
図面中、１１は冷蔵庫（貯蔵庫）、１３は冷凍室（貯蔵室）、１６は扉、１８は貯蔵容器、１９は支持部材、２０はレール機構、２１は固定レール、２１ａ，２１ｂはストッパ部、２２は溝部、２３は可動レール、２４は凹溝、２５は中間レール、２５ａはストッパ部、２６は上ローラ、２７は案内ローラ、２８、２９は幅狭ローラ、３０は第１の幅狭部、３１は第２の幅狭部を示す。

【図４】



-5-

LG0000929

LG0000929



【図1】
【図2】
【図3】
【図5】
（a）
（b）

-6-

LG0000930

LG0000930

【図6】



【図7】



【図8】



-7-

LG0000931

LG0000931

【図9】



LG0000932

LG0000932

# EXHIBIT 8

(19)日本国特許庁（ＪＰ）　　(12) 公 開 特 許 公 報 （Ａ）　　(11)特許出願公開番号

特開2001−91153

（Ｐ2001−91153Ａ）

(43)公開日　平成13年4月6日(2001.4.6)

| (51)Int.Cl.⁷ | | 識別記号 | | | FI | | | | | テーマコード゛(参考) |
|---|---|---|---|---|---|---|---|---|---|---|
| F25D | 29/00 | | | | F25D | 29/00 | | | B | 3L045 |
| | 21/04 | | | | | 21/04 | | | F | 3L102 |
| | 23/02 | 306 | | | | 23/02 | | 306Z | | |

審査請求　未請求　請求項の数1　ＯＬ　（全 5 頁）

| (21)出願番号 | 特願平11−272085 | (71)出願人 | 000003078 |
|---|---|---|---|
| | | | 株式会社東芝 |
| (22)出願日 | 平成11年9月27日(1999.9.27) | | 神奈川県川崎市幸区堀川町72番地 |
| | | (72)発明者 | 中山　晃一 |
| | | | 大阪府茨木市太田東芝町1番6号　東芝エ |
| | | | ー・ブイ・イー株式会社大阪事業所内 |
| | | (74)代理人 | 100071135 |
| | | | 弁理士　佐藤　強 |
| | | Ｆターム(参考) | 3L045 AA05 AA07 BA01 CA02 DA02 |
| | | | EA01 GA07 HA01 PA04 |
| | | 3L102 JA01 KA01 KB18 KD10 |

(54)【発明の名称】　冷蔵庫

(57)【要約】

【課題】　扉スイッチ部分が氷結することを防止でき、扉スイッチが機能不良となることを防止する。

【解決手段】　冷凍室28の内箱23に取り付けられるレール板35に、扉スイッチ30を覆うスイッチカバー部36を一体に設ける。内箱23の外側面に配置される金属製の補強板37に、防露パイプ40に嵌合するパイプ接触部38と、内箱23を貫通してスイッチカバー部36の内面に接触するカバー接触部39を一体に設ける。防露パイプ40の熱を補強板37を介して扉スイッチ30部分に伝えるようにすることにより、扉スイッチ30の操作子30ａ部分が氷結することを防止する。



−1−

LG0000939

LG0000939

【特許請求の範囲】
【請求項1】　貯蔵室の前面開口部の縁部に、当該前面開口部を開閉する引出し式の扉に応動する扉スイッチを備えた冷蔵庫において、
　前記貯蔵室の内箱の内側に設けられ、前記扉の前後方向へのスライド移動をガイドするレール部を有するレール板と、
　前記貯蔵室の内箱の外側面に配置され、前記レール板と共に前記内箱に取付固定される金属製の補強板と、
　前記貯蔵室の前面開口部の縁部に配置された防露パイプとを備え、
　前記レール板に、前記扉スイッチを覆うスイッチカバー部を一体に設けると共に、
　前記補強板に、前記防露パイプと接続するパイプ接触部と、前記内箱を貫通して前記スイッチカバー部に接触するカバー接触部とを一体に設けたことを特徴とする冷蔵庫。
【発明の詳細な説明】
【０００１】
【発明の属する技術分野】本発明は、貯蔵室の前面開口部の縁部に、当該前面開口部を開閉する引出し式の扉に応動する扉スイッチを備えた冷蔵庫に関する。
【０００２】
【発明が解決しようとする課題】この種の冷蔵庫の従来構成の一例を図５に示す。この図５において、冷蔵庫本体１の貯蔵室のうち最下部の貯蔵室は冷凍室２とされ、この冷凍室２の前面開口部を開閉する扉（図示せず）は引出し式とされている。冷凍室２の内箱３には、冷凍室２の前面開口部に位置させてスイッチ用凹部４が形成され、このスイッチ用凹部４に、扉スイッチ５が配設されるようになっている。扉スイッチ５を覆うスイッチカバー６は、例えばプラスチック製で、ピン６ａとボス６ｂとが突設されていて、そのうちのピン６ａを、内箱３に形成される孔４ａに挿入すると共に、内箱３の外側（発泡断熱材側）からねじ７を前記ボス６ｂにねじ込むことにより内箱３に取り付ける構成となっている。扉スイッチ５は、スイッチ用凹部４内に設けられたコネクタ８に接続される。
【０００３】　なお、内箱３の上記スイッチ用凹部４の上方には後方へ延びるレール用凹部９が形成されていて、内箱３の内側面には、このレール用凹部９を覆うようにレール板１０が配置されている。このレール板１０は、裏側に突設された第１及び第２の凸部１０ａ、１０ｂを内箱３のレール用凹部９に形成された孔９ａ、９ｂに挿入して仮止めし、ねじ挿通孔１０ｃを挿通した皿ねじ１１を、内箱３の外側面（発泡断熱材側）に配置された金属製の補強板１２のねじ孔１２ａにねじ込むことにより、内箱３に取り付けられている。
【０００４】　ところで、上記した従来構成において、扉の開閉に応動する扉スイッチ５の操作子５ａ部分はマイ

ナス温度（氷点下）であり、例えば使用者が水やジュース等を扉スイッチ５部分にこぼし、それが氷結した場合、扉スイッチ５の機能が不良となってしまうおそれがあった。
【０００５】本発明は上記した事情に鑑みてなされたものであり、その目的は、扉スイッチ部分が氷結することを防止でき、扉スイッチが機能不良となることを防止できる冷蔵庫を提供することにある。
【０００６】
【課題を解決するための手段】上記の目的を達成するために、本発明は、貯蔵室の前面開口部の縁部に、当該前面開口部を開閉する引出し式の扉に応動する扉スイッチを備えた冷蔵庫において、前記貯蔵室の内箱の内側に設けられ、前記扉の前後方向へのスライド移動をガイドするレール部を有するレール板と、前記貯蔵室の内箱の外側面に配置され、前記レール板と共に前記内箱に取付固定される金属製の補強板と、前記貯蔵室の前面開口部の縁部に配置された防露パイプとを備え、前記レール板に、前記扉スイッチを覆うスイッチカバー部を一体に設けると共に、前記補強板に、前記防露パイプと接続するパイプ接触部と、前記内箱を貫通して前記スイッチカバー部に接触するカバー接触部とを一体に設けたことを特徴とするものである。
【０００７】このものによれば、防露パイプの熱が金属製の補強板を介してスイッチカバー部に伝えられることにより、扉スイッチ部分が氷点下になることを防止でき、これにより、扉スイッチ部分が氷結することを防止できるようになる。
【０００８】
【発明の実施の形態】以下、本発明の一実施例について図１ないし図４を参照して説明する。まず、冷蔵庫の全体の外観を示す図４において、冷蔵庫本体２１は、鋼板製の外箱２２と合成樹脂製の内箱２３との間に発泡断熱材（図示せず）を充填した周知構造の断熱箱体として構成されている。この冷蔵庫本体２１には、貯蔵室として、冷蔵室２４、野菜室２５、製氷室２６、内部温度を複数段階に切替可能な切替室２７、冷凍室２８が上から順に設けられている（但し、製氷室２６及び切替室２７は左右に並んだ状態とされている）。尚、上記切替室２７は、その内部温度の切替に応じて、冷蔵室、チルド室、冷蔵室、野菜室などの多様な態様で使用されるという周知構成のものである。
【０００９】上記冷蔵室２４の前面にはヒンジ開閉式の扉２４ａが設けられ、野菜室２５、製氷室２６、切替室２７及び冷凍室２８の各前面には、それぞれ貯蔵容器を備えた引出し式の扉２５ａ、２６ａ、２７ａ及び２８ａが前後方向にスライド可能に設けられている。
【００１０】ここで、上記貯蔵室のうち、最下部の冷凍室２８の扉スイッチ３０部分の構造について、図１ないし図３を参照して説明する。冷凍室２８において、内箱

-2-

LG0000940

LG0000940

２３の左側壁には、スイッチ用凹部３１が形成されていると共に、このスイッチ用凹部３１の上方に位置させてレール用凹部３２が形成されている。スイッチ用凹部３１には、扉スイッチ３０を接続するためのコネクタ３３が設けられている。内箱２３の内側面（冷凍室２８側の面）には、後方へ延びるレール部３４を有する例えばプラスチック型のレール板３５が配置されており、このレール板３５の前部の下面に、扉スイッチ３０を覆うスイッチカバー部３６が一体に設けられている。

【００１１】内箱２３の左側壁の外側面（発泡断熱材側）には、金属製の補強板３７が配置されている。この補強板３７には、前部に断面がコ字形をなすパイプ接触部３８が一体に設けられていると共に、前部の下面に逆Ｌ字形をなすカバー接触部３９が一体に設けられている。このうちのパイプ接触部３８を、冷蔵庫本体２１の左側壁の内部（冷凍室２８の前面開口部の縁部）に配置される防露パイプ４０に嵌合させ、アルミテープ４１（図２参照）で止めるようにしている。また、カバー接触部３９は、内箱２３に形成された開口部４２を通して内箱２３を貫通し、スイッチカバー部３６の内面に接触させるようにしている（図３参照）。

【００１２】そして、上記レール板３５は、裏側に突設された第１及び第２の凸部４３、４４を内箱２３のレール用凹部３２に形成された孔４５、４６に挿入して仮止めし、ねじ挿通孔４７を挿通した皿ねじ４８を、内箱２３の外側面（発泡断熱材側）に配置された補強板３７のねじ孔４９にねじ込むことにより、内箱２３に取り付けられている。また、上記扉スイッチ３０は、図３に示すように、上記コネクタ３３に接続した状態で、スイッチカバー部３６の内面において上記カバー接触部３９と内箱２３との間に配置され、前部の操作子３０ａがスイッチカバー部３６から前方へ突出するようになっている。なお、内箱２３と外箱２２との間には、図示はしないが発泡ウレタンからなる発泡断熱材が充填されるようになっている。この発泡断熱材は、上記した扉スイッチ３０、レール板３５及び補強板３７を内箱２３に組み付けた状態で発泡充填される。

【００１３】上記構成において、冷凍室２８の扉２８ａが閉鎖されると、その扉２８ａの縁部により扉スイッチ３０の操作子３０ａが押圧されて扉スイッチ３０としてはオフ状態となり、扉２８ａが開放されると、扉スイッチ３０の操作子３０ａに対する押圧が解除されることに伴い操作子３０ａが前方に突出し、これに伴い扉スイッチ３０はオン状態となる。

【００１４】ここで、金属製の補強板３７のパイプ接触部３８を防露パイプ４０に嵌合させると共に、カバー接触部３９をスイッチカバー部３６に接触させるようにしているので、防露パイプ４０の熱が補強板３７を介してスイッチカバー部３６に伝えられることにより、扉スイッチ３０部分が氷点下になることを防止できる。これに

より、扉スイッチ３０部分に水やジュースなどがかかったとしても、その扉スイッチ３０の操作子３０ａ部分が氷結することを防止でき、扉スイッチ３０が機能不良となることを防止できるようになる。

【００１５】また、上記した実施例によれば、カバー接触部３９及びスイッチカバー部３６を補強できるので、発泡断熱材の発泡圧によりスイッチカバー部３６が変形することも防止できる。さらに、スイッチカバー部３５に一体に設けられているので、スイッチカバー部３６には、従来のスイッチカバー部６のように、スイッチカバー部６取り付けのためのピン６ａやボス部６ｂを設ける必要がない。このため、スイッチカバー部３６を取り付ける際に、そのスイッチカバー部３６と内箱２３との間でコネクタ３３やそのリード線３３ａを挟み込んでしまうことがなく、取付作業性を向上できる。ちなみに、従来では、スイッチカバー部６を内箱３に取り付ける際に、スイッチカバー部６のピン６ａやボス部６ｂと内箱３との間でコネクタ８やそのリード線を挟み込んでしまうおそれがあった。

【００１６】しかも、スイッチカバー部３６は、レール板３５を内箱２３に取り付けると同時に内箱２３に取り付けられるため、従来必要としていた別部品のスイッチカバー部６や、これを内箱３に取り付けるための専用のねじ７を不要にでき、その分部品点数を少なくできると共に、組立工数を削減でき、ひいてはコストを低減できるようになる。

【００１７】なお、上記した実施例では、冷凍室２８用の扉スイッチ３０部分について適用した場合を例示したが、これに限られず、本発明は、氷結のおそれのある製氷室２６や切替室２７の扉スイッチ部分にも適用できる。

【００１８】
【発明の効果】以上の説明から明らかなように、本発明によれば、貯蔵室の前面開口部の縁部に、当該前面開口部を開閉する引出し式の扉に応動する扉スイッチを備えたものにおいて、扉スイッチ部分が氷結することを防止でき、扉スイッチが機能不良となることを防止でき、また、スイッチカバーを別部品として必要とせず、コストを低減できるなどの効果を奏する。

【図面の簡単な説明】
【図１】本発明の一実施例を示す要部の分解斜視図
【図２】要部の横断平面図
【図３】図２とは異なる部分での要部の横断平面図
【図４】冷蔵庫全体の外観斜視図
【図５】従来例を示す図１相当図
【符号の説明】
２１は冷蔵庫本体、２２は外箱、２３は内箱、２８は冷凍室（貯蔵室）、２８ａは扉、３０は扉スイッチ、３３はコネクタ、３４はレール部、３５はレール板、３６はスイッチカバー部、３７は補強板、３８はパイプ接触

－３－

LG0000941

LG0000941

部、３９はカバー接触部、４０は防露パイプを示す。

【図１】

【図２】



【図３】

【図４】



-4-

LG0000942

LG0000942

【図5】



LG0000943

LG0000943

# EXHIBIT 9

(19)日本国特許庁（JP）　　(12) 公開実用新案公報（U）　　(11)実用新案出願公開番号

# 実開平8−1438

(43)公開日　平成8年(1996)10月1日

| (51)Int.Cl.⁴ | 識別記号 | 庁内整理番号 | FI | | 技術表示箇所 |
|---|---|---|---|---|---|
| B62D 21/09 | | | B62D 21/09 | Z | |
| F16J 15/02 | | | F16J 15/02 | | |

審査請求　有　　請求項の数4　FD　（全2頁）

| (21)出願番号 | 実願平5−61102 | (71)出願人 | 390039723 |
|---|---|---|---|
| (22)出願日 | 平成5年(1993)10月20日 | | 株式会社パブコ |
| | | | 神奈川県海老名市柏ヶ谷456番地 |
| | | (72)考案者 | 西尾　肇 |
| | | | 神奈川県海老名市柏ヶ谷456番地　株式会社パブコ内 |
| | | (74)代理人 | 弁理士　竹内　澄夫　（外2名） |

(54)【考案の名称】　トラックのシャシとその上の架装物との間に装着されるパッキン

(57)【要約】

【目的】　トラックのシャシが、その上に配置される荷箱により撓むことにより荷箱が歪むことを防止する、シャシと荷箱との間に装着されるパッキンを提供する。

【構成】　本考案のパッキン（20）は、断面がほぼ矩形であり、長手方向にテーパーが付けられる。連結可能にするために一端に切り込み（24）、他端に突出部25が形成される。下面（22）には、シャシ上の突起を収納可能な凹所（23）を有する。

【効果】　本考案のパッキンは、テーパーがつけられているため、シャシの端部で大きくなる撓みに対応させることができ、また、荷箱の荷重を面で支えるため荷重が分散し、そのためパッキンは変形することない。さらに、連結可能であることから、シャシの長さに対応させることができ、したがって、荷箱の荷重をシャシ全体に伝えることができる。





-1-

LG0000933

LG0000933

【実用新案登録請求の範囲】
【請求項1】 運転台と、その後部に延設されるシャシと、そのシャシ上に取り付けられる架装物とを有するトラックにおいて、架装物とシャシの間に配置されるパッキンであって、
前記パッキンは、断面がほぼ矩形であり、長手方向に高さが次第に変わるテーパーが付けられいることを特徴とするパッキン。
【請求項2】 請求項1に記載のパッキンであって、前記パッキンの長さが、シャシの撓みの生じる所付近からシャシの後端までの長さであることを特徴とするパッキン。
【請求項3】 請求項1に記載のパッキンであって、前記シャシ上の突起を収容できる、凹部が前記パッキンの裏面に形成されることを特徴とするパッキン。
【請求項4】 請求項1に記載のパッキンであって、前記パッキンの長手方向の一端に突出部が形成され、他端に前記突出部と同形の切り込み部が形成され、一つのパッキンの突出部と他のパッキンの切り込み部とを嵌合させることで、パッキンの長さを任意に決定できることを特徴とするパッキン。

【図面の簡単な説明】
【図1】 トラックのシャシが荷箱の荷重のために撓み、それにより荷箱が歪んだ状態を示す。
【図2】 シャシに荷箱を取り付ける前のトラックの斜視図を示す。
【図3】 トラックのシャシの撓みを調節するための従来のパッキンの斜視図を示す。
【図4】 図4（a）は、複数個連結した本考案のパッキンの斜視図を示し、図4（b）は一つの本考案のパッキンの平面図を示す。
【図5】 本考案のパッキンを、トラックのシャシと荷箱との間に装着配置した、トラックの後部を示す。
【符号の説明】
2 0  パッキン
2 1  上面
2 2  下面
2 3  凹所
2 4  切り込み
2 5  突出部



【図1】 【図2】 【図3】

【図4】 【図5】

-2-

LG0000934

LG0000934

【考案の詳細な説明】
【０００１】
【産業上の利用分野】
本考案は、トラックのシャシとその上に配置される架装物との間に装着されるパッキンに関する。
【０００２】　【従来技術】
貨物を運搬するためのトラック１は、図１に示すように、運転台２から後方に伸びるシャシ３上に、荷物を収納するための荷箱４が取り付けられる。トラックの後輪５は、トラックが大型になればなるほど、シャシ３の後端より前方に位置し、荷箱４の重量を支持する。
【０００３】
また、図２に示すように、シャシ３は縦部材３ａと横部材３ｂとから成り、両部材はボルト等の締め付け具により連結される場合が多い。そのためシャシの上にはボルトの頭部が突き出ている。
【０００４】
このようなシャシ３上に荷箱４を配置すると、その荷箱の重量で、図１に破線で示すように、シャシ３が撓む。その上の荷箱４が撓みにしたがって歪む。荷箱４には後方、側方に開閉扉が設けられているが、この歪みのためにその開閉が不十分となっていた。また、荷箱の耐久性が短くなった。さらに、シャシの上のボルトの頭部は荷箱の取り付けの邪魔となる。
【０００５】
そのため、従来は、図３に示すように、シャシ３と荷箱４の横根太との間にスペーサーとして木製あるいは樹脂製のパッキン１０が取り付けられていた。このパッキンはほぼ直方体で、シャシ３上のボルト等の頭部を収納する穴１１が形成されている。
【０００６】
【考案が解決しようとする課題】
しかし、シャシ３の撓みは、図１に示すように、後方にいくにしたがって大きくなり、従来の一定の高さのパッキンでは、撓み大きいところでは何枚かのパッ

-3-

LG0000935

LG0000935

キンを積み重ねる必要があるが、その合計の高さが撓み分と必ずしも一致するとは限らない。したがって、いろいろな高さのパッキンを常時用意しておかなければならない。

【０００７】

　また、従来の直方体のパッキンでは、撓みが後方にいくほどおおきくなることから、パッキンの上面および下面全体に荷重がかかるのではなく、撓みの少ない側に大きな荷重がかかる。そのため、パッキンが変形しやすく、パッキンの耐用年数が短くなった。

【０００８】

　そこで、本考案の目的は、シャシの撓みの大きさに即したパッキンを提供することである。

【０００９】

　本考案の他の目的は、荷箱の荷重が均等にかかるパッキンを提供することである。

【００１０】

　さらに、本考案の他の目的は、複数のパッキンを任意に連結できるパッキンを提供することである。

【００１１】

【課題を解決するための手段】

　上記目的を達成する本考案のパッキンは、運転台とその後部に延設されるシャシとそのシャシ上に取り付けられる架装物とを有するトラックにおいて、架装物の重みによりシャシが撓むことにより、架装物が歪むことを防止するための、架装物とシャシとの間に配置されるパッキンであって、断面がほぼ矩形であり、長手方向に高さが次第に変わるテーパーが付けられいることを特徴とする。

【００１２】

　シャシ上のボルト等の頭部などの突起があるときは、これを収容できる凹部が前記パッキンの裏面に形成されることが望ましい。

【００１３】

　パッキンは、その長手方向の一端に突出部を形成し、他端に前記突出部と同形

-4-

LG0000936

LG0000936

の切り込み部を形成することで、複数のパッキンを連結でき、その長さを任意に
なものとすることができる。
　【0014】
　【作用】
　本考案のパッキンは長手方向にテーパーが付けられているため、シャシの撓み
がどのようなものであっても、パッキンを便宜配置することで、撓みに対応でき
、さらに、取り付けられる荷箱の荷重を上面および下面全体で支持でき、荷重が
分散される。
　【0015】
　また、本考案のパッキンを適宜連結することで、撓みが生じるシャシ全体に配
置できる。
　【0016】
　【実施例】
　図4（ａ）に3つが連結された本考案のパッキンの斜視図が示され、図4（ｂ
）に一つのパッキンの平面図が示されている。パッキン20は、一方から他方に
長手方向に向かって徐々に高さが高くなるようにテーパーが付けれ、その断面は
ほぼ矩形となっている。パッキン20の上面21および下面22は、それぞれ荷
箱の底面（実際は根太を介して）およびシャシの上面と接するために平坦となっ
ている。このパッキンは荷箱の荷重に耐え得る材料から作られ、たとえば木、
樹脂が好適である。
　【0017】
　パッキン20の下面22には、シャシ上に突き出るボルトの頭部などの突起を
収納できるように、長手方向に伸びる蒲鉾状の凹所23が設けられている。長手
方向に伸びる凹所としたのはパッキン20をシャシ上で任意に移動配置できるよ
うにするためである。したがって、パッキンの取り付け位置が固定されている場
合は、凹所は長手方向に伸びる必要はなく、ドーム状あるいは円筒状の凹所でも
よい。なお、このような突起がシャシ上にないときは、このような凹所を設ける
必要はない。
　【0018】

-5-

LG0000937

LG0000937

　図４（ｂ）は、一つのパッキン２０の平面図である。このパッキン２０は、長手方向に容易な連結を可能にするために、一端に台形の切り込み２４が形成され、他端に切り込み２４と同形の台形の突出部２５が形成されている。したがって、図４（ａ）に示すように、シャシの長さ、撓みの大きさに即してパッキンを適宜連結することができる。この実施例では、切り込み、突出部は台形であるが、これらは、連結のためのものであるから、この目的を達成できればこれに限定されず、たとえば矩形や半円形であってもよい。

【００１９】
　図４のパッキンは数個のパッキンを連結した実施例を示したが、シャシの長さ、撓みの大きさが既知の場合は、長さ、テーパーの程度を最初から設定した一体のパッキンであってもよい。

【００２０】
　図５は、シャシ３と荷箱４との間にパッキンを装着した状態を示す。パッキンは、シャシに撓みが生じるところからシャシの後端まで、すなわちシャシに取り付けられる荷箱の中央からシャシの後端もしくはシャシに組付けられる後輪付近からシャシの後端までの間に装着される。このようにパッキンを装着することで、荷箱４は水平に配置され、歪むことがない。図では、荷箱に対するパッキンを例示したが、荷箱に限らず、一般にシャシを撓ませる架装物に対して適用できる

【００２１】
【考案の効果】
　本考案のパッキンは、テーパーがつけられているため、シャシの端部で大きくなる撓みに対応させることができる。

【００２２】
　また、荷箱の荷重を面で支えるため荷重が分散し、そのためパッキンは変形することなくしたがって、パッキンの耐用年数が著しく伸びる。さらに、本考案のパッキンは連結可能であることから、シャシの長さに対応させることができ、したがって、荷箱の荷重をシャシ全体に伝えることができる。

-6-

LG0000938

LG0000938

# EXHIBIT 10



(19)    Europäisches Patentamt

European Patent Office

Office européen des brevets

(11)    **EP 0 656 182 B1**

(12)    **EUROPEAN PATENT SPECIFICATION**

(45) Date of publication and mention
of the grant of the patent:
**16.06.1999  Bulletin 1999/24**

(51) Int. Cl.⁶: **A47B 88/10**, F25D 23/00

(21) Application number: 94308976.3

(22) Date of filing: **02.12.1994**

(54) **Drawer mechanism, particularly for a refrigerator**

Schubladenauszug, insbesondere für einen Kühlschrank

Dispositif de guidage pour tiroir, en particulier pour réfrigérateurs

(84) Designated Contracting States:
DE FR GB IT

(30) Priority: **02.12.1993 KR 2624693**

(43) Date of publication of application:
**07.06.1995  Bulletin 1995/23**

(73) Proprietor: GOLDSTAR CO. LTD.
Seoul (KR)

(72) Inventor: **Do, Gab Bu**
**Busan-si (KR)**

(74) Representative:
**Gibbs, Christopher Stephen**
Haseltine Lake & Co.
Imperial House
15-19 Kingsway
London WC2B 6UD (GB)

(56) References cited:
AT-B- 394 132          CH-A- 665 472
US-A- 2 496 673        US-A- 2 801 146

EP 0 656 182 B1

Note: Within nine months from the publication of the mention of the grant of the European patent, any person may give notice to the European Patent Office of opposition to the European patent granted. Notice of opposition shall be filed in a written reasoned statement. It shall not be deemed to have been filed until the opposition fee has been paid. (Art. 99(1) European Patent Convention).

Printed by Xerox (UK) Business Services
2.16.7/3.6

LG0000874

LG0000874

1                     EP 0 656 182 B1                     2

**Description**

[0001]    The present invention relates generally to a device for opening and/or closing a drawer such as a vegetable box of a refrigerator.

[0002]    Generally, a vegetable box 6 is formed in the lower part of the main body 1a of a conventional refrigerator, as shown in Figs. 1 and 2. A user may open and close the vegetable box 6 using a door 3a of the vegetable compartment in the manner of a drawer.

[0003]    When the user pushes the door 3a of the vegetable compartment into the main body 1a of the refrigerator, an attraction is produced between a magnetic material attached to a door gasket (not shown) and an iron plate. Accordingly, the door 3a of the vegetable compartment is attached to the main body 1a of the refrigerator, so that the heat insulation is maintained between the magnetic material attached to the door gasket and the iron plate. A magnetic seal is shown, for instance, in CH-A-665472.

[0004]    However, the magnetic force of the door gasket tends to weaken after a long period of use, so that the door 3a of the vegetable compartment is no longer satisfactory sealed to the main body 1a of the refrigerator. This means that cool air leaks outside the main body 1a of the refrigerator. As a result, the conventional refrigerator has the disadvantages of a loss of power in the refrigerator and a drop in efficiency.

[0005]    The object of the present invention is to overcome the problems and disadvantages of the conventional device, that is, to provide a mechanism for opening and closing a vegetable box of a refrigerator to or from which a user can easily place or get food such as vegetables and fruit without the seal being subject to deterioration over time.

[0006]    According to the invention there is provided a drawer mechanism for enabling a drawer to slide into and out of a cabinet, comprising: guide rails to be fixed to wall surfaces of the cabinet to guide movement of the drawer; sliders having rollers adapted to move along the guide rails; and drawer support members on both sides of the drawer and moving forward and rearward along with the sliders as the drawer is opened or closed; wherein the guide rails, sliders, rollers and support members are so arranged that in the closed configuration of the drawer the weight of the drawer acts constantly to exert a force maintaining this closed configuration, by virtue of the device including on the one hand upward projections of the guide rails at their front ends and the rollers on the front of the sliders, and on the other hand an upwardly projecting portion and a slanting surface at the front end of the movement surface of each support member, corresponding to the projections of the guide rails, in such a way that in the closed position the weight of the drawer is transmitted obliquely from the slanting surface of the support member through the roller to slanting surfaces of the upward projections (2a) of the guide rails, thus exerting a clos-

ing force on the drawer as aforesaid.

[0007]    US-A-2496673 (Nielsen) discloses a drawer construction, not intended for a refrigerator, with rollers and sloping surfaces, but the sloping surfaces are separate and are associated with separate rollers.

[0008]    In embodiments of the invention the mechanism includes a vegetable box formed in the lower part of the main body of the refrigerator for receiving food like vegetables and fruit, guide rails fixed to wall surfaces in the lower parts of the main body of the refrigerator to guide movement of the vegetable box, sliders inserted into the guide rails and having a plurality of rollers, supporting members mounted in both sides of the vegetable box and moving straight forward and rearward along with the sliders by rotating the rollers when the vegetable box opened or closed, and a gravitational locking means for uniting the supporting members with the guide rails by the weight of the vegetable box itself when the supporting members and the vegetable box are completely inserted into the lower part of the main body of the refrigerator.

[0009]    By the provision of gravitational closing means including the sloping guide surfaces on the drawer supports, sliders and guide rails it is ensured that the weight of the drawer and/or the sliders will always act to keep the drawer shut, and clearly this weight is not subject to weakening with time in the same way as a magnetic strip. Each slider preferably has a roller at its front end which in the closed position of the drawer, as defined by a sealing gasket being pressed around the drawer opening in the cabinet, is situated between the slopes of the guide surfaces to provide the necessary inward closing force component.

[0010]    For a better understanding of the invention an embodiment will now be described by way of example with reference to the accompanying drawings, in which:

Fig. 1 is a perspective view of a conventional refrigerator;

Fig. 2 is a longitudinal sectional view of a portion "A" in Fig. 1;

Fig. 3 is an exploded perspective view of the relevant parts of a refrigerator according to a preferred embodiment of the present invention;

Fig. 4 is a sectional view showing the parts in Fig. 2 as assembled;

Fig. 5a is a longitudinal sectional view showing the parts with the drawer closed; and

Fig. 5b is a corresponding longitudinal sectional view with the drawer open.

[0011]    Referring to Fig. 3, guide rails 2 are formed at both wall surfaces of an inner case in the lower part of the main body 1 of the refrigerator, for guiding a drawer for use as a vegetable compartment, for instance. The rails have raised sections or upper projections 2a formed at their forward ends.

[0012]    Sliders 5 moving forward and rearward when

2

LG0000875

LG0000875

3                    EP 0 656 182 B1                    4

the door or panel 3 of the drawer is pulled or pushed are mounted on the guide rails 2. The sliders 5 have a plurality of rollers 4.

[0013]  Support members 7 constituted as arms of a U-shaped frame are united with the door 3 of the vegetable compartment, and a vegetable box 6 is mounted in the supporting members 7. The supporting members 7 are moved along with (or roll on) the sliders 5 by a frictional force of the rollers 4 when the door 3 of the vegetable compartment is pulled or pushed, a downward-facing guide groove 8 being formed in each supporting member 7 for contact to the upper surfaces of the rollers.

[0014]  Stops 9, for pushing the sliders 5 as the door 3 of the vegetable compartment is closed, are formed in the forward upper end portion of each supporting member 7, and slant surfaces 7a corresponding to the upper projections 2a of the guide rails 2 are formed in each forward lower end portion of the supporting members 7, thus giving the grooves 8 a ceiling near their front ends which first slopes and then runs horizontally at a higher level up to the door 3.

[0015]  A gravitational locking means is constituted by the upper projections 2a raised above the rest of the guide rails 2 at the front and the rollers 4 formed at the front of the sliders 5 and operating against the slant surfaces of the upper projections 2a under gravity when the vegetable box 6 is substantially completely inserted into the lower part of the refrigerator.

[0016]  The operation of the present invention described above will be explained as follows.

[0017]  Referring to Fig. 5a, when a user wants to open the door 3 of the vegetable compartment in the lower part of the main body in the refrigerator, he pulls the door 3 in the direction of the arrow. The rollers 4 of the sliders 5 are in this closed position pressed between the slanting part of the upper projections 2a of the guide rails 2 and the slant surfaces 7a in the forward lower end portions of the guide grooves 8 of the supporting members 7. This configuration ensures a force component in the closure direction resulting from the weight of the drawer. When the drawer is opened the rollers move forward by the friction force, sliding over the upper projections 2a formed in each forward end portion of the guide rails 2.

[0018]  Referring to Fig. 5b, when the supports 7 move along with the sliders 5 and the rollers 4 off the front of the guide rails 2 out of the main body 1 of the refrigerator, the door 3 of the vegetable compartment united with the supporting members 7 sags down under the weight of the vegetable box itself, so that the user can easily get food in or out of the vegetable box 6. It will be seen that the sliders are shown fully extended with the drawer supports 7 in Fig. 5, but they can also be arranged to roll with these supports, so that the sliders would extend only half as far as the drawer.

[0019]  When the user pushes the door 3 of the vegetable compartment closed the supporting members 7

move to the right and at the same time the stops 9 formed in each forward upper end portion of the supporting members 7 push the sliders 5.

[0020]  When the rollers 4 of the supporting members 7 slide over the upper projections 2a of the guide rails 2, the supporting members 7 and the door 3 of the vegetable compartment are generally and completely pressed against the main body 1 of the refrigerator, slightly raised upwards as shown in Fig. 5a, in such a way that leakage of cool air is prevented; a polymeric seal 10 can be used between the door and the cabinet.

[0021]  As described above, the refrigerator according to the above embodiment has the advantage that the user can easily get the food such as vegetables or fruit into or out of the vegetable box 6 since the door 3 of the vegetable compartment sags down slightly when pulled, after the front rollers drop off the end of the guide rails.

[0022]  In addition, leakage of the cool air can be prevented because the door 3 of the vegetable compartment is completely attached to the main body 1 of the refrigerator by the weight of the vegetable box itself. As a result, the efficiency and reliability of the product is considerably heightened.

Claims

1.  A drawer mechanism for enabling a drawer to slide into and out of a cabinet, comprising:

    guide rails (2) to be fixed to wall surfaces of the cabinet to guide movement of the drawer;
    sliders (5) adapted to move along the guide rails, each having near its front end a roller (4) running on the respective guide rail (2); and
    drawer support members (7) on both sides of the drawer and moving forward and rearward along with the sliders as the drawer is opened or closed;
    wherein the guide rails (2), sliders (5) and support members (7) include gravitational locking means (2a, 4, 7a) such that in the closed configuration of the drawer the weight of the drawer acts constantly to exert a force maintaining this closed configuration;
    characterised in that the gravitational locking means includes on the one hand upward projections (2a) of the guide rails (2) at their front ends and the rollers (4) on the front of the sliders, and on the other hand an upwardly projecting portion and a slanting surface (7a) at the front of the movement surface of each support member (7), corresponding to the projections (2a) of the guide rails, in such a way that in the closed position the weight of the drawer is transmitted obliquely from the slanting surface of the support member (7) through the roller (4) to slanting surfaces of the upward projections (2a) of the guide rails (2), thus exerting

3

LG0000876

LG0000876

5                    EP 0 656 182 B1                    6

a closing force on the drawer as aforesaid.

2.  A mechanism according to claim 1, in which the
drawer has a front panel (3) which in the closed
position abuts against the cabinet via a seal (10),      5
and in which the supporting members (7) in the
upper part of their forward ends have stops (9) for
pushing the sliders (5) inwards when the drawer is
closed.

3.  A refrigerator cabinet including a drawer mounted      10
on a mechanism as claimed in any preceding claim.

**Patentansprüche**

1.  Schublade-Vorrichtung zum Ermöglichen, daß eine      15
Schublade in ein Gehäuse hinein oder aus dem
Gehäuse heraus gleiten kann, wobei die Vorrich-
tung aufweist:

        Führungsschienen (2), die an Wandoberflä-      20
        chen des Gehäuses befestigt sind, um eine
        Bewegung der Schublade zu führen;
        Schlitten (5), die ausgelegt sind, sich entlang
        den Führungsschienen zu bewegen, wobei      25
        jeder an seinem Vorderende eine Rolle (4) hat,
        die auf der jeweiligen Führungsschiene (2)
        läuft; und
        Schublade-Trageteile (7) an beiden Seiten der
        Schublade, die sich zusammen mit den Schlit-      30
        ten vorwärts und rückwärts bewegen, wenn die
        Schublade geöffnet oder geschlossen wird;
        wobei die Führungsschienen (2), die Schlitten
        (5) und die Trageteile (7) eine Schwerkraft-
        Sperreinrichtung derart haben, daß      35
        in der geschlossenen Konfiguration der Schub-
        lade das Gewicht der Schublade ständig wirkt,
        um eine Kraft auszuüben, die diese geschlos-
        sene Konfiguration aufrechterhält;
        dadurch gekennzeichnet, daß die Schwerkraft-      40
        Sperreinrichtung auf der einen Seite nach
        oben gerichtete Vorsprünge (2a) der Führungs-
        schienen (2) an ihren Vorderenden und die
        Rollen (4) an der Vorderseite der Schlitten und
        auf der anderen Seite einen nach oben hervor-      45
        stehenden Abschnitt und eine schräge Oberflä-
        che          (7a)          am          Vorderende          der
        Bewegungsoberfläche jedes Trageteils (7) ent-
        sprechend den Vorsprüngen (2a) der Füh-
        rungsschienen derart aufweist, daß in der      50
        geschlossenen Position das Gewicht der
        Schublade schräg von der schrägen Oberflä-
        che des Stützteils (7) über die Rolle (4) auf die
        schrägen Oberflächen der nach oben gerichte-
        ten Vorsprünge (2a) der Führungsschienen (2)      55
        umgesetzt wird, damit eine Schließkraft auf die
        Schublade, wie zuvor angegeben, einwirkt.

2.  Vorrichtung gemäß Anspruch 1, in der die Schub-
lade eine Frontplatte (3) hat, die in der geschlosse-
nen Position an das Gehäuse über eine Dichtung
(10) anstößt, und in der die Trageteile (7) in dem
oberen Teil ihrer vorderenden Anschläge (9) zum
Schieben der Schlitten (5) nach innen haben, wenn
die Schublade geschlossen wird.

3.  Kühlschrank-Gehäuse, das eine Schublade ent-
hält, die an einer Vorrichtung, beansprucht in einem
der vorhergehenden Ansprüche, angebracht ist.

**Revendications**

1.  Mécanisme pour tiroir permettant à un tiroir de
pénétrer et de sortir d'un compartiment par glisse-
ment, comprenant:

        des rails de guidage (2) destinés à être fixés à
        des surfaces de paroi du compartiment pour
        guider le mouvement du tiroir;
        des coulisseaux (5) conçus pour se déplacer le
        long des rails de guidage, chacun comportant,
        à proximité de son extrémité frontale, un galet
        (4) se déplaçant sur le rail de guidage respectif
        (2); et
        des éléments de support de tiroir (7) de part et
        d'autre du tiroir et effectuant un déplacement
        vers l'avant et vers l'arrière conjointement avec
        les coulisseaux lorsqu'on ouvre ou lorsqu'on
        ferme le tiroir;
        dans lequel les rails de guidage (2), les coulis-
        seaux (5) et les éléments de support (7) englo-
        bent des moyens de verrouillage par gravitation
        (2a, 4, 7a) de telle sorte que, dans la configura-
        tion fermée du tiroir, le poids du tiroir exerce de
        manière constante une force qui maintient
        cette configuration fermée;
        caractérisé en ce que les moyens de ver-
        rouillage par gravitation englobent, d'une part,
        des saillies dressées (2a) des rails de guidage
        (2) à leurs extrémités frontales et les galets (4)
        à l'avant des coulisseaux, et d'autre part, une
        portion faisant saillie vers le haut et une sur-
        face inclinée (7a) à l'extrémité frontale de la
        surface de mouvement de chaque élément de
        support (7), correspondant aux saillies (2a) des
        rails de guidage, de telle sorte que, dans la
        position fermée, le poids du tiroir est transmis
        en oblique depuis la surface inclinée de l'élé-
        ment de support (7) vie les galets (4) aux surfa-
        ces inclinées des saillies dressées (2a) des
        rails de guidage (2) en exerçant ainsi une force
        de fermeture sur le tiroir, comme indiqué ci-
        dessus.

2.  Mécanisme selon la revendication 1, dans lequel le
tiroir possède un panneau frontal (3) qui, dans la

4

LG0000877

LG0000877

7                    EP 0 656 182 B1                    8

position fermée, vient buter contre le compartiment
via un joint d'étanchéité (10) et dans lequel les élé-
ments de support (7), dans la partie supérieure de
leurs extrémités avant, possèdent des arrêts (9)
pour pousser les coulisseaux (5) vers l'intérieur    5
lorsque le tiroir est fermé.

3.   Compartiment de réfrigérateur englobant un tiroir
     monté sur un mécanisme tel que revendiqué dans
     l'une quelconque des revendications précédentes.   10

                                                     15

                                                     20

                                                     25

                                                     30

                                                     35

                                                     40

                                                     45

                                                     50

                                                     55

                         5

LG0000878

LG0000878

EP 0 656 182 B1

## FIG.1



## FIG.2



6

LG0000879

LG0000879

EP 0 656 182 B1

# FIG.3



LG0000880

LG0000880

EP 0 656 182 B1

# FIG.4



8

LG0000881

LG0000881

EP 0 656 182 B1

## FIG.5a



## FIG.5b



9

LG0000882

LG0000882

# EXHIBIT 11

⑲ BUNDESREPUBLIK ⑫ **Offenlegungsschrift**

DEUTSCHLAND ⑪ **DE 3505757 A1**

⑤ Int. Cl. 4:

F 25 D 25/00



DEUTSCHES

PATENTAMT

㉑ Aktenzeichen: P 35 05 757.2
㉒ Anmeldetag: 20. 2. 85
㊸ Offenlegungstag: 29. 8. 85

**DE 3505757 A1**

㉚ Unionspriorität: ㉜ ㉝ ㉛
23.02.84 CH 889/84-8

㉛ Anmelder:
Koch AG, Appenzell, CH

㉘ Vertreter:
Riebling, G., Dipl.-Ing. Dr.-Ing.; Riebling, P.,
Dipl.-Ing. Dr.-Ing., Pat.-Anw., 8990 Lindau

⑫ Erfinder:
Mösch, Helmut, Appenzell, CH

㊴ Schubladen-Einbausatz für Kühlschränke

Der Schubladen-Einbausatz für den Kühlschrank (1), des-
sen Innenraum durch zargenförmige Seitenwände (2) be-
grenzt ist, umfaßt einen zum Einschieben in die Verzargung
(3) der inneren Seitenwände (2) des Kühlschrankes (1) be-
stimmten Grundrahmen (4), dessen seitliche Begrenzungen
der lichten Weite der inneren Seitenwände (2) entspricht
und der ein paralleles Führungsschienenpaar (5, 6) zur füh-
renden Aufnahme einer Schublade bzw. eines Schubtablars
(7) trägt.
Diese Maßnahmen erlauben ein ortsfestes Einsetzen eines
Grundrahmens in beliebiger Höhe und dann die Betätigung
einer exakt und in gewohnter Weise zwischen dem paralle-
len Führungsschienenpaar geführten Schublade unbeküm-
mert der Konizität des Innenraumes, wobei das Umsetzen
der Anordnung jederzeit und ohne Werkzeug möglich ist.



BUNDESDRUCKEREI   07. 85   508 035/602   5/60

LG0000864

LG0000864

3505757

## Patentansprüche

1. Schubladen-Einbausatz für Kühlschränke, deren Innenraum durch zargenförmige Seitenwände begrenzt ist, gekennzeichnet durch einen zum Einschieben in die Verzargung (3) der inneren Seitenwände (2) des Kühlschrankes (1) bestimmten Grundrahmen (4), dessen seitliche Begrenzungen der lichten Weite der inneren Seitenwände (2) entspricht und der ein paralleles Führungsschienenpaar (5,6) zur führenden Aufnahme einer Schublade bzw. eines Schubtablars (7) trägt.

2. Schubladen-Einbausatz nach Anspruch 1, dadurch gekennzeichnet, dass der Grundrahmen (4) in eingesetztem Zustand verschiebungsfest fixierbar ist.

3. Schubladen-Einbausatz nach Anspruch 2, dadurch gekennzeichnet, dass der Grundrahmen (4) durch Schrauben (8) an den inneren Seitenwänden (2) des Kühlschrankes (1) feststellbar ist.

4. Schubladen-Einbausatz nach Anspruch 1, dadurch gekennzeichnet, dass sich das parallele Führungsschienenpaar (5,6) auf der Oberseite des Grundrahmens (4) befindet.

5. Schubladen-Einbausatz nach Anspruch 1, dadurch gekennzeichnet, dass sich das parallele Führungsschienen-

LG0000865

LG0000865

3505757

- 2 -

paar (5',6') auf der Unterseite des Grundrahmens (4) be-
findet und der Aufnahme einer Hängeschublade (7') dient.

6.  Schubladen-Einbausatz nach Anspruch 5, dadurch gekenn-
    zeichnet, dass der Grundrahmen (4) als Tablar ausgebildet
    ist.

LG0000866

LG0000866

3505757

Einreichungsfertig zur
Weiterleitung erhalten
Patentanwälte
**Dr.-Ing. G. Riebling
Dr.-Ing. P. Riebling**

. 3.

Koch AG                                    Appenzell/Schweiz

Schubladen-Einbausatz für

Kühlschränke

83210

LG0000867

LG0000867

3505757

- X -
. 4.

Koch AG                                    Appenzell/Schweiz


Schubladen – Einbausatz für

Kühlschränke


Die vorliegende Erfindung betrifft einen Schubladen-Einbau-
satz für Kühlschränke.


Bekanntterweise sind Kühlschränke für den privaten und den
professionellen Gebrauch innen mit einem sogenannten Zargen-
bottich ausgekleidet, der den eigentlichen Kühlraum begrenzt
und in dem sich in der Regel rostförmige Tablare praktisch
stufenlos höhenverstellbar in den Zargen der Seitenwände ab-
stützen. Kühlschränke dieser Art weisen zudem oft noch eine
Schublade auf, die aber lediglich führungslos auf dem Boden
des Kühlraumes aufsitzt. Schubladen einfach mit seitlich ab-
ragenden Schienen in die Zargen einschiebbar auszugestalten,
ist in der Regel nicht möglich, da sich der aus einem Kunst-
stoff, etwa Polystyrol, gegossene Innenraum bzw. Zargen-
bottich gegen seine Rückwand hin konisch verjüngt. Eine teil-
weise gezogene Schublade würde demnach bezüglich der lichten
Weite aus der Führung der Zargen gelangen und durchfallen.


Dem gegenüber besteht aber der Wunsch, den Innenraum von

LG0000868

LG0000868

3505757

- 4 -

. 5 .

Kühlschränken über die bisher einzige individuelle Möglich-
keit der praktisch stufenlosen Versetzung der vorhandenen
Tablare hinaus durch den Einsatz von Schubladen an möglichst
beliebiger Stelle weiter auszugestalten.

Es ist deshalb Aufgabe der vorliegenden Erfindung, einen
hierfür geeigneten Schubladen-Einbausatz zu schaffen.

Ein solcher erfindungsgemässer Schubladen-Einbausatz zeich-
net sich aus durch einen zum Einschieben in die Verzargung
der inneren Seitenwände des Kühlschrankes bestimmten Grund-
rahmen, dessen seitliche Begrenzungen der lichten Weite der
inneren Seitenwände entspricht und der ein paralleles Füh-
rungsschienenpaar zur führenden Aufnahme einer Schublade bzw.
eines Schubtablars trägt.

Diese Massnahmen erlauben nun ein ortsfestes Einsetzen eines
Grundrahmens in beliebiger Höhe und dann die Betätigung
einer exakt und in gewohnter Weise zwischen dem parallelen
Führungsschienenpaar geführten Schublade unbekümmert der
Konizität des Innenraumes, wobei das Umsetzen der Anordnung
jederzeit und ohne Werkzeug möglich ist.

Eine solche Schubladenführung kann dabei von üblicher Kon-
struktion sein, von der einfachsten Parallelführung bis hin
zum Vollauszug.

LG0000869

LG0000869

3505757

- 5 -
· 6·

Vorzugsweise besteht dabei eine zweckmässige Ausgestaltung
darin, den Grundrahmen in eingesetztem Zustand verschiebungs-
fest zu fixieren, was durch Schrauben, beispielsweise Rändel-
kopf-Schrauben erfolgen kann, mit denen der Grundrahmen an
den inneren Seitenwänden des Kühlschrankes feststellbar ist.

Innerhalb dieser erfindungsgemässen Vorkehrungen ist es nun
möglich, das parallele Führungsschienenpaar auf der Oberseite
des Grundrahmens oder auf dessen Unterseite anzuordnen, so
dass sowohl Aufsatzschubladen wie auch Hängeschubladen ver-
wendet werden können. Bei letzterem kann dann der Grundrahmen
zusätzlich als Tablar dienen.

Beispielsweise Ausführungsformen des Erfindungsgegenstandes
sind nachfolgend anhand der Zeichnung näher erläutert. Es
zeigen:

Fig. 1  einen Ausschnitt eines Kühlschrankes im Vertikal-
        schnitt mit dem erfindungsgemässen Schubladen-
        Einbausatz mit einer Aufsatzschublade bzw. mit
        einer Hängeschublade;  und

Fig. 2  einen Querschnitt des Kühlschrankes mit dem
        Schubladen-Einbausatz gemäss Fig. 1 in Drauf-
        sicht.

Der in den Fig. 1 und 2 veranschaulichte Schubladen-Einbau-

LG0000870

LG0000870

3505757

- 6 -

. 7.

satz ist für Kühlschränke 1 geeignet, deren Innenraum durch
zargenförmige Seitenwände 2 begrenzt ist. Kühlschränke die-
ser Art sind bekannt und umfassen eine um ein Scharnier 14
aufschwenkbare Fronttüre 11 mit einem Türgriff 13. Fig. 2
lässt ferner einen rückseitigen Teil 12 des Kühlsystems er-
kennen. Weiter zeigt Fig. 2, dass der eigentliche Kühlraum 15
des Kühlschranks 1 durch einen sogenannten Zargenbottich ge-
bildet ist, an dessen Seitenwände 2 gemäss Fig. 1 eine Viel-
zahl Zargen 3 angegossen sind, die eine praktisch stufenlose
Verstellbarkeit von Tablaren oder dgl. in der Höhe zulassen.
Fig. 2 zeigt ferner deutlich, dass sich der Kühlraum 15
gegen seine Rückwand 16 hin konisch verjüngt, was einer
direkten Schubladenführung in den Zargen 3 entgegensteht.

Demzufolge ist erfindungsgemäss ein zum Einschieben in die
Verzargung 3 der inneren Seitenwände 2 des Kühlschrankes 1
bestimmter Grundrahmen 4 vorgesehen, dessen seitliche Be-
grenzungen der lichten, konisch verlaufenden Weite der
inneren Seitenwände 2 entspricht, wie Fig. 2 deutlich zeigt.

Dieser Grundrahmen 4 ist hier gegen ein unerwünschtes Ver-
schieben durch vorzugsweise handbetätigbare Rändelkopf-
Schrauben 8 (Fig. 2) an den inneren Seitenwänden 2 des Kühl-
schrankes 1 feststellbar, was ein Versetzen des Grundrah-
mens 4 in der Höhe ohne Werkzeug jederzeit gewährleistet.

Wie nun insbesondere Fig. 1 erkennen lässt, trägt der Grund-

LG0000871

LG0000871

3505757

- 7 -

. 8.

rahmen 4 auf seiner Oberseite ein paralleles Führungsschienen-
paar 5,6 zur schiebbaren Aufnahme einer Schublade bzw. eines
Schubtablars 7.

Wie bereits erwähnt, kann hierbei ein einfacher Auszug oder
ein selbstsperrender Vollauszug u. dgl. vorgesehen sein.

In jedem Falle aber ist auf die vorbeschriebene Weise ein
Schubladen-Einbausatz geschaffen, der allen funktionellen
Erfordernissen entspricht und eine freie Innenraumgestaltung
des Kühlschrankes gewährleistet.

Wie in Fig. 1 durch die strichpunktierten Linien angedeutet,
kann das Führungsschienenpaar 5',6' auch auf der Unterseite
des Grundrahmens 4 angeordnet sein und der Aufnahme einer
Hängeschublade 7' dienen. Bei einer solchen Anordnung kann
dann der Grundrahmen 4 als Tablar ausgestaltet sein.

Gegebenenfalls kann der Grundrahmen 4 aber auch gleichzeitig
das obere Führungsschienenpaar 5,6 für die Schublade 7 und
das untere Führungsschienenpaar 5',6' für die Hängeschub-
lade 7' aufweisen.

LG0000872

LG0000872



| Nummer: | 35 06 767 |
| Int. Cl.³: | F 25 D 25/00 |
| Anmeldetag: | 20. Februar 1985 |
| Offenlegungstag: | 29. August 1985 |



FIG.1

FIG. 2

LG0000873

LG0000873

# EXHIBIT B
## Part 4

# EXHIBIT 12

(19) **BUNDESREPUBLIK DEUTSCHLAND**



**DEUTSCHES PATENT- UND MARKENAMT**

(10) **Gebrauchsmuster**

(11) **DE 298 17 743 U 1**

(51) Int. Cl.[6]:
**F 25 D 23/00**

(71) Aktenzeichen:              298 17 743.9
(22) Anmeldetag:                5. 10. 98
(47) Eintragungstag:           17. 12. 98
(43) Bekanntmachung
im Patentblatt:               4. 2. 99

(73) Inhaber:

BSH Bosch und Siemens Hausgeräte GmbH, 81669
München, DE

(54) Kühlgerät

DE 298 17 743 U 1

BUNDESDRUCKEREI   12.98   802 265/382/30A          2

LG0000846

LG0000846



**BSH Bosch und Siemens Hausgeräte GmbH**

Hochstraße 17
81669 München

05. Oktober 1998
ZTP 98P4038
Tho/hi

## Kühlgerät

5       Die Erfindung betrifft ein Kühlgerät mit einem wärmeisolierenden Gehäuse und we-
        nigstens einem von einer Tür verschließbaren Kühlfach, in welchem wenigstens ein
        schubladenartiger Behälter angeordnet ist, welcher anhand von an den Seitenwän-
        den des Kühlfaches vorgesehenen Teleskopauszügen aus dem Kühlfach heraus-
10      ziehbar ist, wobei jeder der Teleskopauszüge ein an den Seitenwänden des Kühlfa-
        ches festgesetztes Festschienenteil und wenigstens ein daran verschieblich ge-
        führtes Losschienenteil aufweist.

        Bei einem bekannten Mehrtemperaturenkühlgerät sind in dessen Frischkühlfach
15      schubladenartige Behälter übereinander angeordnet, welche anhand von Teleskop-
        Rollenauszügen aus dem Kühlfach herausziehbar sind. Die Teleskop-Rollenaus-
        züge sind dabei mit ihrem Festschienenteil an den Seitenwänden des Kühlfaches
        festgesetzt. Zur Befestigung kommen bei den bekannten Geräten Schraubverbin-
        dungen zur Anwendung, wobei je eine in Art einer Blechschraube ausgebildete, mit
20      einem in der Wärmeisolation des Gehäuses fixierten Hinterlegteil zusammenwir-
        kende Befestigungsschraube im Nahbereich der beiden Endabschnitte des Fest-
        schienenteils zu dessen Befestigung vorgesehen ist. Eine derartige Befestigungs-
        maßnahme ist gewährt für die Teleskop-Rollenauszüge zwar eine ausreichende
        Haltekraft, jedoch ist die Durchführung der Befestigungsmaßnahme in einer
25      Großserienfertigung   beschwerlich   und   zeitraubend,   da   nicht   nur   das
        positionsrichtige Fixieren des Festschienenteils zu den vorgefertigten Öffnungen an
        den Seitenwänden des Kühlfaches, sondern auch das Fügen und Eindrehen der
        Befestigungsschrauben,     insbesondere     am     türfernen     Abschnitt     des
        Festschienenteils sich als schwierig durchzuführender Montageschritt herausgestellt
30      hat.

LG0000847

LG0000847



- 2 -

ZTP98P4038

Der Erfindung liegt die Aufgabe zugrunde, bei einem Kühlgerät gemäß dem Ober-
begriff des Anspruches 1 für die darin zum Einsatz kommende Teleskop-Rollenaus-
züge eine Befestigungsmaßnahme vorzuschlagen, welche nicht nur auf einfache
Weise die Nachteile des Standes der Technik vermeidet, sondern zugleich einen
5    gleichmäßig hohen Qualitätsstandard für die Befestigungsmaßnahme sicherstellt.

Diese Aufgabe wird gemäß der Erfindung dadurch gelöst, daß das Festschienenteil
zu seiner Befestigung an den Seitenwänden wenigstens zwei im Abstand zueinan-
der angeordnete, mit Aufnahmen an den Seitenwänden formschlüssig zusammen-
10    zuwirken vermögende hakenähnlich geformte Haltelaschen aufweist, von denen
eine mit ihrem freien Endabschnitt zumindest annähernd in Bewegungsrichtung der
Teleskopauszüge zeigt, während die andere Haltelasche mit ihrem freien Endab-
schnitt zur Aufstellebene des Kühlgerätes gerichtet und durch Haltemittel in ihrer
Befestigungsposition gehalten ist.

15

Die erfindungsgemäße Befestigung der teleskopartig ausziehbaren Tragschienen
ist ohne Zuhilfenahme zusätzlicher Werkzeuge, wie beispielsweise einem Schrau-
bendreher oder dergleichen, rasch und positionsgenau für eine Montageperson in
bequemer Weise mit geringem Kraftaufwand durchführbar. Gleichzeitig ist durch
20    diese Haltemaßnahme eine langzeitstabile Befestigung des Festschienenteils unter
Ausschaltung montagebedingter Positionsunzulänglichkeit bereitgestellt. Desweite-
ren lassen sich die durch die erfindungsgemäße Haltemaßnahme festgesetzten
Teleskopschienenauszüge im Bedarfsfall, beispielsweise zu Reinigungszwecken
des Kühlfaches, von einem Endverbraucher auf einfache Weise demontieren und
25    anschließend wieder montieren.

Nach einer bevorzugten Ausführungsform des Gegenstandes der Erfindung ist vor-
gesehen, daß das Festschienenteil zumindest im Nahbereich der mit ihrem freien
Endabschnitt zur Aufstellebene des Kühlgerätes gerichteten Haltelasche ein als
30    Haltemittel dienendes lösbares Fixierelement aufweist, welches die Haltelasche in
die Aufnahme zwingt.

Durch eine derartige Zuordnung des Haltemittels ist das Festschienenteil nicht nur
in seiner positionsrichtigen Lage, nämlich sowohl in vertikaler als auch in horizon-
35    taler Richtung dauerhaft gesichert, sondern durch die lösbare Ausführung zugleich

LG0000848

LG0000848



- 3 -

ZTP98P4038

im Bedarfsfall auf einfache und rasche Weise von den Seitenwänden des Kühlfa-
ches demontierbar.

Nach einer nächsten bevorzugten Ausführungsform des Gegenstandes der Erfin-
5   dung ist vorgesehen, daß das lösbare Fixierelement als aus seiner Halteposition
auslenkbarer, am Festschienenteil lösbar festgesetzter Federbügel ausgebildet ist,
welcher eine mit einer Aufnahme an der Seitenwand formschlüssig entgegen der
Fügerichtung zusammenwirkende Haltenase aufweist.

10   Durch die Zuordnung des Fixierelementes zum Festschienenteil ist nicht nur das
Zusammenwirken des Fixierelementes mit der Aufnahme und somit eine äußerst
wirksame Halterung der Haltelasche auf besonders einfache Weise sichergestellt,
sondern zudem die Montage der Teleskopauszüge im Kühlfach deutlich vereinfacht.
Der als Halteelement eingesetzte Federbügel ermöglicht außerdem eine Demon-
15   tage der Teleskopauszüge ohne Zuhilfenahme irgendwelcher Werkzeuge.

Gemäß einer weiteren bevorzugten Ausführungsform des Gegenstandes der Erfin-
dung ist vorgesehen, daß das Festschienenteil an seinem türfernen Abschnitt die
mit ihrem freien Endabschnitt in Bewegungsrichtung der Teleskopauszüge zei-
20   gende Haltelasche aufweist.

Eine derartige Ausbildung des Festschienenteils ermöglicht eine besonders einfa-
che und zielsichere Fixierung der zur Aufstellebene des Kühlgerätes gerichteten
Haltelasche, da diese gut einsehbar am türnahen Ende des Festschienenteils vor-
25   gesehen ist.

Entsprechend einer weiteren bevorzugten Ausführungsform des Gegenstandes der
Erfindung ist vorgesehen, daß die am türfernen Abschnitt der Teleskopauszüge an-
geordnete Haltelasche mit ihrem freien Endabschnitt von der Tür weggerichtet ist.
30

Hierdurch ergibt sich die Möglichkeit, die am türfernen Abschnitt angeordnete Hal-
telasche in Zuführrichtung des Teleskopauszuges in das Kühlfach in die türferne
Aufnahme einbringen zu können, wodurch die Montage der Teleskopauszüge be-
sonders gezielt durchführbar und somit die Montagezeit deutlich verkürzt ist.

35

LG0000849

LG0000849

05. 10. 98

-4-

ZTP98P4038

Besonders einfach und dennoch tragesteif ausgebildet sind die Aufnahmen, wenn nach einer nächsten vorteilhaften Ausgestaltung des Gegenstandes der Erfindung vorgesehen ist, daß die Aufnahmen an den Seitenwänden durch daran vorgesehene, zumindest weitestgehend eigensteife gurtartige Halteelemente gebildet sind.

5

Nach einer weiteren bevorzugten Ausführungsform des Gegenstandes der Erfindung ist vorgesehen, daß die gurtartigen Halteelemente wärmeisolationsseitig an den Seitenwänden des Kühlfaches festgesetzt und über Durchbrüche in den Seitenwänden zugänglich sind.

10

Durch die verdeckte unauffällige Anordnung der Halteelemente wärmeisolationsseitig, können diese, ohne den Kühlraum störend zu beeinflussen, bedarfsgemäß, entsprechend der auftretenden Belastung gestaltet werden. Darüber hinaus ergibt sich durch eine derartige Anordnung der Halteelemente eine zumindest weitestgehend ebenflächige, leicht zu pflegende Oberfläche für die Seitenwände des Kühlfaches.

15

Entsprechend einer nächsten vorteilhaften Ausgestaltung des Gegenstandes der Erfindung ist vorgesehen, daß die gurtartigen Halteelemente jeweils an den Endbereichen einer aus Blech gebildeten Verstärkungsschiene vorgesehen sind.

20

Auf diese Weise ausgeführte Halteelemente lassen sich aufgrund ihrer festen Zuordnung zu der Verstärkungsschiene im Fertigungsablauf zu den Durchbrüchen in den Seitenwänden durch die Fixierung eines einzigen Bauteils besonders positionsgenau anordnen. Darüber hinaus sind die Halteelemente werkstoffbedingt auf einfache Weise besonders tragesteif ausbildbar.

25

Besonders tragesteif und zugleich besonders sicher im Wärmeisolationsmaterial verankerbar ist die Verstärkungsschiene, wenn nach einer nächsten vorteilhaften Ausgestaltung des Gegenstandes der Erfindung vorgesehen ist, daß die Verstärkungsschiene wenigstens eine in seine Längsrichtung sich erstreckende und zumindest annähernd an seine beiden Endbereiche herangeführte Verstärkungsrippe aufweist, welche in das Wärmeisolationsmaterial eingebettet ist.

30

Besonders kostengünstig mit engen Toleranzen herstellbar sind die Aufnahmen an der Verstärkungsschiene, wenn nach einer nächsten vorteilhaften Weiterbildung des Gegenstandes der Erfindung vorgesehen ist, daß die Halteelemente an der

35

LG0000850

LG0000850

05.10.98

- 5 -

ZTP98P4038

Verstärkungsschiene durch Aussparungen freigeschnittene gurtartige Haltestege
ausgeführt sind mit welchen die Haltelaschen in Eingriff sind.

5   Besonders unauffällig, ohne die Beschickung des Kühlfaches zu beeinträchtigen,
    sind die Verstärkungsschienen an den Seitenwänden des Kühlfaches festgesetzt,
    wenn nach einer nächsten vorteilhaften Ausführungsform des Gegenstandes der
    Erfindung vorgesehen ist, daß die Verstärkungsschienen an ihren Endbereichen mit
    wenigstens zwei wärmeisolationsseitig angeordneten Befestigungsteilen an den
    Seitenwänden des Kühlfaches festgesetzt sind.

10  Besonders einfach mit wenigen Handgriffen lagestabil festsetzbar sind die Verstär-
    kungsschienen, wenn nach einer weiteren bevorzugten Ausführungsform des Ge-
    genstandes der Erfindung vorgesehen ist, daß die Befestigungsteile wenigstens
    zwei zumindest annähernd einander gegenüberliegende Befestigungshaken auf-
15  weisen, welche die Verstärkungsschiene in Öffnungen zu durchdringen vermögen,
    und in Art eines Bajonettverschlusses mit den Rändern der Durchbrüche an den
    Seitenwänden in Eingriff bringbar sind.

20  Auf besonders einfache dennoch sichere Weise wird ein Eintritt des in flüssigen
    Ausgangskomponenten zur Anwendung kommenden Wärmeisolationsmaterials in
    das Kühlfach verhindert, wenn nach einer nächsten vorteilhaften Weiterbildung des
    Gegenstandes der Erfindung vorgesehen ist, daß die Befestigungsteile zumindest
    in ihrer Befestigungsposition sowohl die Aussparungen als auch die Öffnungen we-
    nigstens flüssigkeitsdicht abdecken.

25  Entsprechend einer weiteren bevorzugten Ausführungsform des Gegenstandes der
    Erfindung ist vorgesehen, daß die Befestigungsteile haubenartig ausgebildet sind,
    innerhalb deren freien, mit einer Dichtlippe versehenen Haubenränder die Ausspa-
    rungen und die Öffnungen der Verstärkungsschiene liegen.

30  Einerseits ist durch die haubenartige Gestaltung der Befestigungsteile sicherge-
    stellt, daß die durch die Aussparungen freigeschnittenen gurtartigen Haltestege zur
    Montage der Haltelaschen gut zugänglich sind. Andererseits ist durch die am freien
    Haubenrand vorgesehene Dichtlippe durch deren linienförmige Anlage an der Ver-
35  stärkungsschiene eine funktionssichere Abdichtung um die Aussparungen bzw.

LG0000851

LG0000851



-6-

ZTP98P4038

Öffnungen erreicht, selbst dann, wenn am Dichtungspartner, nämlich der Verstär-
kungsschiene fertigungsbedingt irgendwelche Unebenheiten auftreten.

Besonders sicher herbeigeführt ist die Anlage der Dichtlippe an der Verstärkungs-
5   schiene, wenn nach einer nächsten vorteilhaften Ausgestaltung des Gegenstandes
der Erfindung vorgesehen ist, daß die Dichtlippe unter Vorspannung an der wär-
meisolationsseitigen Oberfläche der Verstärkungsschiene anliegt.

Besonders mühelos ohne Zuhilfenahme eines Hilfswerkzeuges in ihre Befesti-
10   gungsposition bringbar sind die Befestigungsteile, wenn nach einer nächsten be-
vorzugten Ausführungsform des Gegenstandes der Erfindung vorgesehen ist, daß
die Befestigungsteile eine Handhabe aufweisen, mit Hilfe welcher sie in ihre Befe-
stigungsposition bringbar sind.

15   Gemäß einer letzten bevorzugten Ausführungsform des Gegenstandes der Erfin-
dung ist vorgesehen, daß zwischen der Verstärkungsschiene und der Seitenwand
ein als Zwischenlage ausgebildetes Dichtelement angeordnet ist, welches die Ver-
stärkungsschiene gegen den Durchbruch in der Seitenwand abdichtet.

20   Durch den Einsatz der Zwischenlage ist ein Eintritt des in flüssigen Ausgangskom-
ponenten verarbeiteten Wärmeisolationsmaterial in das Kühlfach stets sicher ver-
hindert, ohne dabei aufwendige Abdichtmaßnahmen vorsehen zu müssen.

Die Erfindung ist in der nachfolgenden Beschreibung anhand eines in der beige-
25   fügten Zeichnung vereinfacht dargestellten Ausführungsbeispieles erläutert.

Es zeigen:

Fig. 1   einen Mehrtemperaturenkühlgerät mit in seinem unteren Abschnitt
30             angeordnetem Frischkühlfach, an dessen Seitenwänden Teles-
kopschienenauszüge zur verschieblichen Führung von schubladen-
artigen Behältern vorgesehen sind, in Schnittdarstellung von der
Seite,

LG0000852

LG0000852



ZTP98P4038

Fig. 2    ausschnittsweise eine der Seitenwände mit dem daran gehaltenen
Teleskopschienenauszug, in Vorderansicht gemäß der Schnittlinie II-
II,

5    Fig. 3    ausschnittsweise eine Seitenwand mit dem daran gehaltenen Teles-
kopschienenauszug, gemäß der Schnittlinie III-III,

Fig. 4    einer der Teleskopschienenauszüge in auseinandergezogener Dar-
stellung, mit einer zu seiner Halterung an der Seitenwand dienenden,
10        wärmeisolationsseitig angeordneten Verstärkungsschiene, in Seiten-
ansicht und

Fig. 5    ausschnittsweise die Seitenwand in ihrer Seitenansicht, von der
Wärmeisolationsseite her.

15

Fig. 1 zeigt ein Mehrtemperaturenkühlgerät 10 mit einem wärmeisolierenden Ge-
häuse 11, welches in seinem unteren, der Aufstellebene des Gerätes 10 zuge-
wandten Abschnitt ein von einer Tür 12 verschließbares Kühlfach 13 aufnimmt. Die-
ses ist mit einer Innenverkleidung 14 ausgekleidet, welche an ihren Seitenwänden
20    15 mit in Abständen übereinander angeordneten, höhengleich an beiden Seiten-
wänden 15 einander gegenüberliegende stufenartige Vorsprünge 16 aufweisen. In-
nerhalb der stufenartigen Vorsprünge 16, in deren türnahen und deren türfernen
Bereich sind die Seitenwände 15 mit einem Durchbruch 17 versehen. Die Vor-
sprünge 16 sind auf ihrer der Wärmeisolation zugewandten Außenseite mit einer für
25    Verbesserung ihrer statischen Eigenschaften dienenden Verstärkungsschiene 18
hinterlegt, deren Länge so bemessen ist, daß sie sich über die horizontal voneinan-
der beabstandeten Durchbrüche 17 hinweg erstreckt. Diese weisen nasenähnlich
vorspringende Randabschnitte 17.1 und zurückspringende Randabschnitte 17.2
auf.

30

Wie insbesondere aus Fig. 4 hervorgeht, weist die Verstärkungsschiene 18 einen
wohl zu ihrer Versteifung als auch zu ihrer Verankerung innerhalb der durch Auf-
schäumen erzeugten Wärmeisolation dienenden, in die Wärmeisolation gerichteten
Versteifungssteg 19 auf, welcher an der Aufstellebene des Kühlgerätes 10 zu-
35    gewandten unteren Längsseite der Verstärkungsschiene 18 vorgesehen ist und
welcher sich bis in den Nahbereich ihrer Endbereiche 20 erstreckt. Die Endbereiche

LG0000853

LG0000853



20 sind mit anhand von Aussparungen 21 freigeschnittenen, als Halteelemente 22
dienenden gurtartigen Haltestegen ausgestattet, von welchen sowohl der innerhalb
des im Nahbereich der Tür 12 angeordneten Endbereiches 20 vorgesehene Halte-
steg als auch der im türfernen Endbereich 20 angeordnete Haltesteg im wesentli-
5   chen U-profilartig ausgeführt ist. Der türnahe Haltesteg mit seinen U-
Profilschenkeln von der Aufstellebene des Kühlgerätes 10 weggerichtet ist,
während der türferne Haltesteg mit seinen U-Profilschenkeln zur Tür 12 gerichtet
ist. Neben den Haltestegen sind innerhalb der Endbereiche 20 Öffnungen 23
vorgesehen, welche im Abstand ober- bzw. unterhalb der Haltestege in die
10  Verstärkungsschiene    18    eingebracht    sind.    Zur    Befestigung    der
Verstärkungsschienen 18 an den Seitenwänden 15 sind einteilig aus Kunst-
stoffspritzguß hergestellte Befestigungsteile 24 vorgesehen, welche wärmeisolati-
onsseitig angeordnet sind (siehe hierzu Fig. 3).

15  Wie insbesondere Fig. 3 und Fig. 5 zeigen, sind die Befestigungsteile 24 mit einer
flachprofiligen Handhabe 25 ausgestattet, an welche sich ein haubenartiges Ab-
deckteil 26 anschließt, welches ähnlich der Kontur eines Kegelstumpfes ausgebildet
ist und welches auf seiner von der Handhabe 25 zugewandten Seite geschlossen-
wandig ausgebildet ist, während es auf der von der Handhabe 25 abgewandten
20  Seite randoffen ausgeführt ist. Das Abdeckteil 26 weist einen schneidenartig aus-
gebildeten, umlaufenden Rand auf, welcher als Dichtlippe 27 dient. Ferner ist das
Abdeckteil 26 mit zwei einander gegenüberliegenden, innerhalb seines Aufnahme-
raumes 28 angeformte hakenähnlich ausgebildete Haltenasen 29 versehen. Diese
sind mit zu den freien Rändern der Dichtlippe 27 hin abgewinkelten Nasenendab-
25  schnitten 30 ausgestattet, und weisen an ihren Übergang zu den Nasenendab-
schnitten 30 ein äußeres Abstandsmaß zueinander auf, welches zumindest im we-
sentlichen dem Abstand (d) der nasenähnlich vorspringenden Randabschnitte 17.1
der Durchbrüche 17 (in Fig. 4 mit strichpunktierten Linien angedeutet) entspricht.

30  Zur Befestigung der Verstärkungsschiene 18 werden die Haltenasen 29 der Befe-
stigungsteile 24 in einem ersten Montageschritt durch den infolge der zurücksprin-
genden Randabschnitte 17.2 erweiterten Bereich der Öffnungen 23 und im An-
schluß daran durch den erweiterten Bereich der Durchbrüche 17 hindurchgeführt
und entgegen der sich unter Vorspannung an der wärmeisolationsseitigen Oberflä-
35  che der Verstärkungsschiene abdichtend abstützenden Dichtlippe 27 so weit aus
den Durchbrüchen 17 herausgeführt, bis sich zwischen den der Handhabe 25 zu-

**LG0000854**

**LG0000854**



ZTP98P4038

gewandten Innenflächen der Nasenendabschnitte 30 und der kühlfachseitigen
Oberfläche der Seitenwand 15 ein Spalt ergibt. Ausgehend von dieser Position, in
welcher die Verstärkungsschiene 18 durch die Befestigungsteile 24 zu der Seiten-
wand 15 zumindest weitestgehend vorfixiert sind, werden die Befestigungsteile 24

5    anhand der Handhabe 25 in Pfeilrichtung I in Art eines Bajonettverschlusses in ihre
Verriegelungsstellung II (siehe Fig. 5) gebracht, in welcher die elastische Dichtlippe
abdichtend an der wärmeisolationsseitigen Oberfläche der Verstärkungsschiene 18
anliegt. In der Verriegelungsstellung ist die Verstärkungsschiene 18 durch die An-
passung des Außenabstandes der Haltenasen 29 an den lichten Abstand der zu-

10   rückspringenden Randbereiche 17.1 der Durchbrüche 17 in der Seitenwand 15 la-
gegenau positioniert.

Wie aus den Fig. 2 bis 4 hervorgeht, dienen die an den Seitenwänden 15 anhand
der Befestigungsteile 24 festgesetzten Verstärkungsschienen 18 mit ihren Halte-

15   elementen 22 zur Halterung von Teleskopauszügen 31. Diese besitzen einen an
den Seitenwänden 15 festgesetzten, im wesentlichen einen U-förmigen Querschnitt
aufweisenden Festschienenteil 32, welcher zum Zwecke seiner Befestigung mit ha-
kenähnlichen, innerhalb seiner Schienenendabschnitte 33 angeordneten Haltela-
schen versehen ist, von denen die innerhalb des der Tür 12 zugewandten

20   Schienenendabschnitts 33 vorgesehene Haltelasche 34 mit ihrem freien Laschen-
ende 35 zur Aufstellebene des Kühlgerätes 10 gerichtet ist, während die innerhalb
des türfernen Schienenendabschnitts 32 angeordnete Haltelasche 36 mit ihrem
freien Laschenende 37 entgegengesetzt zur Tür 12 ausgerichtet ist. Am Fest-
schienenteil 32, nahe des freien Endes seines in Einbaulage oben liegenden U-Pro-

25   filschenkels ist ein Ausschnitt 39 vorgesehen, welcher zur lösbaren Befestigung ei-
nes als Haltemittel ausgebildeten Federbügels 40 dient. Dieser besitzt einen im
Querschnitt U-förmig ausgebildeten, ungleich lange Schenkel aufweisenden Halte-
abschnitt 41, dessen kürzerer Schenkel an seiner dem längeren Schenkel zuge-
wandten Innenseite mit einer Halterippe 42 ausgestattet ist, während der längere

30   Schenkel des Halteabschnitts 42 an seinem freien Ende einen rechtwinklig dazu
angeordneten stummelartigen Fortsatz 43 aufweist. Der Fortsatz 43 weist einen
freien, als Verriegelungsnase 44 ausgebildeten Endabschnitt auf, von welchem zu-
rückversetzt eine im wesentlichen rechtwinklig zum Fortsatz 43 angeordnete, mit ih-
rem freien Ende vom Festschienenteil 32 weggerichtete Bedienungslasche 45 sitzt.

35   Der Federbügel 40 ist mit seinem Halteabschnitt 41 über das freie Ende des oben
liegenden U-Profilschenkels des Festschienenteils 32 gestülpt, wobei der kürzere

LG0000855

LG0000855

05.10.98

ZTP98P4038

Schenkel des Halteabschnitts 41 an der Unterseite des U-Profilschenkels anliegt und mit seiner Halterippe 42 in den Ausschnitt 39 eindringt (siehe hierzu insbesondere Fig. 2.). Im Abstand zu dem am Festschienenteil 32 festgesetzten Federbügel 40 besitzt ersteres, nahe seines freien Endes eine ortsfest angeordnete Laufrolle
5     46.

Das Festschienenteil 32 dient zur verschieblichen Führung eines ebenfalls weitestgehend mit U-profiligem Querschnitt versehenen Losschienenteils 47, welches in Einbaulage an seinem türfernen Ende eine ortsfest angeordnete Laufrolle 48 aufweist, welche sich zur verschieblichen Führung des Losschienenteils 47 an den als
10    Führungsbahnen dienenden, einander zugewandten Innenseiten der U-Profilschenkel des Festschienenteils 32 abwälzt, während sich die Laufrolle 46 an den einander zugewandten Innenseiten der U-Profilschenkel des Losschienenteils 47 abwälzt. Neben der Laufrolle 48 weist das Losschienenteil 47 sowohl an seinem türfernen Ende als auch an seinem türnahen Ende jeweils an Haltemittel 49 auf. Die
15    Haltemittel 49 dienen zur lösbaren Fixierung des Losschienenteils 47 an einem schubladenartigen Behälter 50, welcher zum Zwecke seiner Befestigung an seinen Seitenwänden 51 einen stufenartigen Rücksprung aufweist, innerhalb welchem das Losschienenteil 47 sitzt.
20

Wie insbesondere aus Fig. 4 hervorgeht, werden die aus dem Festschienenteil 32 und dem Losschienenteil 47 zusammengesetzten Teleskopauszüge 31 zu ihrer Befestigung innerhalb des Kühlfaches 13 mit der am Festschienenteil 32 an dessen türfernen Endabschnitt 33 vorgesehenen Haltelasche 34 zu der über den Durch
25    bruch 17 an der Seitenwand 15 zugänglichen Aussparung 21 im rückwärtigen Bereich des Kühlfaches positioniert. Im Anschluß daran wird das Festschienenteil 32 in Pfeilrichtung III in Richtung zur Rückwand des Kühlfaches 13 hin verschoben. Hierdurch übergreift die Haltelasche 34 den als Halteelement 22 im rückwärtigen Bereich des Kühlfaches 13 dienenden vertikal angeordneten Abschnitt des
30    Haltesteges, welcher in dieser Position zwischen der Haltelasche 34 und der Basis des als U-Profil ausgebildeten Festschienenteils 32 liegt. Der dem Festschienenteil 32 zugewandte Abschnitt der Haltelasche 34 liegt dabei am horizontalen Abschnitt zur Bestimmung seiner positionsrichtigen Höhenlage des Festschienenteils 32 auf. Daraufhin wird das Festschienenteil 32 mit seinem türnahen Endabschnitt 33 in
35    Richtung des Pfeiles IV bewegt, wodurch die am türnahen Endabschnitt 33 des Festschienenteils 32 vorgesehene Haltelasche 36 den als Halteelement 32 dienen

LG0000856

LG0000856



ZTP98P4038

den horizontal verlaufenden Haltesteg an der Verstärkungsschiene 18 übergreift, welcher in dieser Position zwischen der Haltelasche 36 und der Basis des als U-Profil ausgebildeten Festschienenteils 32 sitzt. Nach dem Erreichen der positionsrichtigen Endlage der Haltelasche 36 schnappt die Verriegelungsnase 44 am Fe-

5    derbügel 40 in den zurückspringenden obenliegenden Randabschnitt 17.2 am Durchbruch 17 an der Seitenwand 15 ein. Hierdurch ist das Festschienenteil 32 und somit der Teleskopauszug 31 an seinem türnahen Endabschnitt 33 in vertikaler Richtung lagegesichert.

10    Eine Lagesicherung des Teleskopauszuges 31 in horizontaler Richtung ergibt sich durch den Eingriff der Haltelasche 36 in den in Form eines U-Profils ausgebildeten Haltestegs 22. Die vertikale Lagesicherung des türfernen Endabschnitts 33 des Festschienenteils 32 ist durch den Eingriff der Haltelasche 34 in den Haltesteg 22 bewirkt. Beide Haltelaschen 34 und 36 sind in ihrer Montageposition innerhalb des

15    Aufnahmeraumes 28 des Abdeckteiles 26, welches in seiner Montageposition an der Seitenwand 15 mit seiner Dichtlippe 27 die Aussparung 21 abdichtend umgibt, wodurch ein Eintritt des im flüssigen Ausgangskomponenten eingebrachten Wärmeisolationsmaterials in das Kühlfach 13 verhindert ist. Die Teleskopauszüge 31 lassen sich zu Reinigungszwecken des Kühlfaches 13 durch eine Betätigung der

20    am Federbügel 40 vorgesehenen Bedienunglasche 45 in Pfeilrichtung V, wodurch die Verriegelungsnase 44 außer Eingriff mit dem ihr zugewandten Rand des Randabschnittes 17.2 gebracht ist, entgegen der durch die Pfeile III und IV angedeuteten Montagerichtung von der Seitenwand 15 demontieren.

25

LG0000857

LG0000857



- 1 -

ZTP98P4038

## Ansprüche

5

1.  Kühlgerät mit einem wärmeisolierendem Gehäuse und wenigstens einem von
    einer Tür verschließbaren Kühlfach, welchem wenigstens ein schubladenarti-
10  ger Behälter angeordnet ist, welcher anhand von an den Seitenwänden des
    Kühlfaches vorgesehenen Teleskopauszügen aus dem Kühlfach herauszieh-
    bar ist, wobei jeder der Teleskopauszüge ein an den Seitenwänden des
    Kühlfaches festgesetztes Festschienenteil und wenigstens ein daran ver-
    schieblich gehaltertes Losschienenteil aufweist,
15  **d a d u r c h   g e k e n n z e i c h n e t ,**
    daß das Festschienenteil (32) zu seiner Befestigung an den Seitenwänden
    (15) wenigstens zwei im Abstand zueinander angeordnete, mit Aufnahmen
    (22) an den Seitenwänden (15) formschlüssig zusammenzuwirken vermö-
    gende hakenähnlich geformte Haltelaschen (34, 36) aufweist, von denen eine
20  mit ihrem freien Endabschnitt (35) zumindest annähernd in Bewegungsrich-
    tung der Teleskopauszüge (31) zeigt, während die andere Haltelasche (36)
    mit ihrem freien Endabschnitt (37) zur Aufstellebene des Kühlgerätes (10) ge-
    richtet und durch Haltemittel (40) in ihrer Befestigungsposition gehalten ist.

25  2.  Kühlgerät nach Anspruch 1, dadurch gekennzeichnet, daß das Fest-
    schienenteil (32) zumindest im Nahbereich der mit ihrem freien Endabschnitt
    (37) zur Aufstellebene des Kühlgerätes (10) gerichteten Haltelasche (36) ein
    als Haltemittel dienenden lösbares Fixierelement aufweist, welches die Halte-
    lasche (36) in die Aufnahme (22) zwingt.
30

3.  Kühlgerät nach Anspruch 2, dadurch gekennzeichnet, daß das lösbare Fi-
    xierelement als aus seiner Halteposition auslenkbarer, am Festschienenteil
    (32) festgesetzter Federbügel (40) ausgebildet ist, welcher eine mit einer Auf-
    nahme der Seitenwand (15) formschlüssig entgegen der Fügerichtung der
35  Haltelasche (36) zusammenwirkende Haltenase (44) aufweist.

LG0000858

LG0000858



- 2 -

ZTP98P4038

4. Kühlgerät nach Anspruch 1, dadurch gekennzeichnet, daß das Fest-schienenteil (32) an seinem türfernen Abschnitt (33) die mit ihrem freien End-abschnitt (35) in Bewegungsrichtung der Teleskopauszüge (31) zeigende Haltelasche (34) aufweist.

5

5. Kühlgerät nach Anspruch 4, dadurch gekennzeichnet, daß die am türfernen Abschnitt (33) der Teleskopauszüge (31) angeordnete Haltelasche (34) mit ih-rem freien Endabschnitt (35) von der Tür (12) weggerichtet ist.

10 6. Kühlgerät nach Anspruch 1, dadurch gekennzeichnet, daß die Aufnahmen (22) an den Seitenwänden (15) durch daran vorgesehene, zumindest weitest-gehend eigensteife und gurtartige Halteelemente gebildet sind.

7. Kühlgerät nach Anspruch 6, dadurch gekennzeichnet, daß die gurtartigen
15 Halteelemente wärmeisolationsseitig an den Seitenwänden (15) des Kühlfa-ches (13) festgesetzt und über Durchbrüche (17) in den Seitenwänden (15) zugänglich sind.

8. Kühlgerät nach Anspruch 6 oder 7, dadurch gekennzeichnet, daß die gurtarti-
20 gen Halteelemente jeweils an den Endbereichen (20) einer aus Blech gefer-tigten Verstärkungsschiene (18) vorgesehen sind.

9. Kühlgerät nach Anspruch 8, dadurch gekennzeichnet, daß die Verstärkungs-schiene (18) wenigstens eine in seine Längsrichtung sich erstreckende und
25 zumindest annähernd an seine beiden Endbereichen (20) herangeführte Ver-stärkungsrippe (19) aufweist, welche in das Wärmeisolationsmaterial einge-bettet ist.

10. Kühlgerät nach Anspruch 8 oder 9, dadurch gekennzeichnet, daß die Halte-
30 elemente an der Verstärkungsschiene (18) als durch Aussparungen (21) frei-geschnittene, gurtartigen Haltestegen ausgebildet sind, mit welchen die Haltelaschen (34, 36) in Eingriff sind.

11. Kühlgerät nach einem der Ansprüche 8 bis 10, dadurch gekennzeichnet, daß
35 die Verstärkungsschienen (18) an ihren Endbereichen mit wenigstens je ei-

LG0000859

LG0000859

05.10.98

- 3 -

ZTP98P4038

nem wärmeisolationsseitig angeordneten Befestigungsteil (24) an den Seitenwänden (15) des Kühlfaches (13) festgesetzt sind.

12. Kühlgerät nach Anspruch 11, dadurch gekennzeichnet, daß die Befestigungsteile (24) wenigstens zwei zumindest annähernd einander gegenüberliegende Befestigungshaken (29) aufweisen, welche die Verstärkungsschiene (18) in Öffnungen (23) zu durchdringen vermögen und in Art eines Bajonettverschlusses mit den Rändern der Durchbrüche (17) an den Seitenwänden (15) in Eingriff bringbar sind.

13. Kühlgerät nach Anspruch 11 oder 12, dadurch gekennzeichnet, daß die Befestigungsteile (24) zumindest in ihrer Befestigungsposition sowohl die Aussparungen (21) als auch die Öffnungen (23) wenigstens flüssigkeitsdicht abdecken.

14. Kühlgerät nach einem der Ansprüche 11 bis 13, dadurch gekennzeichnet, daß die Befestigungsteile (24) haubenartig ausgebildet sind, innerhalb deren freien, mit einer Dichtlippe (27) versehenen Haubenrändern die Aussparungen (21) und die Öffnungen (23) der Verstärkungsschiene (18) liegen.

15. Kühlgerät nach Anspruch 14, dadurch gekennzeichnet, daß die Dichtlippe (27) unter Vorspannung an der wärmeisolationsartigen Oberfläche der Verstärkungsschiene (18) anliegt.

16. Kühlgerät nach einem der Ansprüche 11 bis 15, dadurch gekennzeichnet, daß die Befestigungsteile (24) eine Handhabe (25) aufweisen, mit Hilfe welcher sie in ihre Befestigungsposition bringbar sind.

17. Kühlgerät nach einem der Ansprüche 8 bis 12, dadurch gekennzeichnet, daß zwischen der Verstärkungsschiene (18) und der Seitenwand (15) ein als Zwischenlage ausgebildetes Dichtelement angeordnet ist, welches die Verstärkungsschiene (18) gegen den Durchbruch (17) in der Seitenwand (15) abdichtet.

LG0000860

LG0000860



ZTP 98 P 4038

1 / 3



Fig. 1

LG0000861

LG0000861

11·11·98  ZTP 98 P 4038

2 / 3



Fig. 3

Fig. 2

Fig. 5

LG0000862

LG0000862

ZTP 98 P 4038

11·11·98

3 / 3



Fig. 4

LG0000863

LG0000863

# EXHIBIT 13



US006478393B2

(12) **United States Patent**
Kim et al.

(10) Patent No.: **US 6,478,393 B2**
(45) Date of Patent: **Nov. 12, 2002**

(54) **SLIDING DEVICE FOR A STORAGE CASE**

(75) Inventors: **Yong-Myoung Kim**, Suwon;
**Jeong-Man Nam**, Kwangju, both of
(KR)

(73) Assignee: **Samsung Electronics Co., Ltd.**, Suwon
(KR)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 38 days.

(21) Appl. No.: **09/731,897**

(22) Filed: **Dec. 8, 2000**

(65) **Prior Publication Data**

US 2002/0033657 A1 Mar. 21, 2002

(30) **Foreign Application Priority Data**

Aug. 28, 2000   (KR) ............................................. 00-50069

(51) Int. Cl.[7] ......................................... **A47B 88/04**
(52) U.S. Cl. ...................... **312/334.12; 312/334.7;
312/330.1; 384/19**
(58) Field of Search ....................... 312/330.1, 334.1,
312/334.7, 334.8, 334.9, 334.12, 334.16,
334.18, 333, 402, 404; 384/19

(56) **References Cited**

U.S. PATENT DOCUMENTS

533,622 A   *   2/1895   Turner .................. 312/334.12

4,445,726 A   *   5/1984   Rock et al. .................. 384/19

FOREIGN PATENT DOCUMENTS

| CA | 582516 | * | 9/1959 | ............ 312/334.12 |
| JP | 07-043064 | | 2/1995 | |
| JP | 11-118336 | | 4/1999 | |

* cited by examiner

Primary Examiner—James O. Hansen
(74) Attorney, Agent, or Firm—Larson & Taylor, PLC

(57) **ABSTRACT**

A sliding device for a storage case is provided which is
durable and provides a smooth sliding motion even in
environments, such as those encountered in a refrigerator,
wherein the storage case is subjected to humid, cold (below
the freezing point) conditions. The sliding device comprises
a fixed rail fixedly mounted to an inner side surface of the
storage case and having a roller coupling portion in which a
first set of rollers are rollably received; a movable rail
fixedly mounted to an outer side surface of the storage
container and having a roller coupling portion in which a set
of second rollers are rollably received; and a middle rail
which is slidably mounted between the fixed rail and the
movable rail so as to provide a coupling relationship ther-
ebetween which guides the rolling motion of the first and
second rollers. The fixed rail, the movable rail and the
middle rail, as well as the rollers, are made of an injection
molded plastic.

**9 Claims, 7 Drawing Sheets**



LG0000834

LG0000834

**U.S. Patent**    Nov. 12, 2002    Sheet 1 of 7    US 6,478,393 B2

FIG. 1



LG0000835

LG0000835



FIG. 2

LG0000836

LG0000836

FIG. 3



LG0000837

LG0000837

FIG. 4



LG0000838

LG0000838



FIG. 5

LG0000839

LG0000839



FIG. 6

LG0000840

LG0000840



FIG. 7

LG0000841

LG0000841

US 6,478,393 B2

1

## SLIDING DEVICE FOR A STORAGE CASE

### BACKGROUND OF THE INVENTION

#### 1. Field of the Invention

The present invention relates to a sliding device for a storage case, and, more particularly, to a sliding device which can slide smoothly when mounted inside a storage case, such as a refrigerator, in a humid and cold (freezing) environment.

#### 2. Description of Related Art

To promote smooth movement backward and forward of a heavy storage container containing a storage case with goods therein, sliding devices are provided on both outer side surfaces of the storage container and both inner side surfaces of the storage case.

Such sliding devices typically include a fixed rail, a movable rail, a plurality of balls, and a supporting means for the balls mounted on an inner side surface of the storage case. The fixed rail extends over its full length in the sliding direction of the storage container. The movable rail is mounted to an outer side surface of the storage container in alignment with the fixed rail and slides along the fixed rail. The plurality of balls are located between the fixed rail and the movable rail.

The fixed rail and the movable rail are made from roll formed metal plates. The rails are formed with concave guiding grooves for receiving the balls therein. The balls roll along the guiding grooves while closely contacting the grooves.

When this type of sliding device is used in a storage case for storing foods, the metal rails and balls may oxidize, i.e., rust, since the component parts of the sliding device are exposed to moisture. Thus, the rolling motion of the balls is eventually impaired and it becomes troublesome to open or shut the storage container. That is, if the guiding grooves and the small rolling balls become rusty, the sliding motion of the storage container is impaired and the life of the sliding device is shortened.

Further, when this type of sliding device is used in a storage case for a refrigerator or the like which is kept humid and cold, i.e., at a temperature below the freezing point, moisture is condensed and frozen on the rails or the balls, thereby impeding the sliding motion of the storage container.

Finally, because the fixed rail and the movable rail are made by roll formed metal plates, the manufacturing cost of these rails is high.

### SUMMARY OF THE INVENTION

The present invention concerns a sliding device for a storage case which is constructed to solve the problems discussed above.

It is an object of the present invention to provide a sliding device for a storage case which does not rust but which provides a smooth sliding motion even when the storage case is kept humid and cold (below the freezing point) and granular ice is formed on rails.

It is another object of the present invention to provide a sliding device for a storage case which is durable and can be manufactured more easily and cheaply than conventional devices used for the same purposes.

In accordance with the invention, a sliding device is provided for providing sliding backward and forward move-

2

ment of a drawer-type storage container relative to a storage case, the storage container being slidably mounted inside the storage case, and the sliding device comprising: a first plurality of rollers; a second plurality of rollers; a fixed rail fixedly mounted to an inner side surface of the storage case and including a roller coupling portion rollably receiving the first plurality of rollers; a movable rail fixedly mounted to an outer side surface of the storage container and including a roller coupling portion rollably received in the second plurality of rollers; and a middle rail slidably mounted between the fixed rail and the movable rail for providing a coupling relationship therebetween and for guiding the rolling motion of the first and second plurality of rollers, such that the movable rail and the storage container slide together by means of a rolling motion of the second plurality of rollers along the middle rail, and the middle rail slides along the fixed rail by means of a rolling motion of the first plurality of rollers.

Preferably, the middle rail further comprises an upper rail portion, including an upper channel for receiving the roller coupling portion of the movable rail therein and for guiding the sliding motion of the movable rail, a lower rail portion including a lower channel for receiving the roller coupling portion of the fixed rail therein and for guiding the sliding motion of the middle rail, and a partition rail portion integrally connecting the upper rail portion and the lower rail portion while partitioning the upper channel from the lower channel, and the fixed rail includes guiding space receiving the upper rail portion and the movable rail includes a guiding space for receiving the lower rail portion.

Advantageously, the upper rail portion of the middle rail opens toward the roller coupling portion of the movable rail, and the lower rail portion of the middle rail opens toward the roller coupling portion of the fixed rail.

Preferably, first movement restricting means are located between the fixed rail and the middle rail for restricting the movement of the middle rail, and second movement restriction means are located between the middle rail and the movable rail for restricting the movement of the movable rail.

Advantageously, the first and second movement restricting means each include hooking members and respective openings for receiving the hooking members therein.

Preferably, the hooking members protrude upwardly from the upper end surface of the middle rail and downwardly from the lower end surface of the middle rail, and the openings extend longitudinally of the fixed rail and at the movable rail, respectively.

Advantageously, a plurality of slots are formed in the roller coupling portions of the fixed rail and movable rail, respectively, such that the first plurality of rollers and the second plurality of rollers extend through the slots and undergo rolling motion in contact with the corresponding partition rail portion.

Preferably, the partition rail portion includes guiding grooves extending of the partition rail portion for guiding the rolling motion of the first and second plurality of rollers.

Advantageously, the invention further comprises a first roller supporting member within which the first plurality of rollers are disposed in series and a second roller supporting member within which the second plurality of rollers are disposed in series, the first roller supporting member being disposed in the roller coupling portion of the fixed rail and the second roller supporting member being disposed in the roller coupling portion of the movable rail.

Preferably, the movable rail is comprised of an injection molded plastic, the fixed rail is comprised of an injection

LG0000842

LG0000842

US 6,478,393 B2

**3**

molded plastic, the middle rail is comprised of an injection molded plastic, and the rollers are comprised of an injection molded plastic.

Further features and advantages of the present invention will be set forth in, or apparent from, the detailed description of preferred embodiments thereof which follows.

## BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are incorporated in and constitute a part of the specification, illustrate a preferred embodiment of the invention, and, together with the description which follows, serve to explain the principles of the invention:

FIG. 1 is a perspective view of a refrigerator containing a sliding device for a storage case in accordance with a preferred embodiment of the present invention.

FIG. 2 is an exploded perspective view of a sliding device for the storage case.

FIG. 3 is an exploded perspective view of detailed structures of respective component parts of the embodiment of the sliding device as shown in FIG. 2.

FIG. 4 is a cross-sectional view of component parts of the embodiment of the sliding device shown in FIG. 3 in an assembled state.

FIG. 5 is a side-sectional view of an embodiment of the sliding device wherein the storage container is in a closed position.

FIG. 6 is a side-sectional view of an embodiment of the sliding device wherein the storage container is in a half-closed position.

FIG. 7 is a side-sectional view of an embodiment of the sliding device wherein the storage container is in a fully opened position.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

A preferred embodiment of the present invention will now be described in detail with reference to the accompanying drawings.

Referring to FIG. 1, a refrigerator for keeping foods in cold storage is shown which comprises an insulated main body 10 and a storage chamber 11. The storage chamber 11 is open at its front portion. Slidably mounted inside the storage chamber 12 are one or more drawer-type storage containers 12 which are typically filled with food. This slidably mounting is provided by a pair of sliding devices; one sliding device, is denoted 20 and the other corresponding sliding device is hidden from view on the opposite side of the storage container 12. The two sliding devices are collectively referred to as sliding devices 20 hereinbelow. The sliding devices 20 enable the storage containers 12 to slide backwardly and forwardly and, as explained below, are mounted on the storage chamber 11 and the corresponding storage container 12.

As shown in FIG. 2, each sliding device 20 comprises a fixed rail 30 which is fixedly mounted to an inner side surface of the storage chamber 11 of the refrigerator body 10. The fixed rail 30 extends axially outwardly from this surface in the direction of a sliding motion of storage container 12. A movable rail 40 is mounted on an outer side surface of the storage container 12 so as to slide along the fixed rail 30. A middle or intermediate rail 50 is slidably mounted between the fixed rail 30 and the movable rail 40 and provides coupling shown between the fixed rail 30 and

**4**

the movable rail 40. Because each of the pair of sliding devices 20 mounted on opposite sides of the storage container 12 is of the same construction, only one sliding device will be described hereinafter in detail.

Referring to FIGS. 3 and 4, the fixed rail 30, which is made of an injection molded plastic, includes a rail receiving portion 38 which has a flattened C-shaped traverse cross section. The rail receiving portion 38 includes a guiding space 33 and a roller coupling portion 32. The roller coupling portion 32 extends downward from the rail receiving portion 38 to form a receiving space 32a into which a first plurality of rollers 31 are received. An upper rail portion 51 of the middle rail 50, which is described hereinbelow, is slidably received in the guiding space 33 of the rail receiving portion 38. The rollers 31 are disposed in series in a roller supporting member 34. The roller supporting member 34 is of a predetermined length and is open at its upper and lower portions. The roller supporting member 34 receiving the rollers 31 therein is received in the receiving space 32a of the roller coupling portion 32.

The movable rail 40 is of the same construction as the fixed rail 30, and is mounted on a side surface of the storage container 12 so as to slide with the storage container 12. The movable rail 40 includes a roller coupling portion 42 at an upper portion thereof, and a rail receiving portion 48 at a lower portion thereof. Accordingly, the roller coupling portion 42 and the rail receiving portion 48 of the movable rail 40 are disposed in a reversed orientation with respect to the corresponding portions 32 and 38 of the fixed rail 30.

A second plurality of rollers 41 is disposed in series in a roller supporting member 44. The coupling structure thereof corresponds to the coupling structure of the rollers 31. The roller supporting member 44, with the second rollers 41 received therein, is inserted into, i.e., received in, a receiving space 42a of the roller coupling portion 42 of the movable rail 40.

The first and second rollers 31 and 41, which are respectively mounted on the fixed rail 30 and the movable rail 40, as well as the roller supporting members 34 and 44, are made of an injection molded plastic. This prevents sliding device 20 from becoming rusty when used in the humid storage chamber 11 of a refrigerator or the like. Accordingly, the storage container 12 slides smoothly, and, moreover, the sliding device 20 can be easily manufactured.

The middle rail 50 has an S-shaped transverse cross section and is coupled to the fixed rail 30 and movable rail 40. The middle rail 50 includes an upper rail portion 51 formed with an upper channel 52 for receiving the roller coupling portion 42 of the movable rail 40, and for guiding the sliding motion of the movable rail 40. The middle rail 50 also includes a lower rail portion 53 formed with a lower channel 54 for receiving the roller coupling portion 32 of the fixed rail 30 therein, and for enabling the middle rail 50 to slide by virtue of the rolling motion of the first rollers 31 of the fixed rail 30. Additionally, a partition rail portion 55 connects the upper rail portion 51 with the lower rail portion 53 and forms a partition between the upper channel 52 and the lower channel 54. The partition rail portion 55 is formed between the upper and lower rail portions 51 and 53. In other words, the upper channel 52 and the lower channel 54 are respectively disposed above and below the partition rail portion 55. The middle rail 50 is also made of an injection molded plastic.

After the fixed rail 30 and the movable rail 40 are coupled to the middle rail 50, the upper rail portion 51 of the middle rail 50 is slidably inserted into the guiding space 33 of the

LG0000843

LG0000843

US 6,478,393 B2

<table>
<tr><td>5</td><td>6</td></tr>
</table>

rail receiving portion 38 of the fixed rail 30, as shown in FIG. 4. Further, the lower rail portion 53 of the middle rail 50 is slidably inserted into the guiding space 43 of the rail receiving portion 48 of the movable rail 40. In addition, the roller coupling portion 32 of the fixed rail 30 is disposed in the lower channel 54 of the middle rail 50, and the roller coupling portion 42 of the movable rail 40 is slidably disposed in the upper channel 52.

Slots 35 and 45, through which the rollers 31 and 41 pass, are formed lengthwise at the corresponding roller coupling portions 32 and 42 of the fixed rail 30 and the movable rail 40, respectively so that the first and second rollers 31 and 41 can roll when in contact with the partition rail portion 55 of the middle rail 50 when the rails 30, 40 and 50 are assembled as aforementioned. Stated differently, the first and second rollers 31 and 41 protrude toward the respective guiding spaces 33 and 43 through the slots 35 and 45 formed at the fixed and movable rails 30 and 40, when the middle rail 50 is coupled to the fixed and movable rails 30 and 40, and thus the first and second rollers 31 and 41 are disposed in contact with the partition rail portion 55 of the middle rail 50. Guiding grooves 55a and 55b for guiding the rolling motion of the first and second rollers 31 and 41 are formed lengthwise at the upper and lower surfaces of the partition rail portion 55, respectively.

Each sliding device 20 further includes a first movement restricting means between the fixed rail 30 and the middle rail 50 and a second movement restricting means between the middle rail 50 and the movable rail 40 for restricting the movement of the middle rail 50 and for restricting the movement of the movable rail 40, respectively. The first means, i.e., the means for restricting the movement of the middle rail 50, includes an upper hooking member or hook 56 which protrudes upward from upper rear end portion of the upper rail portion 51 of the middle rail 50, and protrudes from an upper opening 36. The upper opening 36 extends lengthwise for a predetermined distance in an upper surface of the fixed rail 30. Accordingly, as the middle rail 50 slides backwardly and forwardly, the upper hooking member 56 engages the front end of the upper opening 36, thereby stopping movement of the middle rail 50. The second means, i.e., the means for restricting the range of motion or moving distance of the movable rail 40 includes a lower hooking member 57 which protrudes downwardly from a lower front end portion of the lower rail portion 53 of the middle rail 50, and protrudes from a lower opening 47. The lower opening 47 extends lengthwise for a predetermined length in a lower surface of the movable rail 40. Accordingly, as the moving rail 40 slides backwardly and forwardly, the lower hooking member 57 engages the rear end of the lower opening 47, thereby stopping movement of the movable rail 40.

In operation, when the rails 30, 40 and 50 are assembled, i.e., coupled together as shown in FIG. 4, the storage container 12 is slidably mounted in the storage chamber 11 and the rails 30, 40 and 50 are located substantially one over another as shown in FIG. 5. The first rollers 31 are received in the lower channel 54 of the middle rail 50 and are supported by the roller coupling portion 32 (FIG. 4) of the fixed rail 30. The first rollers 31 are located at a frontal open portion of the storage chamber 11. The second rollers 41 are received in the upper channel 52 of the middle rail 50 and are supported by the roller coupling portion 42 (FIG. 4) of the moving rail 40. As illustrated, the second rollers 41 are located at a rear closed portion of the storage chamber 11. When the storage container 12 is pulled forwardly to open the same, the movable rail 40 which is mounted on the side surface of the storage container 12, is moved forward.

Consequently, the second rollers 41 of the movable rail 40 roll along the guiding groove 55a (FIG. 4) formed at the lower surface of the upper channel 52 of the middle rail 50. Accordingly, movable rail 40 is moved forward when the storage container 12. As shown in FIG. 6, when the storage container 12 is in a half opened position, the lower hooking member 57 of the middle rail 50 is located adjacent to a rear portion of the lower opening 47 of the movable rail 40. The second rollers 41 move toward a front portion of the upper channel 52 which is disposed above the first rollers 31. When the storage container 12 is pulled forward, the lower hooking member 57 of the middle rail 50 engages the rear end of the lower opening 47 of the movable rail 40 thereby stopping further movement of the movable rail 40.

If, at this stage, the storage container 12 is pulled forwardly, the lower hooking member 57, with which the rear end of the lower opening 47 is engaged, is also pulled forwardly. Accordingly, the middle rail 50 moves forward with the storage container 12 while the first rollers 31 roll without moving.

As shown in FIG. 7, when the middle rail 50 moves forwardly a predetermined distance corresponding to that at which the storage container 12 is fully opened, the upper hooking member 56 engages the front end of the upper opening 36 of the fixed rail 30, thereby stopping the further movement of the middle rail 50.

If a user pushes the storage container 12 into the storage chamber 11 after putting food into or withdrawing food from the storage container 12, the storage container 12 slides into the storage chamber 11 in an operation which is the reverse of that associated with pulling out the storage container 12.

During the sliding motion of the storage container 12 described above, the weight of the storage container 12 is transferred to the partition rail portion 55 of the middle rail 50 through the second rollers 41 of the movable rail 40, and thereafter to the first rollers 31 of the fixed rail 30. Finally, the weight of the container 12 is transferred to a side wall of the storage chamber 11 on which the fixed rail 30 is mounted.

It will be understood from the foregoing that during the sliding motion of the sliding device 20, the first and second rollers 31 and 41 contact and roll on the partition rail portion 55 of the middle rail 50. Further, the weight of the storage container 12 is transferred proportionally to the first and second rollers 31 and 41. This operation provides smoothing out of the sliding motion of the middle rail 50 and the movable rail 40 (see FIG. 4).

Alternatively, the movable rail 40 and the middle rail 50 may be moved in reverse order or simultaneously. However, the fundamental operation of the respective rails 40 and 50 remains the same.

Because the fixed rail 30, the movable rail 40, the middle rail 50 and the plural rollers 31 and 41 are made of an injection molded plastic, the sliding device 20 does not rust nor is device 20 prone to other problems associated with metal parts in a humid environment. Therefore, the device 20 can be used in the humid storage chamber 11 of a refrigerator or the like without impairing the operation of the sliding device 20. Further, because the first and second rollers 31 and 41 roll with minimum contact in the guiding grooves 55a and 55b formed in the partition rail portion 55, the rollers 31 and 41 can roll over granular ice which may be produced on a surface of the middle rail 50, thereby ensuring smooth movement of the storage container 12.

Although the invention has been described above in relation to preferred embodiments thereof, it will be under-

LG0000844

LG0000844

US 6,478,393 B2

7

stood by those skilled in the art that variations and modifications can be effected in these preferred embodiments without departing from the scope and spirit of the invention.

What is claimed is:

1. A sliding device for providing sliding backward and forward movement of a drawer-type storage container relative to a storage case, the storage container being slidably mounted inside the storage case, and said sliding device comprising:

a first plurality of roller;

a second plurality of rollers;

a fixed rail fixedly mounted to an inner side surface of the storage case and including a roller coupling portion rollably receiving said first plurality of rollers;

a movable raid fixedly mounted to an outer side surface of the storage container and including a roller coupling portion rollably receiving said second plurality of rollers; and

a middle rail slidably mounted between the fixed rail and the movable rail for providing a coupling relationship therebetween and for guiding the rolling motion of the first and second plurality of rollers such that the movable rail and the storage container slide together by means of a rolling motion of the second plurality of rollers along the middle rail, and the middle rail slides along the fixed rail by means of a rolling motion of the first plurality of rollers, the middle rail further comprising:

an upper rail portion including an upper channel for receiving the roller coupling portion of the movable rail therein and for guiding the sliding motion of the movable rail;

a lower rail portion including a lower channel for receiving the roller coupling portion of the fixed rail therein and for guiding the sliding motion of the middle rail,

a partition rail portion integrally connecting the upper rail portion and the lower rail portion while partitioning the upper channel from the lower channel, and the fixed rail includes a guiding space for receiving the upper rail portion and the movable rail includes a guiding space for receiving the lower rail portion.

2. A sliding device according to claim 1, wherein the upper rail portion of the middle rail opens toward the roller

8

coupling portion of the movable rail, and wherein the lower rail portion of the middle rail opens toward the roller coupling portion of the fixed rail.

3. A sliding device according to claim 1, further comprising first movement restricting means located between the fixed rail and the middle rail for restricting the movement of the middle rail, and second movement restriction means located between the middle rail and the movable rail for restricting the movement of the movable rail.

4. A sliding device according to claim 3, wherein the first and second movement restricting means each include hooking members and respective openings for receiving the hooking members therein.

5. A sliding device according to claim 4, wherein the hooking members protrude upwardly from the upper end surface of the middle rail and downwardly from the lower end surface of the middle rail, and wherein the openings extend longitudinally of the fixed rail and at the movable rail, respectively.

6. A sliding device according to claim 1, further comprising: a plurality of slots formed in the roller coupling portions of the fixed rail and movable rail, respectively, such that the first plurality of rollers and the second plurality of rollers extend through the slots and undergo rolling motion in contact with the corresponding partition rail portion.

7. A sliding device according to claim 6, wherein said partition rail portion includes longitudinally extending guiding grooves for guiding the rolling motion of the first and second plurality of rollers.

8. A sliding device according to claim 1, further comprising a first roller supporting member within which the first plurality of rollers are disposed in series and a second roller supporting member within which the second plurality of rollers are disposed in series, the first roller supporting member being disposed in the roller coupling portion of the fixed rail and the second roller supporting member being disposed in the roller coupling portion of the movable rail.

9. A sliding device according to claim 1, wherein the movable rail is comprised of an injection molded plastic, the fixed rail is comprised of an injection molded plastic, the middle rail is comprised of an injection molded plastic, and the rollers are comprised of an injection molded plastic.

* * * * *

LG0000845

LG0000845

# EXHIBIT 14

Oct. 31, 1961                    C. F. PETKWITZ                    3,006,710
                        REFRIGERATOR CABINET SHELF ARRANGEMENT
Filed Aug. 15, 1960                                              2 Sheets-Sheet 1



INVENTOR.
Carl F. Petkwitz
BY
Lloyd M. Keighley.
His Attorney

Fig. 3

Fig. 4

Fig. I

LG0000405

LG0000405

Oct. 31, 1961                 C. F. PETKWITZ                 3,006,710
REFRIGERATOR CABINET SHELF ARRANGEMENT

Filed Aug. 15, 1960                                    2 Sheets—Sheet 2



Fig. 2

INVENTOR.
Carl F. Petkwitz
BY
Lloyd M. Keighley.
His Attorney

LG0000406

LG0000406

# United States Patent Office

**3,006,710**
Patented Oct. 31, 1961

1

3,006,710
**REFRIGERATOR CABINET SHELF ARRANGEMENT**
Carl F. Petkwitz, Dayton, Ohio, assignor to General Motors Corporation, Detroit, Mich., a corporation of Delaware
Filed Aug. 15, 1960, Ser. No. 49,741
11 Claims.   (Cl. 312—311)

This invention relates to cabinets and particularly to a shelf or article support arrangement in a storage chamber of a refrigerator cabinet.

It is the purpose of the present invention to correct or overcome certain problems that have presented themselves in the development and installation of refrigerator cabinets.  Present-day household refrigerator cabinets include a door having a portion projecting into a food storage chamber and which is recessed or hollowed out to accommodate food or article supporting shelves so as to expose food or articles carried by the door to the low temperature within the chamber.  When such doors are opened 90° will respect to the refrigerator cabinet upon which they are hingedly mounted or secured or when the cabinet is installed in a corner or nook of a room or kitchen so that the door can be opened only throughout an arc of 90°, the shelved projecting portion of the refrigerator cabinet door is located in front of the food chamber access opening.  This prevents gliding shelves within the main body part of the chamber from being moved outwardly thereof.  It is known that some manufacturers of refrigerator cabinets have provided in the main food storage chamber of their cabinets rotatable or swinging shelves in order to overcome this embarrassment.  The employment of rotatable or swinging shelves in refrigerator cabinets is a costly procedure due to waste of valuable food storage space therein by curved or rounded edges of the shelves and which storage space normally determines the retail price of a refrigerator cabinet of predetermined size.  In addition, rotatable or swinging shelves in a refrigerator cabinet ordinarily require an upright supporting post or shaft within the food storage chamber thereof which is unsightly and frequently in the way of articles to be stored in the chamber.  I contemplate the provision in a refrigerated chamber of a refrigerator cabinet of a shelf or food support that occupies the major part or substantially all of the cross-sectional area of the chamber and which is mounted therein for gliding movement in a straight-line direction to and fro the chamber without interference by a portion of the chamber door when same is swung open into a 90° position with respect to the refrigerator cabinet.

An object of my invention is to provide an improved shelf or article support arrangement within a chamber.

Another object of my invention is to provide a novel mounting of a four-cornered shelf or food support within a rectangular refrigerator chamber of a generally rectangular cabinet which shelf or support is of a particular shape to occupy the major part of the cross-sectional area of the chamber and to cooperate with its mounting to be glided by rolling or sliding same in a straight-line direction outwardly of the chamber access opening with clearance at the side of the opening upon which the chamber door is hingedly secured.

A further object of my invention is to mount within a refrigerated chamber of a refrigerator cabinet a food shelf or support provided with diagonally opposite acute angled corners and diagonally opposite obtuse angled corners in such fashion that the shelf or support is movable in a straight-line direction outwardly of the chamber access opening and angularly relative thereto.

A still further and more specific object of my invention is to mount a parallelogram-shaped shelf or article support which has a front obtusely angled corner within a

2

chamber of a cabinet for straight-line movement outwardly thereof whereby the obtuse corner of the shelf or support spaces a part of the end thereof at the hinged side of the chamber door from the upright chamber wall thereat which spaced end part of the support clears and is shiftable along a projecting portion of the chamber door when the door is swung to a 90° open position with respect to the cabinet and during movement of the support to and fro the chamber.

Further objects and advantages of the present invention will be apparent from the following description, reference being had to the accompanying drawings wherein a preferred embodiment of the present invention is clearly shown.

In the drawings:

FIGURE 1 is a front view of a household refrigerator cabinet having a food or article support arranged in accordance with my invention located in a food storage chamber thereof and showing the chamber door open;

FIGURE 2 is an enlarged horizontal cross-sectional view taken along the lines 2—2 of FIGURE 1 with the chamber door closed and showing in plan my improved article support arrangement;

FIGURE 3 is a sectional view similar to FIGURE 2 on a reduced scale showing the refrigerator cabinet located in a corner of a room illustrating the cabinet door opened 90° and the article support moved part way out of the food storage chamber of the cabinet;

FIGURE 4 is an enlarged fragmentary sectional view taken along the lines 4—4 of FIGURE 2 showing the article support mounted on its mounting means.

Referring to the drawings, for illustrating my invention, I show in FIGURE 1 thereof a generally rectilinear-shaped cabinet 10 of the household refrigerator type.  The refrigerator cabinet 10 includes an outer sheet metal shell 11 and an inner box-like metal liner 12 spaced from the shell and having any suitable or desirable insulating material 13 disposed therebetween (see FIGURE 2).  Liner 12 forms rectangular walls of a polygonal-shaped food storage chamber 14 within cabinet 10 which is practical for maximum food storage space and wherein my invention is particularly applicable.  Food storage chamber 14 is provided with an open front access opening which is normally closed by an insulated door structure generally represented by the reference character 15.  The access opening of chamber 14 is bounded by nonmetallic breaker strips attached to the cabinet shell 11 and to the forward edge of chamber liner 12 as is conventional in the art.  The insulated door structure 15 is hingedly secured to or mounted upon cabinet 10 by suitable hinges 16 for horizontal swinging movement relative thereto.  Door 15 comprises an outer metal pan member 17 and an inner mold plastic panel member 18 with insulating material similar to the insulation 13 disposed therebetween (see FIGURE 2).  Pan member 17 is provided with inturned flanges about the periphery thereof and these flanges are secured to peripheral edges of panel member 18 by suitable screws or the like which screws also lock a resilient gasket 19 upon door 15.  The gasket 19 extends continuously around door 15 and this portion of the door is adapted to engage a flat forward surface on the front of cabinet 10 with the gasket air sealing the access opening of chamber 14.  Molded plastic panel member 18 constitutes another portion of the door structure and is inwardly dished or recessed as at 21 to accommodate vertically spaced apart long, relatively narrow shelves 22 for supporting food products or articles in exposed relationship to the cold air within chamber 14.  The portion 18 of door 15 projects inwardly of the surface on cabinet 10 engaged by gasket 19 into chamber 14 and forms an obstruction at the front of the chamber access opening when the door is swung only into a 90° open position.

LG0000407

LG0000407

3,006,710

**3**

A refrigerator system is associated with cabinet 10 and includes a refrigerant translating device (not shown) usually located in the lower part of the cabinet below chamber 14 and a refrigerant evaporator preferably of the pressure-welded sheet-metal type mounted in the food storage chamber. The refrigerant evaporator is located in the upper part of chamber 14 behind a door or closure member 25 separate from door 15 and cooperating with the evaporator to provide a freezing compartment within chamber 14. The cooling effect produced by the evaporator of the refrigerating system chills and causes circulation of air throughout the interior of chamber 14 as is conventional in the art to refrigerate and preserve food products or articles stored in the chamber. These food products may be located on the shelves 22 on door 15 and on reticulated article supports in the main body portion of chamber 14. At least one of the reticulated article supports in the main body portion of chamber 14 is arranged in accordance with my invention and is generally represented by the reference numeral 30. It is, of course, desirable to employ a four-cornered shelf or article support 30 and to mount same in chamber 14 for gliding movement outwardly thereof which shelf or support will occupy the major portion or substantially all of the cross-sectional area of rectangular chamber. The construction of article support 30 and its connection with rollable and slidable track means may, insofar as the present invention is concerned, be in accordance with that shown and fully described in my Patent No. 2,719,772, dated October 4, 1955, and assigned to the assignee of this application. However, the shape of the article support 30, its mounting within chamber 14 and the direction of movement thereof outwardly of the chamber is varied from that shown in my patent just identified in order to accomplish the objects and advantages of this invention.

In the present disclosure and with particular reference to FIGURE 2 of the drawings thereof it will be noted that I employ a four-cornered rhomboidal article support 30 which is of a parallelogram shape provided with diagonally opposite acute angled corners and diagonally opposite obtuse angled corners. I mount the article support 30 within chamber 14 so that it has gliding movement in a straight-line direction outwardly thereof and angularly through the chamber access opening relative to the rectangular chamber walls. For this purpose I utilize opposed molded plastic blocks 31 having inclined or acute angled inner surfaces for the mounting thereto of fixed rollers 32 which support a track member 33 rollably interlocked with the rollers as in my patent hereinbefore referred to. The opposed blocks 31 are rigidly secured, by screws or bolts 34 (see FIGURE 4) to the opposite upright walls of liner 12 of chamber 14 so as to dispose each pair of rollers 32 and consequently the track members 33 and article support 30 at an acute angle within the rectangular chamber relative to its right angled walls. This mounts the four-cornered parallelogram-shaped article support 30 within chamber 14 for straight-line gliding movement outwardly thereof through its front access opening angularly relative thereto and to the right-angled walls of the rectangular chamber.

In FIGURE 3 I show the refrigerator cabinet 10 located in a corner of a room or kitchen, indicated by the right-angled walls 37 and 38, with its back and right-hand upright wall substantially abutting or positioned closely adjacent these room walls respectively. In this showing the front obtuse angled corner of article support 30 spaces the forward portion of the end of support 30 at the hinged side of door 15 a greater distance inwardly of the upright chamber wall 12 thereat than the rear portion of the support. Door 15, with the cabinet 10 located as shown adjacent the room walls 37 and 38, can be swung only into a 90° open position relative to the cabinet and the projecting portion 18 of door 15, normally extending into chamber 14, now lies or is located in front of a part of the chamber access opening and forms an obstruction

**4**

thereat. Such obstructions would prevent a shelf or article support movably mounted in chamber 14 from being shifted outwardly thereof and the feature of rendering food products on the rear portion of the article support readily accessible at the front of the refrigerator cabinet without reaching to the rear of the chamber therein will be eliminated when the refrigerator is located as illustrated in FIGURE 3. However, this feature is retained in a novel and practical manner by virtue of my invention. For example, a forward pull applied to article support 30 will move or glide it out of chamber 14 in a straight-line direction and at an angle to the right-angled chamber walls as distinguished from moving the shelf outwardly of the chamber in parallel relation to walls thereof. Movement of support 30 at an angle with respect to the chamber simultaneously with the outward movement thereof shifts that portion of the support outwardly of the chamber access opening laterally relative thereto. The front portion of the end of article support 30 at the obtuse angled forward corner thereof adjacent the hinge side of door 15, in addition to normally being spaced from the upright wall of chamber 14 thereat, becomes further spaced therefrom during movement of the support outwardly of the chamber and angularly relative to its access opening. This end portion of support 30 consequently clears or is shifted to the left, as viewed in FIGURE 3, of projecting portion 18 on door 15 located in its 90° open position, against or aligned with room wall 38, when the shelf is moved part way out of cabinet 10 forwardly of chamber 14 to thereby prevent door portion 18 from obstructing or blocking the outward gliding movement of the article support. Thus the combination of a parallelogram-shaped article support with its diagonally opposite acute angled corners and diagonally opposite obtuse angled corners together with the mounting thereof at an acute angle relative to walls of a rectangular food storage chamber in a refrigerator cabinet accomplishes a result which permits retention of the feature and advantages of an outwardly movable refrigerator cabinet shelf or support.

It should from the foregoing, be apparent that I have made an improvement in cabinets having outwardly movable article supports therein and have solved the problem encountered particularly in the installation and use of refrigerator cabinets. By a shelf or support being shaped as herein disclosed and mounting same in a food storage chamber of a refrigerator cabinet for movement outwardly thereof in the unique manner described, I provide a refrigerator which can be located in corners of a room or adjacent other cabinets or cupboards wherein the cabinet door can be opened only at a 90° angle relative to the cabinet without depriving the user of the refrigerator of features incorporated therein. In accomplishing this with a four-cornered article support or shelf, the waste space in a refrigerated chamber of a refrigerator cabinet is reduced to an infinitesimal amount which is not a serious or costly expedient and is more practical and less expensive than providing rotating or swinging food shelves or article supports in refrigerators.

While the embodiment of the present invention as heredisclosed constitutes a preferred form, it is to be understood that other forms might be adopted.

What is claimed it as follows:

1. A cabinet comprising in combination, a plurality of walls forming a chamber in said cabinet provided with a front access opening, a door hingedly secured to said cabinet at one side of the chamber opening, said door being engageable with a forward surface of said cabinet about said chamber opening and including a portion projecting therefrom inwardly into the chamber beyond said surface, an article support in said chamber occupying substantially all of the horizontal cross-sectional area thereof intermediate said projecting portion of said door and walls of the chamber, means mounting said support within said chamber for gliding movement in a straight-line direction outwardly thereof through its access opening

LG0000408

LG0000408

3,006,710

5

while mounted on said door mounting means, said door being swingable into at least a 90° open position with respect to said cabinet whereby said projecting portion of the door is located in front of said chamber opening in the path of straight-line movement of said support therethrough, the front part of the end of said article support adjacent said one side of the chamber opening being spaced inwardly from the upright chamber wall thereat, and said spaced end part of said support clearing and being shiftable along said projecting portion of said door at said 90° open position thereof upon moving the support to and fro said chamber.

2. The combination defined by claim 1 wherein the mounting means for the article support is disposed at an acute angle with respect to walls of the chamber and causes the straight-line movement of said support through the chamber opening to be angular relative thereto.

3. A cabinet comprising in combination, a plurality of walls forming a chamber in said cabinet provided with a front access opening, a door hingedly secured to said cabinet at one side of the chamber opening, said door being engageable with a forward surface of said cabinet about said chamber opening and including a portion projecting therefrom inwardly into the chamber beyond said surface, an article support in said chamber occupying substantially all of the horizontal cross-sectional area thereof intermediate said projecting portion of said door and walls of the chamber, said support being provided with diagonally opposite arcuate angled corners and diagonally opposite obtuse angled corners, means mounting said support within said chamber for gliding movement in a straight-line direction outwardly thereof through its access opening while mounted on said mounting means, said door being swingable into at least a 90° open position with respect to said cabinet whereby said projecting portion of the door is located in front of said chamber opening in the path of straight-line movement of said support therethrough, one of the obtuse angled corners of said article support being located adjacent said one side of the chamber opening and spacing the front part of the end of the support thereat inwardly from the upright chamber wall at the hinged side of said door, and said spaced end part of said support clearing and being shiftable along said projecting portion of said door at said 90° open position thereof upon moving the support to and fro said chamber.

4. The combination defined by claim 3 wherein the mounting means for the article support is disposed at an acute angle with respect to walls of the chamber and causes the straight-line movement of said support through the chamber opening to be angular relative thereto.

5. A cabinet comprising in combination, a plurality of walls defining a chamber in said cabinet, said chamber being provided with an access opening in an upright wall thereof, a door hingedly secured to said cabinet at one side of the chamber opening, said door being engageable with a surface of said cabinet about said chamber access opening and including a part thereon projecting therefrom inwardly into the chamber beyond said surface, a four cornered article support in said chamber occupying a horizontal cross-sectional area thereof intermediate said projecting part of said door and walls of the chamber, means mounting said support within said chamber for movement in a straight-line direction part way out of the chamber through its access opening while mounted on said mounting means, said door being swingable into a 90° open position with respect to said cabinet whereby said projecting part of the door is located in front of a portion of said chamber opening in the path of movement of said article support therethrough, a front corner of the end of said article support adjacent said one side of the chamber opening being obtusely angled, and said obtuse front corner on said article support serving to cause said end thereof to clear and be shifted past said projecting part of said door at its said 90° open position

6

in a lateral direction away from said one chamber side as the support is moved outwardly of the chamber.

6. The combination defined by claim 5 wherein the mounting means for the article support is disposed at an acute angle with respect to sides of the chamber whereby the straight-line movement of said support through the chamber opening is angular relative thereto.

7. A cabinet comprising in combination, a plurality of walls defining a rectangular chamber in said cabinet, said chamber being provided with an access opening in the front wall of said cabinet, a door hingedly secured to said cabinet at one side of the chamber opening, said door being engageable with said front wall of the cabinet and including a part thereon normally projecting therefrom inwardly into said chamber beyond the cabinet front wall, an article support in said chamber occupying the major portion of a horizontal cross-section area thereof intermediate said projecting part of said door and upright walls of the rectangular chamber, said support being provided with diagonally opposite obtuse angled corners and diagonally opposite acute angled corners, means mounting said article support within said chamber for movement in a straight-line direction part way out of the chamber through its opening in said cabinet front wall while mounted on said mounting means, said door being swingable into a 90° open position with respect to said cabinet whereby said projecting part of the door is located in front of a portion of said chamber opening in the path of movement of said article support therethrough, the obtuse angled corner at the front of said article support being adjacent said one side of the chamber opening, and outward movement of said article support through the chamber opening being angularly relative to the rectangular chamber walls to cause the end of said support adjacent said obtusely angled front corner thereof to clear and be shifted past said projecting part of said door at its said 90° open position.

8. A cabinet comprising in combination, a plurality of walls defining a chamber in said cabinet, said chamber being provided with an access opening in an upright wall thereof, a door hingedly secured to said cabinet at one side of the chamber opening, said door being engageable with a surface of said cabinet about said chamber access opening and including a part thereon projecting therefrom inwardly into the chamber beyond said surface, a parallelogram shaped article support in said chamber occupying a horizontal cross-sectional area thereof intermediate said projecting part of said door and walls of the chamber, means mounting said support within said chamber for movement in a straight-line direction part way out of the chamber through its access opening while mounted on said mounting means, said door being swingable into a 90° open position with respect to said cabinet whereby said projecting part of the door is located in front of a portion of said chamber opening in the path of movement of said article support therethrough, the front corner of the end of said parallelogram shaped article support adjacent said one side of the chamber opening being obtusely angled, and said obtuse front corner on said article support serving to cause said end thereof to clear and be shifted past said projecting part of said door at its said 90° open position as the support is moved outwardly of the chamber.

9. The combination defined by claim 8 wherein the mounting means for the parallelogram shaped article support is disposed at an acute angle with respect to sides of the chamber whereby the straight-line outward movement of said support through the chamber opening is angular relative thereto away from the one side of said chamber.

10. A cabinet comprising in combination, a plurality of walls defining a rectilinear shaped chamber in said cabinet, said chamber being provided with an access opening in an upright wall thereof, a door hingedly secured to said cabinet at one side of the chamber open-

LG0000409

LG0000409

3,006,710

**7**

ing, said door being engageable with a surface of said cabinet bounding said chamber access opening and including a portion thereon swingable therewith projecting therefrom into the chamber beyond said surface, a four-cornered article support in said chamber occupying a 5 horizontal cross-sectional area thereof intermediate said projecting portion of said door and walls of the chamber, means mounting said support within said chamber for movement in a straight-line direction part way out of the chamber through its access opening while mounted on 10 said mounting means, said door being swingable into a predetermined open position relative to said cabinet in which position of the door said projecting portion thereof extends inwardly of said one side of the chamber at the front of its access opening, a front corner of the end 15 of said article support adjacent said one side of the chamber being obtusely angled, and said obtuse front corner

**8**

of said article support serving to cause at least the forward part of said end thereof to clear and be shifted past the projecting portion of said door while same is in said predetermined open position as the support is moved outwardly of said chamber.

11. The combination defined by claim 10 wherein the mounting means for the article support is disposed at an acute angle with respect to sides of the rectilinear chamber whereby the straight-line movement of said support through the chamber opening is angular relative thereto.

References Cited in the file of this patent

UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| 2,670,479 | Gottlieb | _____ | Mar. 2, 1954 |
| 2,840,438 | Sharpe | _____ | June 24, 1958 |
| 2,840,439 | Sharpe | _____ | June 24, 1958 |

LG0000410

LG0000410

CERTAIN REFRIGERATORS AND COMPONENTS          Inv. No. 337-TA-632
THEREOF


# CERTIFICATE OF SERVICE


I, Bilal Iddinn, hereby certify that on April 14, 2008, copies of the foregoing document were filed an served upon the following parties as indicated:


Ms. Marilyn R. Abbott, Secretary
U.S. INTERNATIONAL TRADE COMMISSION
500 E Street, SW  Room 116
Washington, DC   20436
**(Original and 6 Copies)**

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☐ Via Electronic Filing


Honorable Theodore Essex
Administrative Law Judge
U.S. INTERNATIONAL TRADE COMMISSION
500 E. Street, S.W.
Washington, D.C. 20436
**(2 Copies)**
Email Service: tamara.lee@usitc.gov

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☐ Via Electronic Mail


Rett Snotherly,  Esq.
Office of Unfair Import Investigations
U.S. INTERNATIONAL TRADE COMMISSION
500 E. Street, S.W.,  Room 401
Washington, D.C. 20436

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☐ Via Electronic Mail


## COUNSEL FOR COMPLAINANTS

Kristiana Brugger, Esq.
BAKER BOTTS LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
(202) 639-7700 (Telephone)
(202) 639-7690 (Facsimile)
kristiana.brugger@bakerbotts.com

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☒ Via Electronic Mail

**CERTAIN REFRIGERATORS AND COMPONENTS**                    Inv. No. 337-TA-632
**THEREOF**


**COUNSEL FOR COMPLAINANTS**

Scott F. Patridge, Esq.                          ☐ Via First Class Mail
Paul R. Morico, Esq.                             ☐ Via Hand Delivery
Amanda Woodall, Esq.                             ☒ Via Overnight Courier
Elizabeth Durham, Esq.                           ☐ Via Facsimile
Robinson.Vu Esq.                                 ☒ Via Electronic Mail
Ryan Pinckney Esq.
Susan.Bigler
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
P-713-229-1569
F-713-229-7769
scott.partridge@bakerbotts.com
paul.morico@bakerbotts.com
amanda.woodall@bakerbotts.com
elizabeth.durham@bakerbotts.com
robinson.vu@bakerbotts.com
ryan.pinckney@bakerbotts.com
susan.bigler@bakerbotts.com


Bilal Iddinn
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001
(202) 408-4000 (Telephone)
(202) 408-4400 (Facsimile)

# EXHIBIT C

Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07928-1991
Telephone:     (973) 292-1700
Facsimile:     (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., | : | |
| LG ELECTRONICS, INC., & | : | Civil Action No. _____ |
| LG ELECTRONICS MONTERREY | : | |
| MEXICO, S.A., DE, CV, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| WHIRLPOOL CORPORATION, | : | |
| WHIRLPOOL PATENTS COMPANY, | : | **COMPLAINT FOR** |
| WHIRLPOOL MANUFACTURING | : | **DECLARATORY JUDGMENT** |
| CORPORATION, & | : | |
| MAYTAG CORPORATION, | : | |
| | : | |
| Defendants. | : | |

Plaintiffs LG Electronics U.S.A., Inc., LG Electronics, Inc., and LG Electronics

Monterrey Mexico, S.A., DE, CV (collectively, "LG") allege as follows for their Complaint for

Declaratory Judgment against Defendants Whirlpool Corporation, Whirlpool Patents Company, Whirlpool Manufacturing Corporation, and Maytag Corporation (collectively, "Whirlpool"):

<u>**Parties**</u>

1A.     Plaintiff LG Electronics U.S.A., Inc. is a Delaware corporation having a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

1B.     Plaintiff LG Electronics, Inc. is a Korean corporation having a principal place of business at LG Twin Towers, 20 Yoido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721.

1C.     Plaintiff LG Electronics Monterrey Mexico, S.A., DE, CV is a Mexican corporation having a principal place of business at Av. Industrias 180, Fracc Industrial Pimsa Ote., 66603 Apodaca, Nuevo Leon, Mexico.

1D.     On information and belief, Defendant Whirlpool Corporation is a Delaware corporation having a principal place of business at 2000 North M-63, Benton Harbor, Michigan 49022.

1E.     On information and belief, Defendant Whirlpool Patents Company is a Michigan corporation having a principal place of business at 500 Renaissance Drive, Suite 102, St. Joseph, Michigan 49085 and is a wholly owned subsidiary of Whirlpool Corporation.

1F.     On information and belief, Defendant Whirlpool Manufacturing Corporation is a Michigan corporation having a principal place of business at 500 Renaissance Drive, Suite 102, St. Joseph, Michigan 49085 and is a wholly owned subsidiary of Whirlpool Corporation.

1G.     On information and belief, Defendant Maytag Corporation is a Delaware corporation having a principal place of business at 2000 North M-63, Benton Harbor, Michigan 49022 and is a wholly owned subsidiary of Whirlpool Corporation.

**Jurisdiction and Venue**

2.  LG brings this civil action under the Patent Laws, Title 35 of the United States Code, and under 28 U.S.C. § 2201 to obtain a declaration of noninfringement and/or invalidity and/or unenforceability with respect to U.S. Patent Nos. 6,082,130, 6,810,680, 6,915,644, 6,971,730, and 7,240,980 (collectively, "the patents-in-suit" or "the asserted patents"). Since this action arises under the Patent Laws of the United States, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.  Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).

**Background**

4.  LG hereby restates and realleges the allegations set forth in paragraphs 1 through 3 and incorporates them by reference.

5.  On information and belief, Whirlpool Patents Company is the owner by assignment of U.S. Patent No. 6,082,130 and Maytag Corporation is the owner by assignment of U.S. Patent Nos. 6,810,680, 6,915,644, 6,971,730, and 7,240,980.

6.  On January 23, 2008, Whirlpool filed a Complaint with the U.S. International Trade Commission (ITC) alleging that LG was engaging in unfair acts in violation of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, through the alleged importation into the United States, the sale for importation into the United States, and/or the sale or offer for sale within the United States after importation, of refrigerators and components that were alleged to infringe the patents-in-suit. The ITC instituted the investigation on February 21, 2008, and the investigation has been captioned *In re CERTAIN REFRIGERATORS AND COMPONENTS THEREOF*, Inv. No. 337-TA-632 (ITC).

7.     Whirlpool, based on its alleged assertion of infringement of the asserted patents before the ITC, is seeking a permanent exclusion order under Section 337(d) and a cease and desist order under Section 337(f)(1).  LG denies that it infringes any valid and enforceable claims of the asserted patents, or that Whirlpool is entitled to any relief for the alleged infringement of the asserted patents.

8.     In view of Whirlpool's Complaint against LG with the ITC and the pending ITC investigation, and in view of Whirlpool's  assertions of patent infringement and requests for relief and LG's denials, an actual and justiciable controversy exists between LG and Whirlpool regarding the infringement, validity, and/or enforceability of the patents asserted in the ITC investigation, the rights of the respective parties regarding Whirlpool's allegations of infringement, and the remedies available to the respective parties regarding Whirlpool's assertion of infringement.

### First Count:  Declaratory Judgment of
### Noninfringement and Invalidity of U.S. Patent No. 6,082,130

9.     Plaintiffs hereby restate and reallege the allegations set forth in paragraphs 1 through 8 and incorporate them by reference.

10.    On information and belief, Defendant Whirlpool Patents Company is the owner by assignment of U.S. Patent No. 6,082,130, entitled "Ice Delivery System for a Refrigerator." A copy of U.S. Patent No. 6,082,130 is attached as Exhibit A.

11.    Plaintiffs have not infringed and are not infringing, either directly or indirectly, contributorily or otherwise any of the claims of U.S. Patent No. 6,082,130.

12.    Plaintiffs cannot be liable for infringement of U.S. Patent No. 6,082,130 because the claims are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112, and/or the patent is unenforceable.

13.    On information and belief, Whirlpool, either in initiating the ITC investigation or in pursuing the ITC investigation and its claims of patent infringement against LG regarding the above patent, has presented and pursued allegations of patent infringement against LG in bad faith and for ulterior purposes not proper under the law.

<u>Second Count:  Declaratory Judgment of<br>Noninfringement and Invalidity of U.S. Patent No. 6,810,680</u>

14.    Plaintiffs hereby restate and reallege the allegations set forth in paragraphs 1 through 13 and incorporate them by reference.

15.    On information and belief, Defendant Maytag Corporation is the owner by assignment of U.S. Patent No. 6,810,680, entitled "Ice Maker Fill Tube Assembly."  A copy of U.S. Patent No. 6,810,680 is attached as Exhibit B.

16.    Plaintiffs have not infringed and are not infringing, either directly or indirectly, contributorily or otherwise any of the claims of U.S. Patent No. 6,810,680.

17.    Plaintiffs cannot be liable for infringement of U.S. Patent No. 6,810,680 because the claims are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112, and/or the patent is unenforceable.

18.    On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that Whirlpool, or its predecessors, placed into the public domain.

19.    On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that Whirlpool, or its predecessors, placed into the public domain and that Whirlpool, in a reasonable investigation, would have found or should have found, before it filed its Complaint in the ITC.

20. On information and belief, when prosecuting and obtaining the above patent asserted by Whirlpool against LG in the ITC investigation, Whirlpool did not comply with the duty of disclosure owed to the U.S. Patent and Trademark Office and the public.

21. On information and belief, Whirlpool, either in initiating the ITC investigation or in pursuing the ITC investigation and its claims of patent infringement against LG regarding the above patent, has presented and pursued allegations of patent infringement against LG in bad faith and for ulterior purposes not proper under the law.

### Third Count:  Declaratory Judgment of Noninfringement and Invalidity of U.S. Patent No. 6,915,644

22. Plaintiffs hereby restate and reallege the allegations set forth in paragraphs 1 through 21 and incorporate them by reference.

23. On information and belief, Defendant Maytag Corporation is the owner by assignment of U.S. Patent No. 6,915,644, entitled "Ice Maker Fill Tube Assembly."  A copy of U.S. Patent No. 6,915,644 is attached as Exhibit C.

24. Plaintiffs have not infringed and are not infringing, either directly or indirectly, contributorily or otherwise any of the claims of U.S. Patent No. 6,915,644.

25. Plaintiffs cannot be liable for infringement of U.S. Patent No. 6,915,644 because the claims are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112, and/or the patent is unenforceable.

26. On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that Whirlpool, or its predecessors, placed into the public domain.

27. On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that

Whirlpool, or its predecessors, placed into the public domain and that Whirlpool, in a reasonable investigation, would have found or should have found, before it filed its Complaint in the ITC.

28.     On information and belief, when prosecuting and obtaining the above patent asserted by Whirlpool against LG in the ITC investigation, Whirlpool did not comply with the duty of disclosure owed to the U.S. Patent and Trademark Office and the public.

29.     On information and belief, Whirlpool, either in initiating the ITC investigation or in pursuing the ITC investigation and its claims of patent infringement against LG regarding the above patent, has presented and pursued allegations of patent infringement against LG in bad faith and for ulterior purposes not proper under the law.

### Fourth Count:  Declaratory Judgment of Noninfringement and Invalidity of U.S. Patent No. 6,971,730

30.     Plaintiffs hereby restate and reallege the allegations set forth in paragraphs 1 through 29 and incorporate them by reference.

31.     On information and belief, Defendant Maytag Corporation is the owner by assignment of U.S. Patent No. 6,971,730, entitled "Freezer Drawer Support Assembly."  A copy of U.S. Patent No. 6,971,730 is attached as Exhibit D.

32.     Plaintiffs have not infringed and are not infringing, either directly or indirectly, contributorily or otherwise any of the claims of U.S. Patent No. 6,971,730.

33.     Plaintiffs cannot be liable for infringement of U.S. Patent No. 6,971,730 because the claims are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112, and/or the patent is unenforceable.

34.     On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that Whirlpool, or its predecessors, placed into the public domain.

35.     On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that Whirlpool, or its predecessors, placed into the public domain and that Whirlpool, in a reasonable investigation, would have found or should have found, before it filed its Complaint in the ITC.

36.     On information and belief, when prosecuting and obtaining the above patent asserted by Whirlpool against LG in the ITC investigation, Whirlpool did not comply with the duty of disclosure owed to the U.S. Patent and Trademark Office and the public.

37.     On information and belief, Whirlpool, either in initiating the ITC investigation or in pursuing the ITC investigation and its claims of patent infringement against LG regarding the above patent, has presented and pursued allegations of patent infringement against LG in bad faith and for ulterior purposes not proper under the law.

**Fifth Count:  Declaratory Judgment of**
**Noninfringement and Invalidity of U.S. Patent No. 7,240,980**

38.     Plaintiffs hereby restate and reallege the allegations set forth in paragraphs 1 through 37 and incorporate them by reference.

39.     On information and belief, Defendant Maytag Corporation is the owner by assignment of U.S. Patent No. 7,240,980, entitled "Freezer Drawer Support Assembly."  A copy of U.S. Patent No. 7,240,980 is attached as Exhibit E.

40.     Plaintiffs have not infringed and are not infringing, either directly or indirectly, contributorily or otherwise any of the claims of U.S. Patent No. 7,240,980.

41.     Plaintiffs cannot be liable for infringement of U.S. Patent No. 7,240,980 because the claims are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112, and/or the patent is unenforceable.

42.     On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that Whirlpool, or its predecessors, placed into the public domain.

43.     On information and belief, one or more numbered claims of the above patent asserted by Whirlpool against LG in the ITC investigation are invalid over prior art that Whirlpool, or its predecessors, placed into the public domain and that Whirlpool, in a reasonable investigation, would have found or should have found, before it filed its Complaint in the ITC.

44.     On information and belief, when prosecuting and obtaining the above patent asserted by Whirlpool against LG in the ITC investigation, Whirlpool did not comply with the duty of disclosure owed to the U.S. Patent and Trademark Office and the public.

45.     On information and belief, Whirlpool, either in initiating the ITC investigation or in pursuing the ITC investigation and its claims of patent infringement against LG regarding the above patent, has presented and pursued allegations of patent infringement against LG in bad faith and for ulterior purposes not proper under the law.

### Prayers for Relief

WHEREFORE, Plaintiffs pray that this Court:

A.     Declare that Plaintiffs have not infringed and are not infringing any of the claims of U.S. Patent Nos. 6,082,130, 6,810,680, 6,915,644, 6,971,730, and 7,240,980;

B.     Declare that the claims of U.S. Patent Nos. 6,082,130, 6,810,680, 6,915,644, 6,971,730, and 7,240,980 are invalid and/or unenforceable;

C.     Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiffs their costs, disbursements, and attorney fees in connection with this action;

D.      Enjoin Whirlpool from making any further allegations of infringement of the above patents against LG;

E.      Order Whirlpool to take corrective measures to offset and avoid any further injury to LG; and

F.      Award Plaintiffs such other and further relief, including an award of its attorney fees incurred and its damages caused by Whirlpool's allegations of patent infringement of the above patents and Whirlpool's actions and claims for relief based on that allegation, as this Court may deem just and proper.

## Certification Pursuant To L.Civ.R. 11.2

Plaintiffs, by their undersigned counsel, hereby certify pursuant to L.Civ.R. 11.2 that the matters in controversy are not the subject of any other action pending in any other court or of any pending arbitration or administrative proceeding, with the exception of the pending ITC proceeding referenced above.

568253_1

Dated:     April 16, 2008

/s/ Thomas R. Curtin
Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07896-1991
Telephone:   (973) 292-1700
Facsimile:   (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07928-1991
Telephone:  (973) 292-1700
Facsimile:   (973) 292-1767

Richard L. Stroup
Anand K. Sharma
Walter D. Davis, Jr.
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC.,
LG ELECTRONICS, INC., &
LG ELECTRONICS MONTERREY
MEXICO, S.A., DE, CV

<div align="center">

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

</div>

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., | : | |
| LG ELECTRONICS, INC., & | : | Civil Action No. 08-1869 (FSH) (PS) |
| LG ELECTRONICS MONTERREY | : | |
| MEXICO, S.A., DE, CV, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| | : | Hon. Patty Shwartz, U.S.M.J. |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WHIRLPOOL CORPORATION, | : | |
| WHIRLPOOL PATENTS COMPANY, | : | |
| WHIRLPOOL MANUFACTURING | : | **CERTIFICATE OF SERVICE FOR** |
| CORPORATION & | : | **PLAINTIFFS' MOTION TO STAY** |
| MAYTAG CORPORATION, | : | **PURSUANT TO 28 U.S.C. § 1659** |
| | : | |
| Defendants. | : | |
| | : | |

576703_1

The undersigned member of the bar of this Court hereby certifies that service was made of each of the following documents filed in support of Plaintiffs' Motion to Stay Pursuant to 28 U.S.C. §1659:

(1)     Notice of Plaintiffs' Motion to Stay Pursuant to 28 U.S.C. §1659;

(2)     [Proposed] Order Staying Certain Claims Pursuant To 28 U.S.C. §1659;

(3)     Plaintiffs' Memorandum in Support of Their Motion to Stay Pursuant to 28 U.S.C. §1659; and

(4)     Declaration of George C. Jones in Support of Motion to Stay Pursuant to 28 U.S.C. §1659

by serving true electronic copies of these documents upon the following counsel via ECF and e-mail on May 15, 2008:

> Seth T. Taube (Seth.Taube@bakerbotts.com)
> Richard B. Harper (Richard.Harper@bakerbotts.com)
> Lance D. Cassak (Lance.Cassak@bakerbotts.com)
> BAKER BOTTS L.L.P.
> 30 Rockefeller Plaza
> New York, New York 10112
> Attorneys for Defendants
> Whirlpool Corp., Whirlpool Patents Co.,
> Whirlpool Manufacturing Corp., and Maytag Corp.

In addition, paper copies of these documents are being forwarded to the above counsel by regular mail.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statement are willfully false, I am subject to punishment.

> *s/ Thomas R. Curtin*
> Thomas R. Curtin

Dated:  May 15, 2008